# U.S. District Court
## District of Columbia (Washington, DC)
## CIVIL DOCKET FOR CASE #: <u>1:14–cv–01523–RCL</u>
### *Internal Use Only*

STEELE, ET AL. v. UNITED STATES OF AMERICA
Assigned to: Judge Royce C. Lamberth
Demand: $150,000,000
 Case:  1:14–cv–02221–RCL
 Related Case:  1:23–cv–00918–RCL
 Case in other court:  USCA, 17–05204
Cause: 05:0706 Judicial Review of Agency Actions

Date Filed: 09/08/2014
Date Terminated: 07/10/2017
Jury Demand: None
Nature of Suit: 890 Other Statutory Actions
Jurisdiction: U.S. Government Defendant

**Plaintiff**

**BRITTANY MONTROIS**
*Class of More Than 700,000 Similarly Situated Individuals and Businesses*

represented by **Allen Buckley**
ALLEN BUCKLEY LLC
Suite C–2000
2900 Paces Ferry Road
Atlanta, GA 30339
404–610–1936
Email: ab@allenbuckleylaw.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Christopher S. Rizek**
HOLLAND & KNIGHT LLP
800 17th Street, N.W.
Suite 1100
Washington, DC 20006
202–469–5660
Fax: 202–429–3301
Email: crizek@capdale.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Elizabeth Smith**
MOTLEY RICE, LLC
401 9th Street, NW
Suite 1001
Washington, DC 20004
(202) 386–9627
Fax: (843) 216–9350
Email: esmith@motleyrice.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Nathan David Finch**

MOTLEY RICE, LLC
401 9th Street NW
Suite 630
Washington, DC 20004
202–232–5507
Email: nfinch@motleyrice.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William H. Narwold**
1 Corporate Center
20 Church Street
17th Floor
Hartford, CT 06103
860–882–1676
Fax: 860–882–1682
Email: bnarwold@motleyrice.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Charlotte Eleanor Loper**
MOTLEY RICE
28 Bridgeside Boulevard
Mt. Pleasant, SC 29464
843–227–4383
Email: cloper@motleyrice.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Deepak Gupta**
GUPTA WESSLER LLP
2001 K Street, NW
Suite 850 North
Washington, DC 20006
202–888–1741
Fax: 202–888–7792
Email: deepak@guptawessler.com
*ATTORNEY TO BE NOTICED*

**Ebony Bobbitt**
28 Bridgeside Boulevard
Mount Pleasant, SC 29464
843–216–9327
Email: ebobbitt@motleyrice.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Stuart J. Bassin**
THE BASSIN LAW FIRM
1629 K Street, NW
Suite 300

Washington, DC 20006
(202) 895–0969
Email: sjb@bassinlawfirm.com
*TERMINATED: 12/24/2014*

**Plaintiff**

**ADAM STEELE**                                     represented by     **Allen Buckley**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Christopher S. Rizek**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Elizabeth Smith**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Meghan S.B. Oliver**
MOTLEY RICE, LLC
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
843–216–9492
Email: moliver@motleyrice.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Nathan David Finch**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William H. Narwold**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Charlotte Eleanor Loper**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Deepak Gupta**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Ebony Bobbitt**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Stuart J. Bassin**
(See above for address)
*TERMINATED: 12/24/2014*

**Plaintiff**

**JOSEPH HENCHMAN**                    represented by    **Allen Buckley**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**William H. Narwold**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Charlotte Eleanor Loper**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Ebony Bobbitt**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Elizabeth Smith**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**UNITED STATES OF AMERICA**          represented by    **Christopher James Williamson**
U.S. Department of Justice
Tax Division
P.O. Box 227
Washington, DC 20044
202–307–2250
Fax: 202–514–6866
Email: christopher.j.williamson@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Emily Katherine McClure**

U.S. DEPARTMENT OF JUSTICE
P.O. Box 227
Ben Franklin Station
Washington, DC 20044
202–353–7509
Email: emily.k.mcclure@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Joseph A. Sergi**
U.S. DEPARTMENT OF JUSTICE
Tax Division
555 4th Street, NW
Suite 7207
Washington, DC 20001
(202) 305–0868
Fax: 202–331–2032
Email: joseph.a.sergi@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Stephanie Ann Sasarak**
U.S. DEPARTMENT OF JUSTICE
Tax Division
P.O. Box 227
Washington, DC 20044
Email: stephanie.a.sasarak@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Benton Thomas Morton**
DEPARTMENT OF JUSTICE
Tax Division
Ben Franklin Station
P.O. Box 227
Washington, DC 20044
202–598–6285
Email: benton.t.morton@usdoj.gov
*ATTORNEY TO BE NOTICED*

**Joseph E. Hunsader**
U.S. DEPARTMENT OF JUSTICE
Tax Division
P.O. Box 227
Ben Franklin Station
Washington, DC 20044
(202) 514–0472
Fax: (202) 514–6866
Email: joseph.e.hunsader@usdoj.gov
*ATTORNEY TO BE NOTICED*

**Vassiliki Eliza Economides**

U.S. DEPARTMENT OF JUSTICE
P.O. Box 227
Ben Franklin Station
Washington, DC 20044
(202) 307–6320
Fax: (202) 514–6866
Email: vassiliki.e.economides@usdoj.gov
*ATTORNEY TO BE NOTICED*

V.

**Interested Party**

**PATRICK BRYANT**                    represented by    **PATRICK BRYANT**
                                                        34 Nelson Road
                                                        Selden, NY 11784
                                                        PRO SE

**Non–Party Respondent**

**ACCENTURE FEDERAL SERVICES**        represented by    **Stephen J. McBrady**
                                                        CROWELL & MORING LLP
                                                        1001 Pennsylvania Avenue, NW
                                                        Washington, DC 20004
                                                        (202) 624–2500
                                                        Fax: (202) 628–5116
                                                        Email: smcbrady@crowell.com
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 09/08/2014 | 1 | COMPLAINT *Adam Steele, Brittany Montrois, and a Class of More Than 700,000 Similarly Situated Individuals and Businesses* against UNITED STATES OF AMERICA, Adam Steele, Class of More Than 700,000 Similarly Situated Individuals and Businesses ( Filing fee $ 400 receipt number 0090–3830698) filed by Montrois Brittany.(Bassin, Stuart) (Entered: 09/08/2014) |
| 09/08/2014 | 2 | REQUEST FOR SUMMONS TO ISSUE *and Civil Cover Sheet* by Class of More Than 700,000 Similarly Situated Individuals and Businesses, Montrois Brittany, Adam Steele re 1 Complaint, filed by Class of More Than 700,000 Similarly Situated Individuals and Businesses, Montrois Brittany, Adam Steele. Related document: 1 Complaint, filed by Montrois Brittany. (Attachments: # 1 Summons Summons to US Attorney, # 2 Summons Summons to IRS, # 3 Summons Summons to Atty Genl.)(Bassin, Stuart) (Entered: 09/08/2014) |
| 09/08/2014 |  | Case Assigned to Judge Tanya S. Chutkan. (kb) (Entered: 09/08/2014) |
| 09/08/2014 | 3 | ERRATA by BRITTANY MONTROIS, ADAM STEELE 2 Request for Summons to Issue,, filed by BRITTANY MONTROIS, ADAM STEELE, 1 Complaint, filed by BRITTANY MONTROIS. (Attachments: # 1 Summons, # 2 Summons)(Bassin, Stuart) (Entered: 09/08/2014) |

| 09/08/2014 | 4 | SUMMONS (2) Issued Electronically as U.S. Attorney and U.S. Attorney General. (Attachments: # 1 Consent Form, # 2 Notice of Consent, # 3 Summons)(kb) (Entered: 09/08/2014) |
|---|---|---|
| 09/08/2014 | 5 | ERRATA *(corrected)* by BRITTANY MONTROIS, ADAM STEELE 2 Request for Summons to Issue,, filed by BRITTANY MONTROIS, ADAM STEELE, 1 Complaint, filed by BRITTANY MONTROIS. (Attachments: # 1 Summons, # 2 Summons)(Bassin, Stuart) (Entered: 09/08/2014) |
| 09/10/2014 | 6 | MOTION for Order *Admitting Allen Buckley Pro Hac Vice* by BRITTANY MONTROIS, ADAM STEELE (Attachments: # 1 Affidavit Declaration of Allen Buckley)(Bassin, Stuart) (Entered: 09/10/2014) |
| 09/16/2014 | 7 | MOTION for Order *Appointing Interim Class Counsel* by BRITTANY MONTROIS, ADAM STEELE (Attachments: # 1 Memorandum in Support, # 2 Text of Proposed Order)(Bassin, Stuart) (Entered: 09/16/2014) |
| 09/17/2014 | 8 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed on United States Attorney General. Date of Service Upon United States Attorney General 09/15/2014. (Attachments: # 1 Exhibit Receipt)(Bassin, Stuart) (Entered: 09/17/2014) |
| 09/17/2014 | 9 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed as to the United States Attorney. Date of Service Upon United States Attorney on 9/15/2014. Answer due for ALL FEDERAL DEFENDANTS by 11/14/2014. (Attachments: # 1 Exhibit Receipt)(Bassin, Stuart) (Entered: 09/17/2014) |
| 09/17/2014 | | MINUTE ORDER: Granting 6 Motion for Leave to Appear Pro Hac Vice. Attorney Allen Buckley is hereby admitted pro hac vice to appear in this matter on behalf of plaintiffs.Signed by Judge Tanya S. Chutkan on 9/1/14. (DJS) (Entered: 09/17/2014) |
| 10/02/2014 | 10 | MOTION to Certify Class by BRITTANY MONTROIS, ADAM STEELE (Attachments: # 1 Text of Proposed Order)(Buckley, Allen) (Entered: 10/02/2014) |
| 10/02/2014 | 11 | LARGE ADDITIONAL ATTACHMENT(S) by BRITTANY MONTROIS, ADAM STEELE 10 MOTION to Certify Class filed by BRITTANY MONTROIS, ADAM STEELE. (Attachments: # 1 Declaration Steele, # 2 Declaration Montrois, # 3 Declaration Campbell, # 4 Exhibit cited statutes, # 5 Exhibit cited regulations, # 6 Exhibit notices of proposed rulemaking and final regulations)(Buckley, Allen) (Entered: 10/02/2014) |
| 10/02/2014 | 12 | LARGE ADDITIONAL ATTACHMENT(S) by BRITTANY MONTROIS, ADAM STEELE 10 MOTION to Certify Class filed by BRITTANY MONTROIS, ADAM STEELE. (Attachments: # 1 Exhibit Newberg 5th edition, # 2 Exhibit Newberg 5th ed supp)(Buckley, Allen) (Entered: 10/02/2014) |
| 10/03/2014 | 13 | LARGE ADDITIONAL ATTACHMENT(S) by BRITTANY MONTROIS, ADAM STEELE 10 MOTION to Certify Class filed by BRITTANY MONTROIS, ADAM STEELE. (Attachments: # 1 Exhibit Part 1 of 4, # 2 Exhibit Part 2 of 4, # 3 Exhibit Part 3 of 4, # 4 Exhibit Part 4 of 4)(Buckley, Allen) (Entered: 10/03/2014) |
| 11/10/2014 | 14 | ANSWER to Complaint by UNITED STATES OF AMERICA.(Williamson, Christopher) (Entered: 11/10/2014) |
| 12/15/2014 | 15 | MOTION to Withdraw as Attorney *filed by Stuart J Bassin* by BRITTANY MONTROIS, ADAM STEELE (Attachments: # 1 Text of Proposed Order)(Bassin, |

| | | |
|---|---|---|
| | | Stuart) (Entered: 12/15/2014) |
| 12/19/2014 | 16 | NOTICE of Appearance by Nathan David Finch on behalf of ADAM STEELE (Finch, Nathan) (Entered: 12/19/2014) |
| 12/19/2014 | 17 | NOTICE of Appearance by Elizabeth S. Smith on behalf of ADAM STEELE (Smith, Elizabeth) (Entered: 12/19/2014) |
| 12/23/2014 | 18 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– William H. Narwold, :Firm– Motley Rice, LLC, :Address– 20 Church Street, 17th Floor, Hartford CT 06103. Phone No. – 860–882–1676. Filing fee $ 100, receipt number 0090–3944725. Fee Status: Fee Paid. by ADAM STEELE (Attachments: # 1 Declaration Declaration of William Narwold, # 2 Text of Proposed Order Order Granting Motion for Admission PHV of William Narwold)(Finch, Nathan) (Entered: 12/23/2014) |
| 12/24/2014 | | MINUTE ORDER: Granting 18 Motion for Leave to Appear Pro Hac Vice. Attorney William H. Narwold is hereby admitted pro hac vice to appear in this matter on behalf of Plaintiffs. Signed by Judge Tanya S. Chutkan on 12/24/14. (DJS) (Entered: 12/24/2014) |
| 12/24/2014 | | MINUTE ORDER: Granting 15 Motion to Withdraw as Attorney. Attorney Stuart J. Bassin terminated. Signed by Judge Tanya S. Chutkan on 12/24/14. (DJS) (Entered: 12/24/2014) |
| 12/29/2014 | 19 | MOTION for Scheduling Order by BRITTANY MONTROIS, ADAM STEELE (Attachments: # 1 Text of Proposed Order Proposed Order, # 2 Memorandum in Support Brief in Support of Motion, # 3 Exhibit A)(Buckley, Allen) (Entered: 12/29/2014) |
| 01/12/2015 | 20 | Case randomly reassigned to Judge Royce C. Lamberth. Judge Tanya S. Chutkan no longer assigned to the case. (gt, ) (Entered: 01/12/2015) |
| 01/15/2015 | 21 | Memorandum in opposition to re 19 MOTION for Scheduling Order filed by UNITED STATES OF AMERICA. (Williamson, Christopher) (Entered: 01/15/2015) |
| 01/15/2015 | 22 | Unopposed MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Meghan S.B. Oliver, :Firm– Motley Rice LLC, :Address– 28 Bridgeside Blvd; Mt. Pleasant, South Carolina 29464. Phone No. – 843–216–9492. Fax No. – 843–216–9430 Filing fee $ 100, receipt number 0090–3964542. Fee Status: Fee Paid. by ADAM STEELE (Attachments: # 1 Declaration Declaration of Meghan S.B. Oliver, # 2 Text of Proposed Order Order granting Motion for Admission PHV of Meghan S.B. Oliver)(Smith, Elizabeth) (Entered: 01/15/2015) |
| 01/21/2015 | 23 | MOTION for Extension of Time to File Response/Reply by BRITTANY MONTROIS, ADAM STEELE (Attachments: # 1 Text of Proposed Order)(Narwold, William) (Entered: 01/21/2015) |
| 01/23/2015 | 24 | ORDER Granting 23 Motion for Extension of Time to File Response/Reply re due by 2/5/2015 Signed by Judge Royce C. Lamberth on 1/23/15. (mpt, ) (Entered: 01/23/2015) |
| 01/26/2015 | | Set/Reset Deadlines: Response/Reply due by 2/5/2015 (mpt) (Entered: 01/26/2015) |
| 01/29/2015 | 25 | MOTION to Stay re 10 MOTION to Certify Class by UNITED STATES OF AMERICA (Attachments: # 1 Text of Proposed Order)(Williamson, Christopher) (Entered: 01/29/2015) |

| 02/05/2015 | 26 | NOTICE of Appearance by Christopher S. Rizek on behalf of All Plaintiffs (Rizek, Christopher) (Entered: 02/05/2015) |
|---|---|---|
| 02/05/2015 | 27 | NOTICE of Appearance by Deepak Gupta on behalf of All Plaintiffs (Gupta, Deepak) (Entered: 02/05/2015) |
| 02/05/2015 | 28 | MOTION to Consolidate Cases *and Appoint Motley Rice LLC as Interim Class Counsel* by BRITTANY MONTROIS, ADAM STEELE (Attachments: # 1 Memorandum in Support, # 2 Declaration of Allen Buckley, # 3 Exhibit A – Tax Notes Article, # 4 Declaration of William H. Narwold, # 5 Exhibit A – Resume of William H. Narwold, # 6 Exhibit B – Law360 Article, # 7 Exhibit C – Motley Rice LLC Firm Resume, # 8 Exhibit D – Resume of Nathan D. Finch, # 9 Exhibit E – Resume of Joseph F. Rice, # 10 Declaration of Deepak Gupta, # 11 Exhibit A – Gupta Beck PLLC Firm Resume, # 12 Exhibit B – Resume of Brian Wolfman, # 13 Exhibit C – Resume of Jonathan Taylor, # 14 Exhibit D – Resume of Peter Conti−Brown, # 15 Declaration of Christopher S. Rizek, # 16 Exhibit A – Resume of Christopher S. Rizek, # 17 Text of Proposed Order)(Narwold, William) (Entered: 02/05/2015) |
| 02/17/2015 | 29 | RESPONSE re 25 MOTION to Stay re 10 MOTION to Certify Class filed by BRITTANY MONTROIS, ADAM STEELE. (Narwold, William) (Entered: 02/17/2015) |
| 02/19/2015 | 31 | ORDER Granting 30 Motion for Extension of Time to File Response/Reply up to and including February 27, 2015; re 28 MOTION to Consolidate Cases *and Appoint Motley Rice LLC as Interim Class Counsel* ; Set/Reset Deadlines: Signed by Judge Royce C. Lamberth on 2/18/15. (mpt, ) (Entered: 02/27/2015) |
| 02/25/2015 | 30 | Consent MOTION for Extension of Time to File Response/Reply as to 28 MOTION to Consolidate Cases *and Appoint Motley Rice LLC as Interim Class Counsel* by ADAM STEELE (Attachments: # 1 Text of Proposed Order)(Scherrer, Hilary) (Entered: 02/25/2015) |
| 03/09/2015 | 32 | SUPPLEMENTAL MEMORANDUM to re 28 MOTION to Consolidate Cases *and Appoint Motley Rice LLC as Interim Class Counsel (Reply in Support)* filed by BRITTANY MONTROIS, ADAM STEELE. (Attachments: # 1 Declaration of Allen Buckley, # 2 Exhibit 1 – Handwritten notes of Allen Buckley)(Narwold, William) (Entered: 03/09/2015) |
| 03/09/2015 | 33 | ERRATA *Exhibit A* by BRITTANY MONTROIS, ADAM STEELE 32 Supplemental Memorandum, filed by BRITTANY MONTROIS, ADAM STEELE. (Narwold, William) (Entered: 03/09/2015) |
| 04/16/2015 | 34 | ORDER Granting 25 Motion to Stay Briefing on Plaintiffs' Motion for Class Certification. ORDERED that briefing on plaintiffs' motion shall be stayed until such time as the Court has ruled on the pending motion for consolidation. Signed by Judge Royce C. Lamberth on 4/16/15. (mpt, ) (Entered: 04/17/2015) |
| 04/16/2015 | 35 | ORDER Granting 22 Motion for Leave to Appear Pro Hac Vice for Meghan S.B. Oliver. Signed by Judge Royce C. Lamberth on 4/16/15. (mpt, ) (Entered: 04/17/2015) |
| 06/23/2015 | 36 | RESPONSE *to Notice of Supplemental Authority filed in Dickson v. United States* filed by BRITTANY MONTROIS, ADAM STEELE. (Narwold, William) (Entered: 06/23/2015) |

| 06/30/2015 | 37 | MEMORANDUM AND OPINION, Signed by Judge Royce C. Lamberth on 6/30/2015. (hs) (Entered: 06/30/2015) |
|---|---|---|
| 06/30/2015 | 38 | ORDER; granting 28 Plaintiffs' Motion to Consolidate Cases; finding as moot 7 Motion for Order Appointing Interim Class Counsel; denying 19 Motion for Scheduling Order, Signed by Judge Royce C. Lamberth on 6/30/2015. (hs) (Entered: 06/30/2015) |
| 07/15/2015 | 39 | Joint MOTION for Scheduling Order *and Discovery Plan* by BRITTANY MONTROIS, ADAM STEELE (Attachments: # 1 Text of Proposed Order)(Narwold, William) (Entered: 07/15/2015) |
| 07/20/2015 | 40 | ORDER; granting 39 Motion for Scheduling Order; Amended Complaint due by 8/7/2015, Joint Proposed Discovery, Class Certification and Dispositive Motion schedule due by 8/21/2015, Signed by Judge Royce C. Lamberth on 7/15/2015. (hs) (Entered: 07/20/2015) |
| 08/07/2015 | 41 | AMENDED COMPLAINT against UNITED STATES OF AMERICA filed by BRITTANY MONTROIS, ADAM STEELE, JOSEPH HENCHMAN.(Narwold, William) (Entered: 08/07/2015) |
| 08/21/2015 | 42 | Joint MOTION for Scheduling Order by JOSEPH HENCHMAN, BRITTANY MONTROIS, ADAM STEELE (Attachments: # 1 Text of Proposed Order)(Narwold, William) (Entered: 08/21/2015) |
| 08/31/2015 | 43 | ORDER; granting 42 Motion for Scheduling Order; Fact Discovery due by 4/29/2016. Dispositive Motions due by 9/16/2016. Response to Dispositive Motions due by 11/4/2016. Reply to Dispositive Motions due by 12/2/2016. See Order for further details, Signed by Judge Royce C. Lamberth on 8/28/2015. (hs) (Entered: 08/31/2015) |
| 09/04/2015 | 44 | NOTICE of Appearance by Vassiliki Eliza Economides on behalf of UNITED STATES OF AMERICA (Economides, Vassiliki) (Entered: 09/04/2015) |
| 09/04/2015 | 45 | NOTICE *Of Compliance With Local Rule 7(n)* by UNITED STATES OF AMERICA (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Williamson, Christopher) (Entered: 09/04/2015) |
| 09/09/2015 | 46 | MOTION to Certify Class by JOSEPH HENCHMAN, BRITTANY MONTROIS, ADAM STEELE (Attachments: # 1 Text of Proposed Order)(Narwold, William) (Entered: 09/09/2015) |
| 09/30/2015 | 47 | ORDER; denying 10 Plaintiffs' Motion for Class Certification, Signed by Judge Royce C. Lamberth on 9/29/2015. (hs) (Entered: 09/30/2015) |
| 10/06/2015 | 48 | ANSWER to 41 Amended Complaint by UNITED STATES OF AMERICA. Related document: 41 Amended Complaint filed by BRITTANY MONTROIS, ADAM STEELE, JOSEPH HENCHMAN.(Economides, Vassiliki) (Entered: 10/06/2015) |
| 11/13/2015 | 49 | Memorandum in opposition to re 46 MOTION to Certify Class filed by UNITED STATES OF AMERICA. (Attachments: # 1 Economides Declaration, # 2 Exhibits)(Williamson, Christopher) (Entered: 11/13/2015) |
| 11/13/2015 | 50 | Corrected Memorandum in opposition to re 46 MOTION to Certify Class *Filing Corrected Version of the United States' Opposition to Class Certification* by UNITED STATES OF AMERICA. (Attachments: # 1 Economides Decl., # 2 |

| | | |
|---|---|---|
| | | Exhibits)(Williamson, Christopher) Modified event title on 11/16/2015 (znmw). (Entered: 11/13/2015) |
| 12/16/2015 | 51 | Joint MOTION for Scheduling Order by JOSEPH HENCHMAN, BRITTANY MONTROIS, ADAM STEELE (Attachments: # 1 Text of Proposed Order)(Narwold, William) (Entered: 12/16/2015) |
| 12/21/2015 | 52 | ORDER granting 51 Joint Motion to Modify Scheduling Order. Signed by Judge Royce C. Lamberth on December 21, 2015.(lcrcl3) (Entered: 12/21/2015) |
| 12/22/2015 | | Set/Reset Deadlines: Plaintiff's Reply due by 12/23/2015. (hs) (Entered: 12/22/2015) |
| 12/23/2015 | 53 | REPLY to opposition to motion re 46 MOTION to Certify Class filed by JOSEPH HENCHMAN, BRITTANY MONTROIS, ADAM STEELE. (Attachments: # 1 Text of Proposed Order)(Narwold, William) (Entered: 12/23/2015) |
| 02/09/2016 | 54 | ORDER granting in part and denying in part 46 Motion to Certify Class. Signed by Judge Royce C. Lamberth on February 9, 2016.(lcrcl3) (Entered: 02/09/2016) |
| 02/09/2016 | 55 | MEMORANDUM OPINION. Signed by Judge Royce C. Lamberth on February 9, 2016.(lcrcl3) (Entered: 02/09/2016) |
| 02/16/2016 | 56 | MOTION for Reconsideration re 54 Order on Motion to Certify Class by JOSEPH HENCHMAN, BRITTANY MONTROIS, ADAM STEELE (Narwold, William) (Entered: 02/16/2016) |
| 02/16/2016 | 57 | MOTION for Scheduling Order by JOSEPH HENCHMAN, BRITTANY MONTROIS, ADAM STEELE (Attachments: # 1 Text of Proposed Order)(Narwold, William) (Entered: 02/16/2016) |
| 02/25/2016 | 58 | ORDER granting 57 Motion to Modify Scheduling Order. Signed by Judge Royce C. Lamberth on February 25, 2016.(lcrcl3) (Entered: 02/25/2016) |
| 03/04/2016 | 59 | RESPONSE re 56 MOTION for Reconsideration re 54 Order on Motion to Certify Class filed by UNITED STATES OF AMERICA. (Williamson, Christopher) (Entered: 03/04/2016) |
| 03/14/2016 | 60 | REPLY to opposition to motion re 56 MOTION for Reconsideration re 54 Order on Motion to Certify Class filed by JOSEPH HENCHMAN, BRITTANY MONTROIS, ADAM STEELE. (Narwold, William) (Entered: 03/14/2016) |
| 03/15/2016 | 61 | NOTICE OF SUPPLEMENTAL AUTHORITY by UNITED STATES OF AMERICA (Attachments: # 1 Desert Sunlight Opinion)(Williamson, Christopher) (Entered: 03/15/2016) |
| 03/22/2016 | 62 | RESPONSE re 61 NOTICE OF SUPPLEMENTAL AUTHORITY filed by JOSEPH HENCHMAN, BRITTANY MONTROIS, ADAM STEELE. (Narwold, William) (Entered: 03/22/2016) |
| 08/08/2016 | 63 | ORDER granting 56 Motion for Reconsideration. Signed by Judge Royce C. Lamberth on August 8, 2016.(lcrcl3) (Entered: 08/08/2016) |
| 08/08/2016 | 64 | MEMORANDUM OPINION. Signed by Judge Royce C. Lamberth on August 8, 2016.(lcrcl3) (Entered: 08/08/2016) |
| 08/25/2016 | 65 | Unopposed MOTION for Approval of Plan of Class Notice by JOSEPH HENCHMAN, BRITTANY MONTROIS, ADAM STEELE (Attachments: # 1 |

| | | |
|---|---|---|
| | | Exhibit Exhibit 1 – Email Notice, # <u>2</u> Exhibit Exhibit 2 – Postcard Notice, # <u>3</u> Exhibit Exhibit 3 – Website Notice, # <u>4</u> Text of Proposed Order Proposed Order)(Narwold, William) Modified on 8/25/2016 (td). (Entered: 08/25/2016) |
| 09/07/2016 | <u>66</u> | MOTION for Partial Summary Judgment by UNITED STATES OF AMERICA (Attachments: # <u>1</u> Memorandum in Support, # <u>2</u> Statement of Facts, # <u>3</u> Text of Proposed Order)(Williamson, Christopher) (Entered: 09/07/2016) |
| 09/07/2016 | <u>67</u> | MOTION for Summary Judgment by JOSEPH HENCHMAN, BRITTANY MONTROIS, ADAM STEELE (Attachments: # <u>1</u> Statement of Facts, # <u>2</u> Text of Proposed Order, # <u>3</u> Exhibit 1 – Return Preparer Review, # <u>4</u> Exhibit 2 – Practice Before the IRS, # <u>5</u> Exhibit 3 – IRS Press Release, IR–1999–72, # <u>6</u> Exhibit 4 – Williams Statement, # <u>7</u> Exhibit 5 – TIGTA Report, # <u>8</u> Exhibit 6 – D.D.C. Campbell Decl., # <u>9</u> Exhibit 7 – RFA Responses, # <u>10</u> Exhibit 8 – Carney Article, # <u>11</u> Exhibit 9 – IRS Press Release, IR–2011–111, # <u>12</u> Exhibit 10 – Mot. to Suspend Inj., # <u>13</u> Exhibit 11 – Mot. for Stay, # <u>14</u> Exhibit 12 – Jt. Stipulation of Undisputed Facts, # <u>15</u> Exhibit 13 – PTIN Registrations Count, # <u>16</u> Exhibit 14 – Registration Fee User Cost Summary, # <u>17</u> Exhibit 15 – Accenture Contract, # <u>18</u> Exhibit 16 – D.C. Cir. Campbell Decl., # <u>19</u> Exhibit 17 – Total Numbers of PTIN Revoked by Suitability, # <u>20</u> Exhibit 18 – Appropriations Contingency Plan, # <u>21</u> Exhibit 19 – Press Release, IR–2014–75, # <u>22</u> Exhibit 20 – Annual Filing Season Program, # <u>23</u> Exhibit 21 – Interrog. Answers)(Narwold, William) (Entered: 09/07/2016) |
| 09/09/2016 | <u>68</u> | ORDER Approving Plan of Class Notice, GRANTING <u>65</u> Motion for Authorization of Plan of Class Notice (see Order for details). Signed by Judge Royce C. Lamberth on 9/08/2019. (ad) (Entered: 09/09/2016) |
| 10/07/2016 | <u>69</u> | Memorandum in opposition re <u>67</u> MOTION for Summary Judgment filed by UNITED STATES OF AMERICA. (Attachments: # <u>1</u> Response to Plaintiffs' Statement of Facts)(Williamson, Christopher) (Entered: 10/07/2016) |
| 10/11/2016 | <u>70</u> | Memorandum in opposition re <u>66</u> MOTION for Partial Summary Judgment filed by JOSEPH HENCHMAN, BRITTANY MONTROIS, ADAM STEELE. (Attachments: # <u>1</u> Response to Defendant's Statement of Facts)(Narwold, William) (Entered: 10/11/2016) |
| 10/19/2016 | <u>71</u> | Unopposed MOTION for Scheduling Order *Clarification* by JOSEPH HENCHMAN, BRITTANY MONTROIS, ADAM STEELE (Attachments: # <u>1</u> Exhibit A – Email Chain, # <u>2</u> Text of Proposed Order)(Narwold, William) (Entered: 10/19/2016) |
| 10/24/2016 | <u>72</u> | ORDER. The plaintiffs have requested from the Court <u>71</u> a Motion for Clarification of the Court's Modified Scheduling Order of February 25, 2016. Upon consideration of the foregoing, it is ORDERED that the Order Modifying Scheduling Order of February 25, 2016, be clarified as follows: Any reply briefs to dispositive motions on Count One shall be filed and served by 10/27/2016. Within Fifteen days of the Court's ruling on dispositive motions on Count One, the parties shall meet and confer and, based on the Court's ruling, shall propose a schedule for the balance of the case. IT IS SO ORDERED. Signed by Judge Royce C. Lamberth on 10/24/2016. (jth) (Entered: 10/25/2016) |
| 10/27/2016 | <u>73</u> | REPLY to opposition to motion re <u>66</u> MOTION for Partial Summary Judgment filed by UNITED STATES OF AMERICA. (Williamson, Christopher) (Entered: 10/27/2016) |
| 10/27/2016 | <u>74</u> | |

| | | |
|---|---|---|
| | | REPLY to opposition to motion re 67 MOTION for Summary Judgment filed by JOSEPH HENCHMAN, BRITTANY MONTROIS, ADAM STEELE. (Narwold, William) (Entered: 10/27/2016) |
| 01/17/2017 | 75 | Unopposed MOTION For Acceptance of Untimely Opt–Out Requests by JOSEPH HENCHMAN, BRITTANY MONTROIS, ADAM STEELE (Attachments: # 1 Exhibit A, # 2 Text of Proposed Order)(Narwold, William) (Entered: 01/17/2017) |
| 01/26/2017 | 76 | ORDER granting 75 Motion. It is hereby ORDERED that the Eleven individuals listed by their claims administration identification numbers in Exhibit A to Plaintiffs' Unopposed Motion for Acceptance of Untimely Opt–Out Requests are excluded from the Class. Signed by Judge Royce C. Lamberth on 1/25/17. (zlsj) (Entered: 01/26/2017) |
| 01/31/2017 | 77 | STATUS REPORT *Regarding Notice to the Class* by JOSEPH HENCHMAN, BRITTANY MONTROIS, ADAM STEELE. (Attachments: # 1 Exhibit 1)(Narwold, William) (Entered: 01/31/2017) |
| 06/01/2017 | 78 | MEMORANDUM AND OPINION re United States' Motion 66 for Partial Summary Judgment and Plaintiff's Motion 67 for Summary Judgment. Signed by Judge Royce C. Lamberth on 6/1/17. (lsj) (Entered: 06/01/2017) |
| 06/01/2017 | 79 | ORDER granting in part and denying in part 66 Motion for Partial Summary Judgment and granting in part and denying in part 67 Motion for Summary Judgment. It is further ORDERED that counsel for the parties shall meet and confer regarding a schedule for subsequent proceedings in this case, and submit by 7/1/2017 a proposal for addressing any remaining issues in this case, including a plan for determining the amount of money owed to each class member and proposing a form of final judgment. See Order for full details. Signed by Judge Royce C. Lamberth on 6/1/17. (lsj) (Entered: 06/01/2017) |
| 06/30/2017 | 80 | Joint STATUS REPORT by JOSEPH HENCHMAN, BRITTANY MONTROIS, ADAM STEELE. (Attachments: # 1 Exhibit 1 – Proposed Final Judgment, # 2 Exhibit 2 – Proposed Scheduling Order)(Narwold, William) (Entered: 06/30/2017) |
| 07/05/2017 | 81 | NOTICE of Change of Address by Deepak Gupta (Gupta, Deepak) (Entered: 07/05/2017) |
| 07/10/2017 | 82 | FINAL JUDGMENT AND PERMANENT INJUNCTION. SEE ORDER FOR FULL DETAILS. Signed by Judge Royce C. Lamberth on 7/7/17. (lsj) (Entered: 07/10/2017) |
| 07/10/2017 | 83 | SCHEDULING ORDER – SEE ORDER FOR FULL DETAILS. Signed by Judge Royce C. Lamberth on 7/7/17. (lsj) (Entered: 07/10/2017) |
| 07/24/2017 | 84 | MOTION to Stay re 82 Permanent Injunction, Order by UNITED STATES OF AMERICA (Attachments: # 1 Memorandum in Support, # 2 Campbell Declaration, # 3 Zottola Declaration, # 4 Text of Proposed Order)(Williamson, Christopher) (Entered: 07/24/2017) |
| 08/07/2017 | 85 | Memorandum in opposition to re 84 MOTION to Stay re 82 Permanent Injunction, Order filed by JOSEPH HENCHMAN, BRITTANY MONTROIS, ADAM STEELE. (Narwold, William) (Entered: 08/07/2017) |
| 08/14/2017 | 86 | REPLY to opposition to motion re 84 MOTION to Stay re 82 Permanent Injunction, Order filed by UNITED STATES OF AMERICA. (Williamson, Christopher) |

| | | |
|---|---|---|
| | | (Entered: 08/14/2017) |
| 08/16/2017 | 87 | MOTION for Leave to File *a Sur–Reply* by JOSEPH HENCHMAN, BRITTANY MONTROIS, ADAM STEELE (Attachments: # 1 Plaintiffs' Sur–Reply in Opposition to Defendant's Motion for a Stay, # 2 Proposed Order)(Narwold, William) (Entered: 08/16/2017) |
| 08/23/2017 | 88 | NOTICE of Change of Address by Nathan David Finch (Finch, Nathan) (Entered: 08/23/2017) |
| 08/24/2017 | 89 | NOTICE of Change of Address by Elizabeth S. Smith (Smith, Elizabeth) (Entered: 08/24/2017) |
| 09/06/2017 | 90 | NOTICE OF APPEAL TO DC CIRCUIT COURT as to 79 Order on Motion for Partial Summary Judgment,,, Order on Motion for Summary Judgment,,, Set/Reset Deadlines,, 78 Memorandum & Opinion, 82 Permanent Injunction, Order by UNITED STATES OF AMERICA. Fee Status: No Fee Paid. Parties have been notified. (Williamson, Christopher) (Entered: 09/06/2017) |
| 09/07/2017 | 91 | Transmission of the Notice of Appeal, Order Appealed (Memorandum Opinion), and Docket Sheet to US Court of Appeals. The Court of Appeals docketing fee was not paid because the fee was an Appeal by the Government re 90 Notice of Appeal to DC Circuit Court. (znmw) (Entered: 09/07/2017) |
| 09/12/2017 | | USCA Case Number 17–5204 for 90 Notice of Appeal to DC Circuit Court, filed by UNITED STATES OF AMERICA. (zrdj) (Entered: 09/12/2017) |
| 09/20/2017 | 92 | Unopposed MOTION for Approval of Plan of Supplemental Class Notice by JOSEPH HENCHMAN, BRITTANY MONTROIS, ADAM STEELE (Attachments: # 1 Exhibit 1 – Supplemental Long–Form Notice, # 2 Exhibit 2 – Supplemental Email Notice, # 3 Exhibit 3 – Supplemental Postcard Notice, # 4 Text of Proposed Order Proposed Order)(Narwold, William) (Entered: 09/20/2017) |
| 12/18/2017 | 93 | ORDER granting 87 Motion for Leave to File a Sur–Reply. Signed by Judge Royce C. Lamberth on 12/18/17. (lsj) (Entered: 12/18/2017) |
| 12/18/2017 | 94 | ORDER denying 84 Motion to Stay. Signed by Judge Royce C. Lamberth on 12/18/17. (lsj) (Entered: 12/18/2017) |
| 12/18/2017 | 95 | MEMORANDUM OPINION re Order 94 . Signed by Judge Royce C. Lamberth on 12/18/17. (lsj) (Entered: 12/18/2017) |
| 12/18/2017 | 96 | SURREPLY to re 84 MOTION to Stay re 82 Permanent Injunction, Order filed by JOSEPH HENCHMAN, BRITTANY MONTROIS, ADAM STEELE. (zrdj) (Entered: 12/19/2017) |
| 01/05/2018 | 97 | ORDER granting 92 Motion for Approval of Plan of Supplemental Class Notice. Signed by Judge Royce C. Lamberth on 1/4/18. (lsj) (Entered: 01/05/2018) |
| 03/08/2019 | 98 | MANDATE of USCA as to 90 Notice of Appeal to DC Circuit Court, filed by UNITED STATES OF AMERICA ; USCA Case Number 17–5204. (Attachments: # 1 USCA Judgment)(zrdj) (Entered: 03/13/2019) |
| 04/22/2019 | 99 | Joint MOTION for Scheduling Order by JOSEPH HENCHMAN, BRITTANY MONTROIS, ADAM STEELE (Attachments: # 1 Text of Proposed Order)(Narwold, William) (Entered: 04/22/2019) |

| | | |
|---|---|---|
| 05/02/2019 | 100 | ORDER granting 99 and entering proposed scheduling order. Signed by Judge Royce C. Lamberth on 05/01/2019. (lcrcl3) (Entered: 05/02/2019) |
| 05/03/2019 | | Set/Reset Deadlines: Fact Discovery due by 11/29/2019. Plaintiff Rule 26(a)(2) due by 12/20/2019. Defendant Rule 26(a)(2) due by 2/3/2020. Summary Judgment motions due by 1/3/2020. (lsj) (Entered: 05/03/2019) |
| 10/01/2019 | 101 | MOTION to Compel *Compliance with Subpoena* by JOSEPH HENCHMAN, BRITTANY MONTROIS, ADAM STEELE (Attachments: # 1 Exhibit 1 – Accenture Subpoena, # 2 Exhibit 2 – AFS Contract, # 3 Exhibit 3 – Cost Model, # 4 Exhibit 4 – Resp to Pls 2d RFA, # 5 Exhibit 5 – Resp to Pls 1st Interrogs, # 6 Exhibit 6 – Resps to Pls 1st Doc Req, # 7 Exhibit 7 – AFS 1st Objs and Resps to Rule 45 Subpoena, # 8 Exhibit 8 – 07–22–10 Contract Modification, # 9 Exhibit 9 – AFS Website, # 10 Exhibit 10 – AFS 2018 10–K excerpts, # 11 Exhibit 11 – 07–31–15 FOIA Response, # 12 Text of Proposed Order)(Narwold, William) (Entered: 10/01/2019) |
| 10/01/2019 | 102 | Joint MOTION for Protective Order by UNITED STATES OF AMERICA (Attachments: # 1 Proposed Protective Order)(Williamson, Christopher) (Entered: 10/01/2019) |
| 10/15/2019 | 103 | Memorandum in opposition to re 101 MOTION to Compel *Compliance with Subpoena* filed by ACCENTURE FEDERAL SERVICES. (Attachments: # 1 Text of Proposed Order, # 2 Exhibit 1 to Memorandum in Opposition, # 3 Exhibit 2 to Memorandum in Opposition)(McBrady, Stephen) (Entered: 10/15/2019) |
| 10/17/2019 | 104 | MOTION for Extension of Time to File Response/Reply by JOSEPH HENCHMAN, BRITTANY MONTROIS, ADAM STEELE (Attachments: # 1 Text of Proposed Order)(Narwold, William) (Entered: 10/17/2019) |
| 10/22/2019 | 105 | REPLY to opposition to motion re 101 MOTION to Compel *Compliance with Subpoena* filed by JOSEPH HENCHMAN, BRITTANY MONTROIS, ADAM STEELE. (Attachments: # 1 Exhibit A – US Resps to Pls 1st Set of Reqs for Admis)(Narwold, William) (Entered: 10/22/2019) |
| 10/22/2019 | 106 | ORDER granting 104 Motion for Extension of Time to File Reply to Opposition to Plaintiff's Motion to Compel. Plaintiffs shall file their reply no later than 10/29/2019. Signed by Judge Royce C. Lamberth on 10/21/2019. (lcrcl3) (Entered: 10/22/2019) |
| 10/31/2019 | 107 | Joint MOTION to Modify *the Scheduling Order* by UNITED STATES OF AMERICA (Attachments: # 1 Text of Proposed Order)(Williamson, Christopher) (Entered: 10/31/2019) |
| 11/12/2019 | 108 | Consent MOTION for Approval of Late Opt–Out Requests re 68 Order, 97 Order on Motion for Miscellaneous Relief by UNITED STATES OF AMERICA (Attachments: # 1 Text of Proposed Order)(Williamson, Christopher) (Entered: 11/12/2019) |
| 11/13/2019 | 109 | NOTICE of Appearance by Emily Katherine Miller on behalf of UNITED STATES OF AMERICA (Miller, Emily) (Entered: 11/13/2019) |
| 11/13/2019 | 110 | NOTICE of Appearance by Stephanie Ann Sasarak on behalf of UNITED STATES OF AMERICA (Sasarak, Stephanie) (Entered: 11/13/2019) |
| 11/14/2019 | 111 | ORDER GRANTING 108 Consent Motion for Approval of Late Opt–Out Requests. Charles P. Rettig, Michael J. Desmond, Thomas A. Cullinan, and Charles V. Hyde |

| | | are hereby excluded from the certified class in this case. Signed by Judge Royce C. Lamberth on 11/14/2019. (lcrcl3) (Entered: 11/14/2019) |
|---|---|---|
| 12/02/2019 | 112 | MOTION to Stay *Nonparty Discovery Against Accenture Federal Services* by ACCENTURE FEDERAL SERVICES (Attachments: # 1 Text of Proposed Order)(McBrady, Stephen) (Entered: 12/02/2019) |
| 12/16/2019 | 113 | Memorandum in opposition to re 112 MOTION to Stay *Nonparty Discovery Against Accenture Federal Services* filed by JOSEPH HENCHMAN, BRITTANY MONTROIS, ADAM STEELE. (Attachments: # 1 Exhibit 1 – IRS Business Performance Review, # 2 Exhibit 2 – IRS Compliance Analyst Desk Guide)(Narwold, William) (Entered: 12/16/2019) |
| 12/23/2019 | 114 | PROTECTIVE ORDER entered and granting Motion 102 for Joint Protective Order. Signed by Judge Royce C. Lamberth on 12/23/19. (lsj) (Entered: 12/23/2019) |
| 12/23/2019 | 116 | REPLY to opposition to motion re 112 MOTION to Stay *Nonparty Discovery Against Accenture Federal Services* filed by ACCENTURE FEDERAL SERVICES. (McBrady, Stephen) (Entered: 12/23/2019) |
| 01/03/2020 | | MINUTE ORDER: Plaintiffs shall submit a supplemental memorandum explaining why the protective order entered on 12/23/2019 114 does not moot the Motion to Compel Compliance with Subpoena 101 and further explaining what plaintiffs believe still needs to be done by the Court. Signed by Judge Royce C. Lamberth on 01/03/2020. (lcrcl3) (Entered: 01/03/2020) |
| 01/07/2020 | 117 | RESPONSE TO ORDER OF THE COURT re Order, *text in white box* filed by JOSEPH HENCHMAN, BRITTANY MONTROIS, ADAM STEELE. (Attachments: # 1 Exhibit 1 – Table of Pls Requests & AFS Objections)(Narwold, William) (Entered: 01/07/2020) |
| 01/23/2020 | 118 | MOTION to Appoint Lead Counsel by ADAM STEELE (Attachments: # 1 Memorandum in Support, # 2 Text of Proposed Order, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit)(Buckley, Allen) (Entered: 01/23/2020) |
| 01/23/2020 | 119 | NOTICE of Appearance by Joseph E. Hunsader on behalf of UNITED STATES OF AMERICA (Hunsader, Joseph) (Entered: 01/23/2020) |
| 02/06/2020 | 120 | RESPONSE re 118 MOTION to Appoint Lead Counsel filed by JOSEPH HENCHMAN, BRITTANY MONTROIS, ADAM STEELE. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2)(Narwold, William) (Entered: 02/06/2020) |
| 02/13/2020 | 121 | REPLY to opposition to motion re 118 MOTION to Appoint Lead Counsel filed by ADAM STEELE. (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit)(Buckley, Allen) (Entered: 02/13/2020) |
| 02/28/2020 | 122 | Joint STATUS REPORT by UNITED STATES OF AMERICA. (Williamson, Christopher) (Entered: 02/28/2020) |
| 03/13/2020 | 123 | Joint MOTION to Modify *Scheduling Order* by UNITED STATES OF AMERICA (Attachments: # 1 Text of Proposed Order)(Williamson, Christopher) (Entered: 03/13/2020) |
| 04/27/2020 | 124 | ORDER granting 101 Motion to Compel. Signed by Judge Royce C. Lamberth on 04/27/2020. (lcrcl3) (Entered: 04/27/2020) |
| 04/27/2020 | 125 | |

| | | |
|---|---|---|
| | | ORDER denying 112 Motion to Stay. Signed by Judge Royce C. Lamberth on 04/27/2020. (lcrcl3) (Entered: 04/27/2020) |
| 04/27/2020 | 126 | ORDER denying 118 Motion to Appoint Lead Counsel. Signed by Judge Royce C. Lamberth on 04/27/2020. (lcrcl3) (Entered: 04/27/2020) |
| 04/27/2020 | 127 | ORDER granting 123 Joint Motion to Modify Scheduling Order. Signed by Judge Royce C. Lamberth on 04/27/2020. (lcrcl3) (Entered: 04/27/2020) |
| 04/28/2020 | | Set/Reset Deadlines/Hearings: Discovery due by 11/30/2020. Proposed Briefing Schedule due by 10/30/2020 (lsj) (Entered: 04/28/2020) |
| 09/16/2020 | 128 | MOTION for Preliminary Injunction by ADAM STEELE (Attachments: # 1 Memorandum in Support, # 2 Text of Proposed Order, # 3 Exhibit Brannen complaint, # 4 Exhibit Buckley complaint, # 5 Exhibit Joint Appendix, # 6 Exhibit Proposed regulations, # 7 Exhibit Final regulations, # 8 Exhibit Comment letter, # 9 Exhibit IRS change of address letter, # 10 Exhibit Form 1040, # 11 Exhibit Form 1120, # 12 Exhibit Form 1120S, # 13 Exhibit Form 1065, # 14 Exhibit Instructions Form W–12, # 15 Exhibit Form W–12)(Buckley, Allen) (Entered: 09/16/2020) |
| 09/16/2020 | 129 | ERRATA *Final exhibit for footnote 7 of memo* by ADAM STEELE 128 MOTION for Preliminary Injunction filed by ADAM STEELE. (Buckley, Allen) (Entered: 09/16/2020) |
| 09/23/2020 | 130 | RESPONSE re 128 MOTION for Preliminary Injunction *Response by Class Counsel to Attorney Allen Buckley's Unauthorized Motion for a Pleminary [sic] Injunction* filed by JOSEPH HENCHMAN, BRITTANY MONTROIS, ADAM STEELE. (Narwold, William) (Entered: 09/23/2020) |
| 09/24/2020 | 131 | REPLY to opposition to motion re 128 MOTION for Preliminary Injunction filed by JOSEPH HENCHMAN, BRITTANY MONTROIS, ADAM STEELE. (Attachments: # 1 Exhibit A Steele email of Sept 24, # 2 Exhibit A Steele email of Sept 23, # 3 Exhibit B Montrois email of Sept 24, # 4 Exhibit J Henchman email Sept 24)(Buckley, Allen) (Entered: 09/24/2020) |
| 09/25/2020 | 132 | Memorandum in opposition to re 128 MOTION for Preliminary Injunction filed by UNITED STATES OF AMERICA. (Williamson, Christopher) (Entered: 09/25/2020) |
| 09/30/2020 | 133 | MOTION for Leave to File *second amended complaint* by JOSEPH HENCHMAN, BRITTANY MONTROIS, ADAM STEELE (Attachments: # 1 Proposed amended complaint, # 2 Redline showing changes from existing complaint, # 3 Text of Proposed Order, # 4 Memorandum in Support, # 5 Exhibit Prop user fees regulations, # 6 Exhibit Final user fees regulations)(Buckley, Allen) (Entered: 09/30/2020) |
| 09/30/2020 | 134 | REPLY to opposition to motion re 128 MOTION for Preliminary Injunction filed by JOSEPH HENCHMAN, BRITTANY MONTROIS, ADAM STEELE. (Buckley, Allen) (Entered: 09/30/2020) |
| 10/01/2020 | 135 | RESPONSE re 133 MOTION for Leave to File *second amended complaint* filed by JOSEPH HENCHMAN, BRITTANY MONTROIS, ADAM STEELE. (Narwold, William) (Entered: 10/01/2020) |
| 10/05/2020 | 136 | REPLY to opposition to motion re 133 MOTION for Leave to File *second amended complaint* filed by JOSEPH HENCHMAN, BRITTANY MONTROIS, ADAM STEELE. (Buckley, Allen) (Entered: 10/05/2020) |

| 10/08/2020 | 137 | Joint MOTION for Extension of Time to File Response/Reply as to 133 MOTION for Leave to File *second amended complaint* by UNITED STATES OF AMERICA (Attachments: # 1 Text of Proposed Order)(Williamson, Christopher) (Entered: 10/08/2020) |
|---|---|---|
| 10/09/2020 | 138 | ORDER granting 137 Motion for Extension of Time to File Response re 133 MOTION for Leave to File *second amended complaint* ; Set/Reset Deadlines: Response due by 10/28/2020. Signed by Judge Royce C. Lamberth on 10/09/2020. (lcrcl3) (Entered: 10/09/2020) |
| 10/28/2020 | 139 | STIPULATION re 133 MOTION for Leave to File *second amended complaint* by JOSEPH HENCHMAN, BRITTANY MONTROIS, ADAM STEELE. (Attachments: # 1 Second Amended Class Action Complaint)(Narwold, William) (Entered: 10/28/2020) |
| 10/28/2020 | 140 | Memorandum in opposition to re 133 MOTION for Leave to File *second amended complaint* filed by UNITED STATES OF AMERICA. (Williamson, Christopher) (Entered: 10/28/2020) |
| 10/29/2020 | 141 | REPLY to opposition to motion re 133 MOTION for Leave to File *second amended complaint* filed by JOSEPH HENCHMAN, BRITTANY MONTROIS, ADAM STEELE. (Buckley, Allen) (Entered: 10/29/2020) |
| 10/30/2020 | 142 | STATUS REPORT by JOSEPH HENCHMAN, BRITTANY MONTROIS, ADAM STEELE. (Attachments: # 1 Proposed Order)(Narwold, William) Modified on 10/30/2020 to correct docket text (zjf). (Entered: 10/30/2020) |
| 10/30/2020 | | NOTICE OF ERROR re 142 Status Report; emailed to bnarwold@motleyrice.com, cc'd 29 associated attorneys –– The PDF file you docketed contained errors: 1. Two–part docket entry, 2. Please refile document, 3. Same document using the MOTIONS event (zjf, ) (Entered: 10/30/2020) |
| 10/30/2020 | 143 | Joint MOTION to Modify *Scheduling Order* by JOSEPH HENCHMAN, BRITTANY MONTROIS, ADAM STEELE (Attachments: # 1 Proposed Order)(Narwold, William) (Entered: 10/30/2020) |
| 11/13/2020 | 144 | STIPULATION *Regarding Post–2019 PTIN Fees* by JOSEPH HENCHMAN, BRITTANY MONTROIS, ADAM STEELE. (Narwold, William) (Entered: 11/13/2020) |
| 12/04/2020 | 145 | MEMORANDUM OPINION. Signed by Judge Royce C. Lamberth on 12/4/2020. (lcrcl3) (Entered: 12/04/2020) |
| 12/04/2020 | 146 | ORDER denying 128 Motion for Preliminary Injunction; granting in part and denying in part 133 Motion for Leave to File Second Amended Complaint; Set/Reset Deadlines: Second Amended Complaint due by 12/14/2020. Signed by Judge Royce C. Lamberth on 12/4/2020. (lcrcl3) (Entered: 12/04/2020) |
| 12/07/2020 | 147 | ORDER granting 143 Motion to Modify; Set/Reset Deadlines: Proposed scheduling order due by 3/31/2021. Fact depositions due by 4/30/2021. Signed by Judge Royce C. Lamberth on 12/7/2020. (lcrcl3) (Entered: 12/07/2020) |
| 12/11/2020 | 148 | AMENDED COMPLAINT *Second Amended Class Action Complaint* against UNITED STATES OF AMERICA filed by BRITTANY MONTROIS, JOSEPH HENCHMAN, ADAM STEELE.(Narwold, William) (Entered: 12/11/2020) |

| 03/31/2021 | 149 | Joint MOTION to Modify *the Scheduling Order* by JOSEPH HENCHMAN, BRITTANY MONTROIS, ADAM STEELE. (Attachments: # 1 Text of Proposed Order Proposed Order)(Narwold, William) (Entered: 03/31/2021) |
|---|---|---|
| 04/01/2021 | 150 | ORDER granting 149 Joint Motion to Modify Scheduling Order; Set/Reset Deadlines: Proposed schedule for the completion of fact discovery due by 4/30/2021. Signed by Judge Royce C. Lamberth on 4/1/2021. (lcrcl3) (Entered: 04/01/2021) |
| 04/30/2021 | 151 | NOTICE of Appearance by Joseph A. Sergi on behalf of All Defendants (Sergi, Joseph) (Entered: 04/30/2021) |
| 04/30/2021 | 152 | Joint MOTION for Scheduling Order by JOSEPH HENCHMAN, BRITTANY MONTROIS, ADAM STEELE. (Attachments: # 1 Proposed Order)(Narwold, William) (Entered: 04/30/2021) |
| 05/07/2021 | 153 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Ebony W. Bobbitt, Filing fee $ 100, receipt number ADCDC–8433956. Fee Status: Fee Paid. by JOSEPH HENCHMAN, BRITTANY MONTROIS, ADAM STEELE. (Attachments: # 1 Declaration, # 2 Proposed Order)(Smith, Elizabeth) (Entered: 05/07/2021) |
| 05/07/2021 | 154 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Charlotte E. Loper, Filing fee $ 100, receipt number ADCDC–8434670. Fee Status: Fee Paid. by JOSEPH HENCHMAN, BRITTANY MONTROIS, ADAM STEELE. (Attachments: # 1 Declaration, # 2 Proposed Order)(Smith, Elizabeth) (Entered: 05/07/2021) |
| 05/28/2021 | 155 | ANSWER to 148 Amended Complaint by UNITED STATES OF AMERICA.(Sasarak, Stephanie) (Entered: 05/28/2021) |
| 06/07/2021 | 156 | ORDER granting 153 Motion for Leave to Appear Pro Hac Vice **Counsel should register for e–filing via PACER and file a notice of appearance pursuant to LCvR 83.6(a). Click for i nstructions**. Signed by Judge Royce C. Lamberth on 6/7/2021. (lcrcl3) (Entered: 06/07/2021) |
| 06/07/2021 | 157 | ORDER granting 154 Motion for Leave to Appear Pro Hac Vice **Counsel should register for e–filing via PACER and file a notice of appearance pursuant to LCvR 83.6(a). Click for i nstructions**. Signed by Judge Royce C. Lamberth on 6/7/2021. (lcrcl3) (Entered: 06/07/2021) |
| 06/07/2021 | 158 | ORDER granting 152 Joint Motion for Scheduling Order; Set/Reset Deadlines: Fact discovery due by 12/31/2021. The parties shall submit a proposed briefing schedule no later than 1/7/2022. Signed by Judge Royce C. Lamberth on 6/7/2021. (lcrcl3) (Entered: 06/07/2021) |
| 06/09/2021 | 159 | NOTICE of Appearance by Ebony Bobbitt on behalf of All Plaintiffs (Bobbitt, Ebony) (Entered: 06/09/2021) |
| 06/09/2021 | 160 | NOTICE of Appearance by Charlotte Eleanor Loper on behalf of All Plaintiffs (Loper, Charlotte) (Entered: 06/09/2021) |
| 12/29/2021 | 161 | Joint MOTION to Modify *the Scheduling Order* by JOSEPH HENCHMAN, BRITTANY MONTROIS, ADAM STEELE. (Attachments: # 1 Proposed Order)(Narwold, William) (Entered: 12/29/2021) |
| 01/04/2022 | 162 | ORDER granting 161 Motion to Modify Scheduling Order. Signed by Judge Royce C. Lamberth on 1/04/2022. (lcrcl3) (Entered: 01/04/2022) |
| 02/04/2022 | 163 | |

| | | MOTION to Compel *Production of Information Withheld on the Basis of the Deliberative Process Privilege* by JOSEPH HENCHMAN, BRITTANY MONTROIS, ADAM STEELE. (Attachments: # 1 Proposed Order, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C, # 5 Exhibit D, # 6 Exhibit E, # 7 Exhibit F, # 8 Exhibit G, # 9 Exhibit H)(Narwold, William) (Entered: 02/04/2022) |
|---|---|---|
| 02/14/2022 | 164 | Joint MOTION for Scheduling Order by JOSEPH HENCHMAN, BRITTANY MONTROIS, ADAM STEELE. (Attachments: # 1 Proposed Order)(Narwold, William) (Entered: 02/14/2022) |
| 02/16/2022 | 165 | ORDER granting 164 Motion for Scheduling Order. See Order for more details. Signed by Judge Royce C. Lamberth on 2/16/2022. (lcrcl3) (Entered: 02/16/2022) |
| 02/18/2022 | 166 | Memorandum in opposition to re 163 MOTION to Compel *Production of Information Withheld on the Basis of the Deliberative Process Privilege* filed by UNITED STATES OF AMERICA. (Attachments: # 1 Exhibit A, Letter from Plaintiffs dated July 2, 2021, # 2 Exhibit B, Letter from Plaintiffs dated December 6, 2021, # 3 Exhibit C, Letter from Plaintiffs dated January 25, 2022, # 4 Exhibit D, Goldman Declaration)(Miller, Emily) (Entered: 02/18/2022) |
| 02/22/2022 | 167 | MOTION to Compel by JOSEPH HENCHMAN, BRITTANY MONTROIS, ADAM STEELE. (Attachments: # 1 Text of Proposed Order, # 2 Declaration Certification, # 3 Exhibit Exh A of certification, # 4 Exhibit Exh B of certification, # 5 Exhibit Exh C of certification, # 6 Exhibit Exh D of certification, # 7 Exhibit Exh E of certification, # 8 Exhibit Exhibit F of certification, # 9 Memorandum in Support Brief, # 10 Exhibit Ruf declaration relating to brief, # 11 Certificate of Service)(Buckley, Allen) (Entered: 02/22/2022) |
| 02/23/2022 | 168 | Unopposed MOTION For Approval Of Plan Of Supplemental Class Notice by JOSEPH HENCHMAN, BRITTANY MONTROIS, ADAM STEELE. (Attachments: # 1 Proposed Order Approving Supplemental Notice Plan, # 2 Exhibit 1 – Supplemental Long–Form Notice, # 3 Exhibit 2 – Supplemental Email Notice, # 4 Exhibit 3 – Supplemental Post Card Notice)(Narwold, William) (Entered: 02/23/2022) |
| 02/25/2022 | 169 | REPLY to opposition to motion *to Compel Production of Information Withheld on the Basis of the Deliberative Process Privilege* filed by JOSEPH HENCHMAN, BRITTANY MONTROIS, ADAM STEELE. (Attachments: # 1 Exhibit A)(Narwold, William) (Entered: 02/25/2022) |
| 03/08/2022 | 170 | ORDER granting 168 Motion to Approve Plan of Supplement Class Notice. Signed by Judge Royce C. Lamberth on 3/08/2022. (lcrcl3) (Entered: 03/08/2022) |
| 03/08/2022 | 171 | Memorandum in opposition to re 167 MOTION to Compel filed by UNITED STATES OF AMERICA. (Miller, Emily) (Entered: 03/08/2022) |
| 03/09/2022 | 172 | REPLY to opposition 167 MOTION to Compel filed by JOSEPH HENCHMAN, BRITTANY MONTROIS, ADAM STEELE. (Attachments: # 1 Exhibit Collins case, # 2 Exhibit Wolfe case)(Buckley, Allen) Modified on 3/9/2022 to add docket link (zjf). (Entered: 03/09/2022) |
| 03/23/2022 | 173 | MOTION for Partial Summary Judgment by UNITED STATES OF AMERICA. (Attachments: # 1 Memorandum in Support, # 2 Statement of Facts, # 3 Appendix, # 4 Text of Proposed Order, # 5 Exhibit App. Ex. 1, # 6 Exhibit App. Ex. 3, # 7 Exhibit App. Ex. 4, # 8 Exhibit App. Ex. 5, # 9 Exhibit App. Ex. 11, # 10 Exhibit App. Ex. |

| | | |
|---|---|---|
| | | 12, # <u>11</u> Exhibit App. Ex. 14, # <u>12</u> Exhibit App. Ex. 15, # <u>13</u> Exhibit App. Ex. 16, # <u>14</u> Exhibit App. Ex. 19, # <u>15</u> Exhibit App. Ex. 23, # <u>16</u> Exhibit App. Ex. 25, # <u>17</u> Exhibit App. Ex. 27, # <u>18</u> Exhibit App. Ex. 28, # <u>19</u> Exhibit App. Ex. 30, # <u>20</u> Exhibit App. Ex. 31, # <u>21</u> Exhibit App. Ex. 36, # <u>22</u> Exhibit App. Ex. 42, # <u>23</u> Exhibit App. Ex. 43, # <u>24</u> Exhibit App. Ex. 44, # <u>25</u> Exhibit App. Ex. 45, # <u>26</u> Exhibit App. Ex. 48, # <u>27</u> Exhibit App. Ex. 50, # <u>28</u> Exhibit App. Ex. 24, # <u>29</u> Exhibit App. Ex. 26)(Sasarak, Stephanie) (Entered: 03/23/2022) |
| 03/23/2022 | <u>174</u> | SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by UNITED STATES OF AMERICA (This document is SEALED and only available to authorized persons.) (Attachments: # <u>1</u> Text of Proposed Order, # <u>2</u> Exhibit App. Ex. 2, # <u>3</u> Exhibit App. Ex. 6, # <u>4</u> Exhibit App. Ex. 7, # <u>5</u> Exhibit App. Ex. 8, # <u>6</u> Exhibit App. Ex. 9, # <u>7</u> Exhibit App. Ex. 10, # <u>8</u> Exhibit App. Ex. 13, # <u>9</u> Exhibit App. Ex. 17, # <u>10</u> Exhibit App. Ex. 18, # <u>11</u> Exhibit App. Ex. 20, # <u>12</u> Exhibit App. Ex. 21, # <u>13</u> Exhibit App. Ex. 22, # <u>14</u> Exhibit App. Ex. 26, # <u>15</u> Exhibit App. Ex. 29, # <u>16</u> Exhibit App. Ex. 32, # <u>17</u> Exhibit App. Ex. 33, # <u>18</u> Exhibit App. Ex. 34, # <u>19</u> Exhibit App. Ex. 35, # <u>20</u> Exhibit App. Ex. 37, # <u>21</u> Exhibit App. Ex. 38, # <u>22</u> Exhibit App. Ex. 39, # <u>23</u> Exhibit App. Ex. 40, # <u>24</u> Exhibit App. Ex. 41, # <u>25</u> Exhibit App. Ex. 46, # <u>26</u> Exhibit App. Ex. 47, # <u>27</u> Exhibit App. Ex. 49)(Sasarak, Stephanie) (Entered: 03/23/2022) |
| 03/23/2022 | <u>175</u> | MOTION for Summary Judgment by JOSEPH HENCHMAN, BRITTANY MONTROIS, ADAM STEELE. (Attachments: # <u>1</u> Appendix, # <u>2</u> Statement of Facts, # <u>3</u> Proposed Order)(Narwold, William) (Entered: 03/23/2022) |
| 03/23/2022 | <u>176</u> | DECLARATION *OF MEGHAN S.B. OLIVER IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT* by JOSEPH HENCHMAN, BRITTANY MONTROIS, ADAM STEELE re <u>175</u> MOTION for Summary Judgment filed by BRITTANY MONTROIS, ADAM STEELE, JOSEPH HENCHMAN. (Attachments: # <u>1</u> Exhibit A, # <u>2</u> Exhibit B, # <u>3</u> Exhibit C, # <u>4</u> Exhibit D, # <u>5</u> Exhibit E, # <u>6</u> Exhibit F, # <u>7</u> Exhibit G, # <u>8</u> Exhibit H, # <u>9</u> Exhibit I, # <u>10</u> Exhibit J, # <u>11</u> Exhibit K, # <u>12</u> Exhibit L, # <u>13</u> Exhibit M, # <u>14</u> Exhibit N, # <u>15</u> Exhibit O, # <u>16</u> Exhibit P, # <u>17</u> Exhibit Q, # <u>18</u> Exhibit R, # <u>19</u> Exhibit S, # <u>20</u> Exhibit T, # <u>21</u> Exhibit U, # <u>22</u> Exhibit V, # <u>23</u> Exhibit W, # <u>24</u> Exhibit X, # <u>25</u> Exhibit Y, # <u>26</u> Exhibit Z, # <u>27</u> Exhibit AA, # <u>28</u> Exhibit AB, # <u>29</u> Exhibit AC, # <u>30</u> Exhibit AD, # <u>31</u> Exhibit AE, # <u>32</u> Exhibit AF, # <u>33</u> Exhibit AG, # <u>34</u> Exhibit AH, # <u>35</u> Exhibit AI, # <u>36</u> Exhibit AJ, # <u>37</u> Exhibit AK, # <u>38</u> Exhibit AL, # <u>39</u> Exhibit AM, # <u>40</u> Exhibit AN, # <u>41</u> Exhibit AO, # <u>42</u> Exhibit AP, # <u>43</u> Exhibit AQ, # <u>44</u> Exhibit AR, # <u>45</u> Exhibit AS, # <u>46</u> Exhibit AT, # <u>47</u> Exhibit AU, # <u>48</u> Exhibit AV, # <u>49</u> Exhibit AW, # <u>50</u> Exhibit AX, # <u>51</u> Exhibit AY, # <u>52</u> Exhibit AZ, # <u>53</u> Exhibit BA, # <u>54</u> Exhibit BB, # <u>55</u> Exhibit BC, # <u>56</u> Exhibit BD, # <u>57</u> Exhibit BE, # <u>58</u> Exhibit BF, # <u>59</u> Exhibit BG, # <u>60</u> Exhibit BH, # <u>61</u> Exhibit BI, # <u>62</u> Exhibit BJ, # <u>63</u> Exhibit BK, # <u>64</u> Exhibit BL, # <u>65</u> Exhibit BM, # <u>66</u> Exhibit BN, # <u>67</u> Exhibit BO, # <u>68</u> Exhibit BP, # <u>69</u> Exhibit BQ, # <u>70</u> Exhibit BR, # <u>71</u> Exhibit BS, # <u>72</u> Exhibit BT, # <u>73</u> Exhibit BU)(Narwold, William) (Entered: 03/23/2022) |
| 03/23/2022 | <u>177</u> | SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by JOSEPH HENCHMAN, BRITTANY MONTROIS, ADAM STEELE (This document is SEALED and only available to authorized persons.) (Attachments: # <u>1</u> Text of Proposed Order, # <u>2</u> Exhibit A, # <u>3</u> Exhibit C, # <u>4</u> Exhibit I, # <u>5</u> Exhibit J, # <u>6</u> Exhibit M, # <u>7</u> Exhibit R, # <u>8</u> Exhibit Y, # <u>9</u> Exhibit AA, # <u>10</u> Exhibit AB, # <u>11</u> Exhibit AC, # <u>12</u> Exhibit AD, # <u>13</u> Exhibit AE, # <u>14</u> Exhibit AH, # <u>15</u> Exhibit AJ, # <u>16</u> Exhibit AK, # <u>17</u> Exhibit AM, # <u>18</u> Exhibit AN, # <u>19</u> Exhibit AO, # <u>20</u> Exhibit |

| | | |
|---|---|---|
| | | AP, # <u>21</u> Exhibit AS, # <u>22</u> Exhibit AU, # <u>23</u> Exhibit AV, # <u>24</u> Exhibit AX, # <u>25</u> Exhibit AY, # <u>26</u> Exhibit BB, # <u>27</u> Exhibit BR, # <u>28</u> Exhibit BT, # <u>29</u> Plaintiffs' Motion for Summary Judgment, # <u>30</u> Statement of Facts, # <u>31</u> Appendix)(Narwold, William) (Entered: 03/23/2022) |
| 03/28/2022 | <u>178</u> | ERRATA *and Notice of Partial Withdrawal* by UNITED STATES OF AMERICA re <u>173</u> MOTION for Partial Summary Judgment filed by UNITED STATES OF AMERICA. (Attachments: # <u>1</u> Corrected Memorandum, # <u>2</u> Corrected Proposed Order)(Miller, Emily) (Entered: 03/28/2022) |
| 04/06/2022 | <u>179</u> | Memorandum in opposition to re <u>174</u> SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by UNITED STATES OF AMERICA (This document is SEALED and only available to authorized persons.) filed by JOSEPH HENCHMAN, BRITTANY MONTROIS, ADAM STEELE. (Attachments: # <u>1</u> Text of Proposed Order)(Narwold, William) (Entered: 04/06/2022) |
| 04/06/2022 | <u>180</u> | RESPONSE re <u>177</u> SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by JOSEPH HENCHMAN, BRITTANY MONTROIS, ADAM STEELE (This document is SEALED and only available to authorized persons.) filed by ACCENTURE FEDERAL SERVICES. (Attachments: # <u>1</u> Text of Proposed Order, # <u>2</u> Exhibit Nos. 1–3)(McBrady, Stephen) (Entered: 04/06/2022) |
| 04/11/2022 | <u>181</u> | SEALED REPLY TO OPPOSITION filed by UNITED STATES OF AMERICA re <u>174</u> SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by UNITED STATES OF AMERICA (This document is SEALED and only available to authorized persons.) (This document is SEALED and only available to authorized persons.)(Miller, Emily) (Entered: 04/11/2022) |
| 04/13/2022 | <u>182</u> | SEALED REPLY TO OPPOSITION filed by JOSEPH HENCHMAN, BRITTANY MONTROIS, ADAM STEELE re <u>177</u> SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by JOSEPH HENCHMAN, BRITTANY MONTROIS, ADAM STEELE (This document is SEALED and only available to authorized persons.) (This document is SEALED and only available to authorized persons.) (Attachments: # <u>1</u> Exhibit 1, # <u>2</u> Exhibit 2, # <u>3</u> Exhibit 3, # <u>4</u> Exhibit 4)(Narwold, William) (Entered: 04/13/2022) |
| 05/12/2022 | <u>183</u> | Memorandum in opposition to re <u>175</u> MOTION for Summary Judgment filed by UNITED STATES OF AMERICA. (Attachments: # <u>1</u> Response to Plaintiffs' Statement of Facts (Redacted), # <u>2</u> Declaration Declaration of Carol Campbell)(Sasarak, Stephanie) (Entered: 05/12/2022) |
| 05/12/2022 | <u>184</u> | SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by UNITED STATES OF AMERICA (This document is SEALED and only available to authorized persons.) (Attachments: # <u>1</u> Response to Plaintiffs' Statement of Facts (unredacted sealed copy), # <u>2</u> Text of Proposed Order)(Sasarak, Stephanie) (Entered: 05/12/2022) |
| 05/12/2022 | <u>185</u> | Memorandum in opposition to re <u>173</u> MOTION for Partial Summary Judgment filed by JOSEPH HENCHMAN, BRITTANY MONTROIS, ADAM STEELE. (Attachments: # <u>1</u> Plaintiff's Response to the United State's Statement of Undisputed Material Facts)(Narwold, William) (Entered: 05/12/2022) |
| 05/12/2022 | <u>186</u> | DECLARATION *of Meghan S.B. Oliver in Support of Plaintiffs' Opposition to the United State's Motion for Partial Summary Judgment* by JOSEPH HENCHMAN, BRITTANY MONTROIS, ADAM STEELE re <u>185</u> Memorandum in Opposition, |

| | | |
|---|---|---|
| | | filed by BRITTANY MONTROIS, ADAM STEELE, JOSEPH HENCHMAN. (Attachments: # 1 Exhibit BV, # 2 Exhibit BW, # 3 Exhibit BX, # 4 Exhibit BY, # 5 Exhibit BZ, # 6 Exhibit CA, # 7 Exhibit CB, # 8 Exhibit CC, # 9 Exhibit CD, # 10 Exhibit CE, # 11 Exhibit CF, # 12 Exhibit CG, # 13 Exhibit CH, # 14 Exhibit CI, # 15 Exhibit CJ, # 16 Exhibit CK, # 17 Exhibit CL, # 18 Exhibit CM, # 19 Exhibit CN, # 20 Exhibit CO, # 21 Exhibit CP, # 22 Exhibit CQ)(Narwold, William) (Entered: 05/12/2022) |
| 05/12/2022 | 187 | SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by JOSEPH HENCHMAN, BRITTANY MONTROIS, ADAM STEELE (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Proposed Order, # 2 Plaintiffs' Response to the United State's Statement of Undisputed Material Facts, # 3 Exhibit CE, # 4 Exhibit CF, # 5 Exhibit CG, # 6 Exhibit CH, # 7 Exhibit CI, # 8 Exhibit CJ)(Narwold, William) (Entered: 05/12/2022) |
| 05/12/2022 | 188 | SUPPLEMENTAL MEMORANDUM to *Main Brief* filed by JOSEPH HENCHMAN, BRITTANY MONTROIS, ADAM STEELE. (Attachments: # 1 Memorandum in Support Plaintiffs' Supplemental Opposition Brief, # 2 Appendix Appendix A, # 3 Exhibit IRS document re AFSP and PTINs, # 4 Exhibit EXCEL costs analysis)(Buckley, Allen) (Entered: 05/12/2022) |
| 05/25/2022 | 189 | RESPONSE re 187 SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by JOSEPH HENCHMAN, BRITTANY MONTROIS, ADAM STEELE (This document is SEALED and only available to authorized persons.) filed by ACCENTURE FEDERAL SERVICES. (Attachments: # 1 Exhibit Nos. 1–2, # 2 Text of Proposed Order)(McBrady, Stephen) (Entered: 05/25/2022) |
| 05/26/2022 | 190 | Memorandum in opposition to re 177 SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by JOSEPH HENCHMAN, BRITTANY MONTROIS, ADAM STEELE (This document is SEALED and only available to authorized persons.) filed by UNITED STATES OF AMERICA. (Miller, Emily) (Entered: 05/26/2022) |
| 05/26/2022 | 191 | RESPONSE re 188 Supplemental Memorandum, *in Opposition to Filing Supplemental Brief* filed by UNITED STATES OF AMERICA. (Miller, Emily) (Entered: 05/26/2022) |
| 05/26/2022 | 192 | ERRATA *Exhibit A to Memorandum in Opposition* by UNITED STATES OF AMERICA re 190 Memorandum in Opposition, filed by UNITED STATES OF AMERICA. (Miller, Emily) (Entered: 05/26/2022) |
| 05/26/2022 | 193 | Memorandum in opposition to re 184 SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by UNITED STATES OF AMERICA (This document is SEALED and only available to authorized persons.) *Plaintiffs' Opposition to Defendant's Motion for Leave to File Document Under Seal [ECF 184]* filed by JOSEPH HENCHMAN, BRITTANY MONTROIS, ADAM STEELE. (Attachments: # 1 Proposed Order)(Narwold, William) (Entered: 05/26/2022) |
| 06/01/2022 | 194 | REPLY to opposition to motion re 187 SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by JOSEPH HENCHMAN, BRITTANY MONTROIS, ADAM STEELE (This document is SEALED and only available to authorized persons.) *Reply in Further Support of Plaintiffs' Motion to Seal (ECF 187)* filed by JOSEPH HENCHMAN, BRITTANY MONTROIS, ADAM STEELE. (Narwold, William) (Entered: 06/01/2022) |

| 06/01/2022 | 195 | REPLY to opposition to 187 motion *to file supplemental opposition brief* filed by JOSEPH HENCHMAN, BRITTANY MONTROIS, ADAM STEELE. (Buckley, Allen) Modified on 6/3/2022 to add docket link(zjf). (Entered: 06/01/2022) |
|---|---|---|
| 06/02/2022 | 196 | REPLY to opposition to motion re 184 SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by UNITED STATES OF AMERICA (This document is SEALED and only available to authorized persons.) filed by UNITED STATES OF AMERICA. (Miller, Emily) (Entered: 06/02/2022) |
| 06/06/2022 | 197 | First MOTION for Extension of Time to File Response/Reply as to 173 MOTION for Partial Summary Judgment by UNITED STATES OF AMERICA. (Attachments: # 1 Exhibit Ex. 1 (June 3, 2022 Email), # 2 Text of Proposed Order)(Sasarak, Stephanie) (Entered: 06/06/2022) |
| 06/06/2022 | 198 | RESPONSE re 197 First MOTION for Extension of Time to File Response/Reply as to 173 MOTION for Partial Summary Judgment *Plaintiffs' Response to the United States' Motion for an Extension of Time to File a Reply Brief [ECF 197]* filed by JOSEPH HENCHMAN, BRITTANY MONTROIS, ADAM STEELE. (Attachments: # 1 Proposed Order)(Narwold, William) (Entered: 06/06/2022) |
| 06/06/2022 | 199 | Reply in support re 197 First MOTION for Extension of Time to File Response/Reply as to 173 MOTION for Partial Summary Judgment filed by UNITED STATES OF AMERICA. (Sasarak, Stephanie) Modified on 6/7/2022 to correct docket link and text (zjm). (Entered: 06/06/2022) |
| 06/09/2022 | 200 | ORDER granting 197 Motion for Extension of Time to File Reply. Replies due by 7/8/2022. Plaintiffs' request for a surreply is premature but can be renewed when the United States files its reply. Signed by Judge Royce C. Lamberth on 6/09/2022. (lcrcl3) (Entered: 06/09/2022) |
| 06/15/2022 | 201 | Consent MOTION for Approval of Late–Out Request by UNITED STATES OF AMERICA. (Attachments: # 1 Text of Proposed Order)(Morton, Benton) (Entered: 06/15/2022) |
| 06/17/2022 | 202 | ORDER granting 201 Motion For Approval of Late Opt Out. Signed by Judge Royce C. Lamberth on 6/17/2022. (lcrcl3) (Entered: 06/17/2022) |
| 07/08/2022 | 203 | REPLY to opposition to motion re 173 MOTION for Partial Summary Judgment filed by UNITED STATES OF AMERICA. (Attachments: # 1 Declaration Second Declaration of Carol Campbell, # 2 Text of Proposed Order Amended Proposed Order)(Sasarak, Stephanie) Modified docket relationship on 7/11/2022 (zed). (Entered: 07/08/2022) |
| 07/08/2022 | 204 | REPLY to opposition to motion re 175 MOTION for Summary Judgment *Reply in Further Support of Plaintiffs' Motion for Summary Judgment (ECF No. 175)* filed by JOSEPH HENCHMAN, BRITTANY MONTROIS, ADAM STEELE. (Attachments: # 1 Proposed Order)(Narwold, William) (Entered: 07/08/2022) |
| 07/08/2022 | 205 | DECLARATION *of Meghan S.B. Oliver in Support of Plaintiffs' Reply in Further Support of Plaintiffs' Motion for Summary Judgment* by JOSEPH HENCHMAN, BRITTANY MONTROIS, ADAM STEELE re 204 Reply to opposition to Motion, filed by BRITTANY MONTROIS, ADAM STEELE, JOSEPH HENCHMAN. (Attachments: # 1 Exhibit CR, # 2 Exhibit CS, # 3 Exhibit CT, # 4 Exhibit CU, # 5 Exhibit CV, # 6 Exhibit CW)(Narwold, William) (Entered: 07/08/2022) |
| 07/08/2022 | 206 | |

| | | |
|---|---|---|
| | | MOTION to Modify *Draft Order* by JOSEPH HENCHMAN, BRITTANY MONTROIS, ADAM STEELE. (Attachments: # 1 Exhibit)(Buckley, Allen) (Additional attachment(s) added on 7/12/2022: # 2 Text of Proposed Order) (zjf). (Entered: 07/08/2022) |
| 07/08/2022 | 207 | SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by JOSEPH HENCHMAN, BRITTANY MONTROIS, ADAM STEELE (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Proposed Order, # 2 Exhibit CR – Part 1, # 3 Exhibit CR – Part 2, # 4 Reply in Further Support of Plaintiffs' Motion for Summary Judgment (ECF No. 175))(Narwold, William) (Entered: 07/08/2022) |
| 07/08/2022 | 208 | ENTERED IN ERROR.....Proposed MOTION for Order *Proposed order relating to Doc. 206 motion* by JOSEPH HENCHMAN, BRITTANY MONTROIS, ADAM STEELE. (Buckley, Allen) Modified on 7/12/2022 (zjf). (Entered: 07/08/2022) |
| 07/11/2022 | 209 | Memorandum in opposition re 206 MOTION to Modify *Draft Order* filed by UNITED STATES OF AMERICA. (Miller, Emily) (Entered: 07/11/2022) |
| 07/11/2022 | 210 | Memorandum in opposition re 207 SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by JOSEPH HENCHMAN, BRITTANY MONTROIS, ADAM STEELE (This document is SEALED and only available to authorized persons.) filed by UNITED STATES OF AMERICA. (Miller, Emily) (Entered: 07/11/2022) |
| 07/12/2022 | | NOTICE OF ERROR regarding 208 Proposed MOTION for Order *Proposed order relating to Doc. 206 motion*. DE# 208 has been terminated/added to DE# 206 as proposed order.(zjf) (Entered: 07/12/2022) |
| 07/15/2022 | 211 | Partially Unopposed MOTION for Leave to File a Surreply by JOSEPH HENCHMAN, BRITTANY MONTROIS, ADAM STEELE. (Attachments: # 1 Exhibit 1, # 2 Proposed Order, # 3 Surreply)(Narwold, William) Modified on 7/18/2022 (zjf). (Entered: 07/15/2022) |
| 07/15/2022 | 212 | Memorandum in opposition re 211 MOTION for Leave to File *Plaintiffs' Partially Unopposed Motion for Leave to File a Surreply* filed by UNITED STATES OF AMERICA. (Sasarak, Stephanie) (Entered: 07/15/2022) |
| 07/18/2022 | 213 | REPLY to opposition to motion re 207 SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by JOSEPH HENCHMAN, BRITTANY MONTROIS, ADAM STEELE (This document is SEALED and only available to authorized persons.) *Reply in Further Support of Plaintiffs' Motion to Seal (ECF 207)* filed by JOSEPH HENCHMAN, BRITTANY MONTROIS, ADAM STEELE. (Narwold, William) (Entered: 07/18/2022) |
| 07/19/2022 | 214 | MEMORANDUM OPINION. Signed by Judge Royce C. Lamberth on 7/19/2022. (lcrcl3) (Entered: 07/19/2022) |
| 07/19/2022 | 215 | ORDER denying 163 Motion to Compel and denying 167 Motion to Compel. Signed by Judge Royce C. Lamberth on 7/19/2022. (lcrcl3) (Entered: 07/19/2022) |
| 07/20/2022 | 216 | REPLY to opposition to motion *to file amendment to Plaintiffs' draft order* filed by JOSEPH HENCHMAN, BRITTANY MONTROIS, ADAM STEELE. (Buckley, Allen) (Entered: 07/20/2022) |
| 07/22/2022 | 217 | |

| | | |
|---|---|---|
| | | REPLY to opposition to motion re 211 Partially Unopposed MOTION for Leave to File a Surreply filed by JOSEPH HENCHMAN, BRITTANY MONTROIS, ADAM STEELE. (Narwold, William) (Entered: 07/22/2022) |
| 01/06/2023 | 218 | MOTION to Take Judicial Notice *Request For Judicial Notice in Support of Plaintiffs' Opposition to Defendant's Motion for Partial Summary Judgment (ECF 185)* by JOSEPH HENCHMAN, BRITTANY MONTROIS, ADAM STEELE re 185 Memorandum in Opposition, (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D)(Narwold, William) Modified event on 1/17/2023 (znmw). (Entered: 01/06/2023) |
| 01/19/2023 | 219 | Memorandum in opposition to re re 218 MOTION to Take Judicial Notice *Or in the Alternative, Motion to Strike* filed by UNITED STATES OF AMERICA. (Sasarak, Stephanie) Modified on 1/24/2023 to correct event (zjm). (Entered: 01/19/2023) |
| 01/19/2023 | 220 | MOTION to Strike 218 MOTION to Take Judicial Notice by UNITED STATES OF AMERICA. (See Docket Entry 219 to view document) (zjm) (Entered: 01/24/2023) |
| 01/24/2023 | 221 | SEALED MEMORANDUM OPINION re Motion 173 for Partial Summary Judgment and Motion 175 for Summary Judgment. (This document is SEALED and only available to authorized persons.) Signed by Judge Royce C. Lamberth on 1/23/2023.(zlsj) (Entered: 01/24/2023) |
| 01/24/2023 | 222 | ORDER granting in part and denying in part Motion 173 for Partial Summary Judgment; granting Sealed Motion 174 for Leave to File Document Under Seal; granting in part and denying in part Motion 175 for Summary Judgment; granting Sealed Motion 177 for Leave to File Document Under Seal; granting Sealed Motion 184 for Leave to File Document Under Seal; granting Sealed Motion 187 for Leave to File Document Under Seal; denying Motion 206 to Modify; granting Sealed Motion 207 for Leave to File Document Under Seal; granting Motion 211 for Leave to File; denying Motion 218 to Take Judicial Notice: See Order for details. Signed by Judge Royce C. Lamberth on 01/23/2023. (lcrcl3) (Entered: 01/24/2023) |
| 01/24/2023 | | MINUTE ORDER denying as moot Motion 220 to Strike Motion 218 to Take Judicial Notice: Because the Court has already denied the motion to take judicial notice, it is hereby ORDERED that the alternative motion to strike is DENIED AS MOOT. Signed by Judge Royce C. Lamberth on 01/24/2023. (lcrcl3) (Entered: 01/24/2023) |
| 01/30/2023 | 223 | Joint MOTION for Extension of Time to *comply with order* by UNITED STATES OF AMERICA. (Attachments: # 1 Text of Proposed Order)(Sasarak, Stephanie) (Entered: 01/30/2023) |
| 01/31/2023 | | MINUTE ORDER granting Motion 223 for Extension of Time: It is hereby ORDERED that the motion is GRANTED, the time for the parties to meet and confer and jointly identify which, if any, parts of the Memorandum Opinion 221 should remain sealed is extended by seven days from entry of this Minute Order, and the Sealed Memorandum Opinion may be shared with Counsel for Accenture and any Accenture employee working with its Counsel for purposes of identifying those portions. Signed by Judge Royce C. Lamberth on 01/31/2023. (lcrcl3) (Entered: 01/31/2023) |
| 02/06/2023 | 224 | NOTICE *of Compliance* by UNITED STATES OF AMERICA re Order on Motion for Extension of Time to,, (Sasarak, Stephanie) (Entered: 02/06/2023) |

| 02/21/2023 | 225 | ORDER: It is hereby ORDERED that the Memorandum Opinion 221 be unsealed in its entirety. Signed by Judge Royce C. Lamberth on 02/21/2023. (lcrcl3) (Entered: 02/21/2023) |
|---|---|---|
| 02/21/2023 | 226 | UNSEALED MEMORANDUM OPINION re Motion 173 for Partial Summary Judgment and Motion 175 for Summary Judgment (originally filed under seal at 221). Signed by Judge Royce C. Lamberth on 01/23/2023 (unsealed 02/21/2023). (lcrcl3) (Entered: 02/21/2023) |
| 02/23/2023 | 227 | Joint STATUS REPORT by UNITED STATES OF AMERICA. (Sasarak, Stephanie) (Entered: 02/23/2023) |
| 02/24/2023 | 228 | Joint STATUS REPORT *re Dkt. No. 227: Corrected Joint Status Report to Include Exhibit A* by UNITED STATES OF AMERICA. (Attachments: # 1 Exhibit Exhibit A – Proposed Revised Summary Judgment Order)(Sasarak, Stephanie) (Entered: 02/24/2023) |
| 03/17/2023 | 229 | MOTION for Judgment *Plaintiffs' Motion for Partial Final Judgment Under Rule 54(b)* by JOSEPH HENCHMAN, BRITTANY MONTROIS, ADAM STEELE. (Attachments: # 1 Proposed Order)(Narwold, William) (Entered: 03/17/2023) |
| 03/17/2023 | 230 | MOTION to Clarify *Motion for Clarification of Summary–Judgment Opinion* by JOSEPH HENCHMAN, BRITTANY MONTROIS, ADAM STEELE. (Attachments: # 1 Proposed Order)(Narwold, William) (Entered: 03/17/2023) |
| 03/24/2023 | 231 | Joint STATUS REPORT by UNITED STATES OF AMERICA. (Miller, Emily) (Entered: 03/24/2023) |
| 03/24/2023 | 232 | Joint MOTION to Amend/Correct 222 Order on Motion for Partial Summary Judgment,,, Order on Sealed Motion for Leave to File Document Under Seal,,, Order on Motion for Summary Judgment,,,,,,,,,,, Order on Motion to Modify,,,,,, Order on Motion for Leave to File,,, Order on Motion to Take Judicial Notice,, *Joint Motion for Amendment of the Court's Order on Summary Judgment Under Rule 60(a)* by JOSEPH HENCHMAN, BRITTANY MONTROIS, ADAM STEELE. (Attachments: # 1 Exhibit A – Proposed Revised Summary Judgment Order, # 2 Proposed Order)(Narwold, William) (Entered: 03/24/2023) |
| 03/31/2023 | 233 | RESPONSE re 229 MOTION for Judgment *Plaintiffs' Motion for Partial Final Judgment Under Rule 54(b)* filed by UNITED STATES OF AMERICA. (Miller, Emily) (Entered: 03/31/2023) |
| 03/31/2023 | 234 | RESPONSE re 230 MOTION to Clarify *Motion for Clarification of Summary–Judgment Opinion* filed by UNITED STATES OF AMERICA. (Miller, Emily) (Entered: 03/31/2023) |
| 04/03/2023 | 235 | Unopposed MOTION for Extension of Time to File Response/Reply as to 229 MOTION for Judgment *Plaintiffs' Motion for Partial Final Judgment Under Rule 54(b)*, 230 MOTION to Clarify *Motion for Clarification of Summary–Judgment Opinion* by JOSEPH HENCHMAN, BRITTANY MONTROIS, ADAM STEELE. (Attachments: # 1 Proposed Order)(Narwold, William) (Entered: 04/03/2023) |
| 04/06/2023 | 236 | ORDER granting Motion 232 to Amend/Correct: It is hereby ORDERED that the motion to amend the Summary Judgment Order 222 is GRANTED. See Order for details. Signed by Judge Royce C. Lamberth on 04/06/2023. (lcrcl3) (Entered: 04/06/2023) |

| | | |
|---|---|---|
| 04/06/2023 | 237 | ORDER granting Motion 235 for Extension of Time to File Reply: It is hereby ORDERED that the motion is GRANTED and plaintiffs shall file any reply to either opposition by 04/14/2023. Signed by Judge Royce C. Lamberth on 04/03/2023. (lcrcl3) (Entered: 04/06/2023) |
| 04/14/2023 | 238 | REPLY to opposition to motion re 230 MOTION to Clarify *Motion for Clarification of Summary–Judgment Opinion Reply in Further Support of Plaintiffs' Motion for Clarification (ECF No. 230)* filed by JOSEPH HENCHMAN, BRITTANY MONTROIS, ADAM STEELE. (Attachments: # 1 Exhibit A)(Narwold, William) (Entered: 04/14/2023) |
| 04/14/2023 | 239 | REPLY to opposition to motion re 229 MOTION for Judgment *Plaintiffs' Motion for Partial Final Judgment Under Rule 54(b) Reply in Further Support of Plaintiffs' Motion for Partial Final Judgment Under Rule 54(b) (ECF No. 229)* filed by JOSEPH HENCHMAN, BRITTANY MONTROIS, ADAM STEELE. (Attachments: # 1 Exhibit A)(Narwold, William) (Entered: 04/14/2023) |
| 04/24/2023 | 240 | Joint STATUS REPORT by UNITED STATES OF AMERICA. (Sasarak, Stephanie) (Entered: 04/24/2023) |
| 05/24/2023 | 241 | Joint STATUS REPORT by UNITED STATES OF AMERICA. (Sasarak, Stephanie) (Entered: 05/24/2023) |
| 05/31/2023 | 242 | NOTICE re: Inclusion as Class Member by PATRICK BRYANT. "Let this be filed. Class Counsel shall respond first, within 30 days." Signed by Judge Royce C. Lamberth on 5/31/2023. (znmw) (Entered: 06/01/2023) |
| 06/08/2023 | 243 | RESPONSE re 242 *Plaintiffs' Response to Patrick Bryant Letter* filed by JOSEPH HENCHMAN, BRITTANY MONTROIS, ADAM STEELE. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7)(Narwold, William) Modified to add link on 6/8/2023 (znmw). (Entered: 06/08/2023) |
| 06/22/2023 | 244 | Joint STATUS REPORT by UNITED STATES OF AMERICA. (Sasarak, Stephanie) (Entered: 06/22/2023) |
| 07/21/2023 | 245 | Joint STATUS REPORT by UNITED STATES OF AMERICA. (Sasarak, Stephanie) (Entered: 07/21/2023) |
| 08/22/2023 | 246 | Joint STATUS REPORT by UNITED STATES OF AMERICA. (Morton, Benton) (Entered: 08/22/2023) |
| 09/21/2023 | 247 | Joint STATUS REPORT by UNITED STATES OF AMERICA. (Sasarak, Stephanie) (Entered: 09/21/2023) |
| 09/25/2023 | 248 | MEMORANDUM OPINION re: Motion 229 for Judgment and Motion 230 to Clarify. Signed by Judge Royce C. Lamberth on 09/25/2023. (lcrcl3) (Entered: 09/25/2023) |
| 09/25/2023 | 249 | ORDER denying Motion 229 for Judgment; denying Motion 230 to Clarify: For the reasons stated in the accompanying Memorandum Opinion 248 , it is hereby ORDERED that the motion for partial final judgment is DENIED. It is further ordered that the motion for clarification is DENIED. Signed by Judge Royce C. Lamberth on 09/25/2023. (lcrcl3) (Entered: 09/25/2023) |
| 10/23/2023 | 250 | |

| | | |
|---|---|---|
| | | Joint STATUS REPORT by UNITED STATES OF AMERICA. (Miller, Emily) (Entered: 10/23/2023) |
| 11/22/2023 | 251 | Joint STATUS REPORT by UNITED STATES OF AMERICA. (Morton, Benton) (Entered: 11/22/2023) |
| 11/24/2023 | 252 | NOTICE *of Name and Email Address Change* by UNITED STATES OF AMERICA (Miller, Emily) (Entered: 11/24/2023) |
| 11/27/2023 | | NOTICE OF ERROR regarding 252 Notice (Other). The following error(s) need correction: Name change must be updated via PACER and the District Court's Attorney Admissions section. (znmw) (Entered: 11/27/2023) |
| 12/22/2023 | 253 | Joint STATUS REPORT by UNITED STATES OF AMERICA. (Sasarak, Stephanie) (Entered: 12/22/2023) |
| 01/15/2024 | 254 | NOTICE of Change of Address by Allen Buckley (Buckley, Allen) (Entered: 01/15/2024) |
| 01/22/2024 | 255 | Joint STATUS REPORT by UNITED STATES OF AMERICA. (McClure, Emily) (Entered: 01/22/2024) |
| 01/22/2024 | 256 | NOTICE *of IRS Refund Estimation* by UNITED STATES OF AMERICA re 222 Order on Motion for Partial Summary Judgment,,, Order on Sealed Motion for Leave to File Document Under Seal,,, Order on Motion for Summary Judgment,,,,,,,,,, Order on Motion to Modify,,,,,, Order on Motion for Leave to File,,, Order on Motion to Take Judicial Notice,, (McClure, Emily) (Entered: 01/22/2024) |
| 01/22/2024 | 257 | DECLARATION *of Kimberly Rogers (Redacted)* by UNITED STATES OF AMERICA re 256 Notice (Other),. (Attachments: # 1 Exhibit A – May 2022 Declaration of Carol Campbell, # 2 Exhibit B – July 2022 Second Declaration of Carol Campbell)(McClure, Emily) (Entered: 01/22/2024) |
| 01/22/2024 | 258 | SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by UNITED STATES OF AMERICA (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Text of Proposed Order, # 2 Unredacted Declaration of Kimberly Rogers, # 3 Exhibit C – Accenture Contract TIRNO–10–C–00022 (Fiscal Years 20112015), # 4 Exhibit D – Accenture Contract TIRNO–11–D–00007 (Fiscal Years 20162017), # 5 Exhibit E – Declaration of Michael P. Miller, Managing Director for Accenture Federal Services LLC, # 6 Exhibit F – Call Center Data, # 7 Exhibit G – Non–Chargeable Contract Line Item Numbers (CLINs) for Accenture Contract TIRNO–10–C–00022, # 8 Exhibit H – Non–Chargeable Contract Line Item Numbers (CLINs) for Accenture Contract TIRNO–11–D–00007)(McClure, Emily) (Entered: 01/22/2024) |
| 01/23/2024 | 259 | Unopposed MOTION for Order *Reviving and/or Restoring Certain Canceled Unobligated Appropriations* by UNITED STATES OF AMERICA. (Attachments: # 1 Text of Proposed Order)(McClure, Emily) (Entered: 01/23/2024) |
| 01/24/2024 | 261 | ORDER granting Unopposed Motion 259 for Order Reviving and/or Restoring Certain Canceled Unobligated Appropriations: It is hereby ORDERED that the government's motion is GRANTED. Signed by Judge Royce C. Lamberth on 01/23/2024. (lcrcl3) (Entered: 01/24/2024) |
| 01/24/2024 | 262 | SEALED DOCUMENT (Declaration of Kimberly Rogers) filed by UNITED STATES OF AMERICA. (This document is SEALED and only available to |

| | | authorized persons.) (Attachments: # 1 Exhibit C, # 2 Exhibit D, # 3 Exhibit E, # 4 Exhibit F, # 5 Exhibit G, # 6 Exhibit H)(znmw) (Entered: 01/29/2024) |
|---|---|---|
| 02/12/2024 | 263 | MOTION for Leave to File *Response* by JOSEPH HENCHMAN, BRITTANY MONTROIS, ADAM STEELE. (Attachments: # 1 Proposed Order)(Narwold, William) (Entered: 02/12/2024) |
| 02/13/2024 | 264 | MOTION for Leave to File *Corrected Version of Plaintiffs' Motion for Leave to File Response 263* by JOSEPH HENCHMAN, BRITTANY MONTROIS, ADAM STEELE. (Attachments: # 1 Proposed Order)(Narwold, William) Modified link on 2/14/2024 (zdp). (Entered: 02/13/2024) |
| 02/15/2024 | 265 | Memorandum in opposition to re 263 Motion for Leave to File, 264 Motion for Leave to File, filed by UNITED STATES OF AMERICA. (McClure, Emily) (Entered: 02/15/2024) |
| 02/20/2024 | 266 | REPLY to opposition to motion re 264 MOTION for Leave to File *Corrected Version of Plaintiffs' Motion for Leave to File Response (ECF 263) Reply in Support of Plaintiffs' Motion for Leave to File Response to Defendant's Notice of Refund Estimation* filed by JOSEPH HENCHMAN, BRITTANY MONTROIS, ADAM STEELE. (Narwold, William) (Entered: 02/20/2024) |
| 02/22/2024 | 267 | MOTION for Leave to File *supplemental brief* by JOSEPH HENCHMAN, BRITTANY MONTROIS, ADAM STEELE. (Attachments: # 1 Exhibit 1 Local Rule 7(m) emails, # 2 Memorandum in Support, # 3 Exhibit exhibit A of memorandum)(Buckley, Allen) (Entered: 02/22/2024) |
| 02/23/2024 | 268 | RESPONSE re 267 MOTION for Leave to File *supplemental brief Plaintiffs' Response to Attorney Allen Buckley's Motion for Leave to File Supplemental Brief* filed by JOSEPH HENCHMAN, BRITTANY MONTROIS, ADAM STEELE. (Narwold, William) (Entered: 02/23/2024) |
| 03/04/2024 | 269 | ORDER denying as moot Motion 263 for Leave to File Response to Defendant's Notice of Refund Estimation; granting in part and denying in part Motion 264 for Leave to File Corrected Version of Response to Defendant's Notice of Refund Estimation; denying Motion 267 for Leave to File Supplemental Brief: It is hereby ORDERED that plaintiffs' Motion for Leave to File Supplemental Brief is DENIED. It is further ORDERED that plaintiffs' Motion for Leave to File Response to Defendant's Notice of Refund Estimation is DENIED AS MOOT. And it is further ORDERED that plaintiffs' Motion for Leave to File Corrected Version of Response to Defendant's Notice of Refund Estimation is GRANTED IN PART and DENIED IN PART. Defendant shall file any Supplemental Declaration of Kimberly D. Rogers no later than 03/08/2024. Plaintiffs shall file any challenge to the IRS' decision by 03/22/2024. In their memorandum, plaintiffs shall set forth any legal basis for further action by this Court. Signed by Judge Royce C. Lamberth on 03/04/2024. (lcrcl3) (Entered: 03/04/2024) |
| 03/05/2024 | 270 | NOTICE *of Filing Supplemental Declaration of Kimberly D. Rogers* by UNITED STATES OF AMERICA re 257 Declaration, (Attachments: # 1 Supplemental Declaration of Kimberly D. Rogers, # 2 Exhibit 1 – Detail for Fiscal Years 2011 through 2015 using 2010 Model, # 3 Exhibit 2 – Detail for Fiscal Years 2016 and 2017, # 4 Exhibit 3 – Detail for Fiscal Years 2014 and 2015 using 2013 Model)(McClure, Emily) (Entered: 03/05/2024) |
| 03/05/2024 | 271 | |

| | | |
|---|---|---|
| | | SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by UNITED STATES OF AMERICA (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Text of Proposed Order, # 2 Exhibit 4 – Contract Obligations in FY2015 Accenture Contract, # 3 Exhibit 5 – Contract Obligations in FY2016 FY2017 Accenture Contract)(McClure, Emily) (Entered: 03/05/2024) |
| 03/07/2024 | 272 | Unopposed MOTION for Extension of Time to *Challenge the IRS's Work on Remand* by JOSEPH HENCHMAN, BRITTANY MONTROIS, ADAM STEELE. (Attachments: # 1 Proposed Order)(Narwold, William) (Entered: 03/07/2024) |
| 03/08/2024 | 273 | ORDER granting Motion 272 for Extension of Time: It is hereby ORDERED that plaintiffs' Unopposed Motion for Extension of Time to Challenge the IRS's Work on Remand is hereby GRANTED. Plaintiffs shall file any challenge to the IRS's work on remand by 04/05/2024. Signed by Judge Royce C. Lamberth on 03/08/2024. (lcrcl3) (Entered: 03/08/2024) |
| 03/11/2024 | 275 | SEALED DOCUMENT filed by UNITED STATES OF AMERICA. (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Exhibit, # 2 Exhibit)(zdp) (Entered: 03/11/2024) |
| 04/05/2024 | 276 | MOTION to Vacate *Plaintiffs' Motion to Vacate Challenged Agency Actions or in the Alternative, For a Schedule to Enforce the Court's Summary Judgment Order [ECF NO. 222]* by JOSEPH HENCHMAN, BRITTANY MONTROIS, ADAM STEELE. (Attachments: # 1 Proposed Order, # 2 Exhibit 1 – USA Response to First Set of Interrogatories, # 3 Exhibit 2 – Filed Under Seal)(Narwold, William). Added MOTION for Scheduling Order on 4/10/2024 (zdp). (Entered: 04/05/2024) |
| 04/05/2024 | 277 | SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by JOSEPH HENCHMAN, BRITTANY MONTROIS, ADAM STEELE (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Proposed Order, # 2 Plaintiffs' Motion to Vacate Challenged Agency Actions or, In the Alternative, for a Schedule to Enforce the Court's Summary Judgment Order [ECF NO. 222], # 3 Exhibit 2 – A. Buckley Cost Analysis)(Narwold, William) (Entered: 04/05/2024) |
| 04/17/2024 | | MINUTE ORDER: Defendant shall respond to plaintiffs' Motion 276 to Vacate Challenged Agency Actions by 05/01/2024. Plaintiffs' reply due by 05/08/2024. Signed by Judge Royce C. Lamberth on 04/17/2024. (lcrcl3) (Entered: 04/17/2024) |
| 04/18/2024 | 279 | SEALED MOTION to Vacate or Enforce filed by JOSEPH HENCHMAN, BRITTANY MONTROIS, ADAM STEELE. (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Exhibit 2)(znmw) (Entered: 04/22/2024) |
| 05/01/2024 | 280 | Memorandum in opposition to re 276 Motion to Vacate,, Motion for Scheduling Order, filed by UNITED STATES OF AMERICA. (Sasarak, Stephanie) (Entered: 05/01/2024) |
| 05/01/2024 | 281 | MOTION to Strike 277 SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by JOSEPH HENCHMAN, BRITTANY MONTROIS, ADAM STEELE (This document is SEALED and only available to authorized persons.), 276 MOTION to Vacate *Plaintiffs' Motion to Vacate Challenged Agency Actions or in the Alternative, For a Schedule to Enforce the Court's Summary Judgment Order [ECF NO. 222]* MOTION for Scheduling Order *Motion to Strike Ex. 2, Buckley Cost* |

| | | |
|---|---|---|
| | | *Analysis* by UNITED STATES OF AMERICA. (Sasarak, Stephanie) (Entered: 05/01/2024) |
| 05/08/2024 | 282 | RESPONSE re 281 MOTION to Strike 277 SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by JOSEPH HENCHMAN, BRITTANY MONTROIS, ADAM STEELE (This document is SEALED and only available to authorized persons.), 276 MOTION to Vacate *Plaintiffs' filed by JOSEPH HENCHMAN, BRITTANY MONTROIS, ADAM STEELE. (Buckley, Allen) (Entered: 05/08/2024)* |
| 05/08/2024 | 283 | REPLY to opposition to motion re 276 SEALED MOTION filed by JOSEPH HENCHMAN, BRITTANY MONTROIS, ADAM STEELE. (This document is SEALED and only available to authorized persons.) *Reply in Support of Plaintiffs' Motion to Vacate Challenged Agency Actions [ECF 279]* filed by JOSEPH HENCHMAN, BRITTANY MONTROIS, ADAM STEELE. (Narwold, William) Modified link on 5/9/2024 (zdp). (Entered: 05/08/2024) |
| 05/08/2024 | 284 | SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by JOSEPH HENCHMAN, BRITTANY MONTROIS, ADAM STEELE (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Proposed Order, # 2 Reply in Support of Plaintiffs' Motion to Vacate Challenged Agency Actions [ECF 279])(Narwold, William) (Entered: 05/08/2024) |
| 07/02/2024 | 285 | ORDER TO SHOW CAUSE: It is hereby ORDERED that within ten (10) days, the defendant shall show cause as to why this matter should not be remanded back to the IRS for failure to comply with the Court's Amended Remand Order 236 . In particular, the defendant shall address whether the IRS arrived at its estimate based on the dates in the initial Remand Order 222 or the Amended Remand Order. If the former, the defendant shall explain the appropriate corrective action. Plaintiffs may respond within seven (7) days of the defendant's submission. Signed by Judge Royce C. Lamberth on 07/02/2024. (lcrcl3) (Entered: 07/02/2024) |
| 07/12/2024 | 286 | RESPONSE TO ORDER OF THE COURT re 285 Order to Show Cause,, filed by UNITED STATES OF AMERICA. (Attachments: # 1 Exhibit Ex. 1 PTIN Costs and Restitution for FY2011 through 2015, # 2 Exhibit Ex. 2 PTIN Costs and Restitutions for 2016 and 2017, # 3 Exhibit Ex. 3 2014 and 2015 PTIN Concession and Restitution using 2013 Model, # 4 Exhibit Ex. 4 PTIN Monthly Registrant Counts)(Sasarak, Stephanie) (Entered: 07/12/2024) |
| 07/16/2024 | 287 | RESPONSE re 286 Response to Order of the Court, *Plaintiffs' Response to Defendant's Response to Order to Show Cause (ECF 286)* filed by JOSEPH HENCHMAN, BRITTANY MONTROIS, ADAM STEELE. (Narwold, William) (Entered: 07/16/2024) |
| 08/09/2024 | 288 | SEALED MEMORANDUM OPINION (This document is SEALED and only available to authorized persons.) Signed by Judge Royce C. Lamberth on 8/9/2024.(zcll) (Entered: 08/12/2024) |
| 08/09/2024 | 289 | SEALED ORDER (This document is SEALED and only available to authorized persons.) Signed by Judge Royce C. Lamberth on 8/9/2024.(zcll) (Entered: 08/12/2024) |
| 08/12/2024 | | Set/Reset Deadlines: Joint Status Report due by 9/12/2024. (zcll) (Entered: 08/12/2024) |

| 08/20/2024 | 290 | Joint MOTION for Extension of Time to *comply with order* by UNITED STATES OF AMERICA. (Attachments: # 1 Text of Proposed Order)(McClure, Emily) (Entered: 08/20/2024) |
|---|---|---|
| 08/23/2024 | 291 | ORDER granting 290 Motion for Extension of Time to Comply with Order. Signed by Judge Royce C. Lamberth on 08/23/2024. (lcrcl3) (Entered: 08/23/2024) |
| 08/28/2024 | 292 | NOTICE *of Compliance with Order* by UNITED STATES OF AMERICA re 291 Order on Motion for Extension of Time to (McClure, Emily) (Entered: 08/28/2024) |
| 09/03/2024 | 293 | MEMORANDUM OPINION with agreed–upon redactions. Signed by Judge Royce C. Lamberth on 08/09/2024. (lcrcl3) (Entered: 09/03/2024) |
| 09/12/2024 | 294 | Joint STATUS REPORT by UNITED STATES OF AMERICA. (Sasarak, Stephanie) (Entered: 09/12/2024) |
| 10/15/2024 | 295 | Joint STATUS REPORT by UNITED STATES OF AMERICA. (Sasarak, Stephanie) (Entered: 10/15/2024) |
| 11/14/2024 | 296 | Joint STATUS REPORT by UNITED STATES OF AMERICA. (Sasarak, Stephanie) (Entered: 11/14/2024) |
| 01/13/2025 | 297 | Unopposed MOTION for Extension of Time to *File Joint Status Report* by UNITED STATES OF AMERICA. (Attachments: # 1 Text of Proposed Order)(Sasarak, Stephanie) (Entered: 01/13/2025) |
| 01/15/2025 | 298 | ORDER granting 297 Motion for Extension of Time; Joint Status Report due by 1/27/2025. Signed by Judge Royce C. Lamberth on 1/15/2025. (lcrcl3) (Entered: 01/15/2025) |
| 01/24/2025 | 299 | Joint STATUS REPORT by UNITED STATES OF AMERICA. (Sasarak, Stephanie) (Entered: 01/24/2025) |
| 02/10/2025 | 300 | NOTICE *of Refund Estimate* by UNITED STATES OF AMERICA (Attachments: # 1 Affidavit 2d Supp. Decl. of Kimberly Rogers (redacted), # 2 Exhibit Exs. 1–9 of Rogers Decl. Redacted, # 3 Exhibit Ex. 10 Rogers Decl., # 4 Exhibit Ex. 11 Rogers Decl.)(Sasarak, Stephanie) (Entered: 02/10/2025) |
| 02/10/2025 | 301 | SEALED MOTION filed by UNITED STATES OF AMERICA (Attachments: # 1 Text of Proposed Order, # 2 Affidavit Unredacted 2d Supp. Decl. of Kimberly Rogers, # 3 Exhibit Exhibits 1–9 of 2d Supp. Decl. of Kimberly Rogers unredacted)(Sasarak, Stephanie) (Entered: 02/10/2025) |
| 03/05/2025 | 302 | Unopposed MOTION for Acceptance of Untimely Opt–Out Request *Plaintiffs' Unopposed Motion for Acceptance of Untimely Opt–Out Request* by JOSEPH HENCHMAN, BRITTANY MONTROIS, ADAM STEELE. (Attachments: # 1 Exhibit 1 – Fein Declaration, # 2 Proposed Order)(Narwold, William) (Entered: 03/05/2025) |
| 03/18/2025 | 303 | Joint MOTION For Final Judgment As To Count Two In Plaintiffs' Second Amended Class Action Complaint Under Rule 54(b) by JOSEPH HENCHMAN, BRITTANY MONTROIS, ADAM STEELE. (Attachments: # 1 Proposed Order)(Narwold, William) Modified event type on 3/25/2025 (zdp). (Entered: 03/18/2025) |
| 03/24/2025 | 304 | ORDER granting 302 Motion for Acceptance of Untimely Opt–Out. Signed by Judge Royce C. Lamberth on 3/20/2025. (lcrcl3) (Entered: 03/24/2025) |

| 03/24/2025 | 305 | ORDER and FINAL JUDGMENT: granting 303 Motion for Final Judgment as to Count 2 in Plaintiffs' Second Amended Class Action Complaint. See Order for details. Signed by Judge Royce C. Lamberth on 3/23/2025. (lcrcl3) Modified on 3/25/2025 (smc). (Entered: 03/24/2025) |
|---|---|---|
| 03/26/2025 | 306 | NOTICE OF APPEAL TO DC CIRCUIT COURT as to 248 Memorandum & Opinion, 288 Sealed Memorandum Opinion, 249 Order on Motion for Judgment,, Order on Motion to Clarify, 236 Order on Motion to Amend/Correct, 289 Sealed Order, 222 Order on Motion for Partial Summary Judgment,,, Order on Sealed Motion for Leave to File Document Under Seal,,, Order on Motion for Summary Judgment,,,,,,,,,,, Order on Motion to Modify,,,,,, Order on Motion for Leave to File,,, Order on Motion to Take Judicial Notice,, 221 Sealed Memorandum Opinion, 305 Order on Motion for Miscellaneous Relief by JOSEPH HENCHMAN, BRITTANY MONTROIS, ADAM STEELE. Filing fee $ 605, receipt number ADCDC–11568531. Fee Status: Fee Paid. Parties have been notified. (Narwold, William) (Entered: 03/26/2025) |

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

Adam Steele, Brittany Montrois, and )
Joseph Henchman, on behalf of )
themselves and all others similarly )
situated, )
                    )    No.: 1:14-cv-01523-RCL
       *Plaintiffs*, )
                    )
       v. )
                    )
United States of America, )
                    )
       *Defendant*. )
                    )

## NOTICE OF APPEAL

Notice is hereby given that Plaintiffs Adam Steele, Brittany Montrois, and Joseph Henchman, on behalf of themselves and the Class, hereby appeal to the United States Court of Appeals for the District of Columbia Circuit from the Order and Final Judgment as to Count Two in Plaintiffs' Second Amended Class Action Complaint entered in this Action on March 24, 2025 (ECF No. 305), the Court's Order and Opinion on the parties' cross-motions for summary judgment (ECF Nos. 221, 222, 236), the Court's Order and Opinion regarding Plaintiffs' Motion for Clarification of Summary-Judgment Opinion (ECF Nos. 248, 249) and the Court's Order and Opinion on Plaintiffs' Motion to Vacate Challenged Agency Actions (ECF Nos. 288, 289).

Dated: March 26, 2025

Respectfully submitted,

*/s/ William H. Narwold*
MOTLEY RICE LLC
William H. Narwold
bnarwold@motleyrice.com
DC Bar No. 502352
One Corporate Center

1

20 Church Street, 17th Floor
Hartford, CT 06103
Telephone: (860) 882-1676
Facsimile: (860) 882-1682

MOTLEY RICE LLC
Meghan S. B. Oliver
moliver@motleyrice.com
Charlotte Loper
cloper@motleyrice.com
Ebony Bobbitt
ebobbitt@motleyrice.com
28 Bridgeside Boulevard
Mount Pleasant, SC 29464
Telephone: (843) 216-9000
Facsimile: (843) 216-9450

*Counsel for Plaintiffs*
*Adam Steele, Brittany Montrois, Joseph Henchman, and the Class*

LAW OFFICE OF ALLEN BUCKLEY LLC
Allen Buckley
ab@allenbuckleylaw.com
2900 Paces Ferry Road, Suite C-2000
Atlanta, GA 30339
Telephone: (678) 217-4083
Facsimile: (855) 243-0006

GUPTA WESSLER PLLC
Deepak Gupta
deepak@guptawessler.com
Jonathan E. Taylor
jon@guptawessler.com
1735 20th Street, NW
Washington, DC 20009
Telephone: (202) 888-1741
Facsimile: (202) 888-7792

*Additional Counsel for Plaintiffs*
*Adam Steele, Brittany Montrois, Joseph Henchman, and the Class*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 26, 2025 I electronically filed the foregoing document through this Court's CM/ECF system. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

*/s/ William H. Narwold*
William H. Narwold

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

ADAM STEELE, BRITTANY
MONTROIS, and JOSEPH HENCHMAN,
on behalf of themselves and all others
similarly situated,

     *Plaintiffs,*

**v.**

**UNITED STATES OF AMERICA,**

     *Defendant.*

Case No. 1:14-cv-1523-RCL

## ORDER

For the reasons stated in the accompanying Memorandum Opinion, it is hereby **ORDERED** that plaintiffs' Motion to Vacate is **GRANTED IN PART** and **DENIED IN PART**; and it is further

**ORDERED** that the government's Motion to Strike the Buckley Report is **GRANTED**; and it is further

**ORDERED** that plaintiffs' Motion for Leave to File Reply Under Seal is **GRANTED**.

The Memorandum Opinion was filed under seal because it references documents the parties filed under seal. It is hereby **ORDERED** that the parties meet and confer and jointly identify which, if any, parts of the Memorandum Opinion should remain sealed within ten days.

It is further **ORDERED** that the case is **REMANDED** to the IRS to determine an appropriate refund consistent with the Memorandum Opinion, as well as the Court's Summary Judgment Opinion and Amended Remand Order.

The parties are further **ORDERED** to file within 30 days of the issuance of this Order and every 30 days thereafter a joint status report informing the Court of the status of the IRS's work

1

on remand until such time as that work is complete. Once such work is complete, the IRS shall file a notice in this Court of its estimated refund. But first, the parties shall meet and confer and must make a good-faith effort to narrow any areas of disagreement. No later than thirty days after the conference, the parties shall file a joint status report succinctly outlining their points of disagreement about the IRS's refund estimate. When the IRS files the notice of its revised refund estimate, it shall address plaintiffs' objections in a manner that provides the Court with a sufficient basis for finding the estimate reasonable. Once the government files this notice, plaintiffs will have thirty days to file a challenge to the IRS's refund determination. The government may file an opposition within thirty days; plaintiffs may file a reply within fourteen days thereafter.

The Court will retain jurisdiction for purposes of further proceedings to follow thereafter.

**IT IS SO ORDERED.**

Date: _____8 - 9 - 24_____

_Royce C. Lambeth_
Royce C. Lambeth
United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Adam Steele, Brittany Montrois, and )
Joseph Henchman, on behalf of )
themselves and all others similarly )
situated, )
                                  )     No.: 1:14-cv-01523-RCL
         *Plaintiffs,* )
                                    )
       v. )
                                      )
United States of America, )
                                      )
         *Defendant.* )
                                    )

## [~~PROPOSED~~] ORDER AND FINAL JUDGMENT AS TO COUNT TWO IN PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT

This matter is before the Court on the Parties' Joint Motion for Final Judgment under Federal Rule of Civil Procedure 54(b) as to the Second Claim in Plaintiffs' Second Amended Class Action Complaint ("Excessive PTIN Fees for the Period 2010–2017") ("Count Two"). ECF No. 148. The Court being sufficiently advised, finds, orders, and adjudges as follows:

    1.     On September 8, 2014, Plaintiffs filed their Class Action Complaint. ECF No. 1

    2.     On August 7, 2015, Plaintiffs filed their Amended Complaint alleging, among other things, two causes of action relating to preparer tax identification number ("PTIN") fees: one challenging the IRS's PTIN fee as unlawful agency action and one alternatively challenging the PTIN fee as excessive. ECF No. 41.

    3.     The PTIN fee is comprised of an amount payable to the IRS and an amount payable to a third-party vendor, Accenture, which processes initial and renewal PTIN applications.

    4.     On September 9, 2015, Plaintiffs filed their Motion for Class Certification. ECF No. 46.

40

5.      On February 9, 2016, the Court granted their motion in part and denied it in part. ECF Nos. 54, 55.

6.      On February 16, 2016, Plaintiffs moved for reconsideration of the Court's order. ECF No. 56.

7.      On August 8, 2016, the Court granted Plaintiffs' Motion for Reconsideration and certified the following class under Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3): "All individuals and entities who have paid an initial and/or renewal fee for a PTIN, excluding Allen Buckley, Allen Buckley LLC, and Christopher Rizek." ECF Nos. 63, 64.

8.      Beginning on October 7, 2016, Plaintiffs, in accordance with Federal Rule of Civil Procedure 23(c)(2), provided notice of this Action and an opportunity for exclusion from the Action. ECF No. 77. 1,075 individuals and entities excluded themselves from the class in this Action. *Id.* at 2.

9.      On September 7, 2016, Plaintiffs filed their Motion for Summary Judgment and the government filed a Motion for Partial Summary Judgment. ECF Nos. 66, 67.

10.     On June 1, 2017, in a Memorandum Opinion and accompanying Order, ECF Nos. 78, 79, the Court granted both motions in part and denied them in part.

11.     On July 10, 2017, this Court entered Final Judgment and Permanent Injunction as to Plaintiffs' Count One and ordered a full refund of PTIN fees paid from September 1, 2010 to the (then) present to each class member. ECF No. 82.

12.     On or about February 1, 2018, the claims administrator, Verita Global LLC ("Verita") (formerly known as Kurtzman Carson Consultants, LLC), provided notice to the remaining individuals covered by Count Two. ECF No. 302-1 ¶ 6. This notice was sent to approximately 77,500 class members who had previously not received notice and had not had an

opportunity for exclusion from the Action ("2018 Notice"). *Id.* Fifteen individuals and entities excluded themselves from the class after receiving the 2018 Notice, *id.* ¶ 11, in addition to the 1,075 individuals and entities that had excluded themselves following the initial notice provided in 2016, ECF No. 82 (citing ECF No. 77-1).

13.     On March 1, 2019, following the government's appeal, the Court of Appeals for the District of Columbia vacated and remanded the case in order to determine "whether the amount of the PTIN fee unreasonably exceeds the costs to the IRS to issue and maintain PTINs." *Montrois v. United States*, 916 F.3d 1056, 1059 (D.C. Cir. 2019).

14.     On October 28, 2020, Plaintiffs filed their proposed Second Amended Class Action Complaint which, among other things, included a third claim for excessive PTIN fees for the period 2020 and thereafter ("Count Three"). ECF No. 139-1 at 16 (redline); ECF No. 148 at 15-16 (final).

15.     On November 13, 2020, the parties entered into a Joint Stipulation Regarding Post-2019 PTIN Fees. The parties agreed that "they w[ould] seek adjudication and a partial final judgment – by way of summary judgment, trial, appeal, and/or settlement – of the disputes relating to the 2010-17 Claim (the 'Initial Adjudication'). The parties further agree[d] to utilize, to the fullest extent possible, the outcome of the Initial Adjudication to resolve disputes relating to the Post-2019 Claim." ECF No. 144 ¶ 3.

16.     On March 23, 2022, the parties cross-moved for partial summary judgment as to Count Two. ECF Nos. 173, 175.

17.     On January 24, 2023, the Court granted in part and denied in part the parties' motions. ECF No. 222; ECF No. 236 (amended). The Court held that "the FY 2011 through 2017 PTIN and vendor fees were excessive as a matter of law . . . ." ECF No. 226 at 2. The Court then

remanded the case "to the IRS to determine an appropriate refund to the class." *Id.*; ECF No. 222 at 2.

18.     On January 22, 2024, the government filed its Notice of Refund Estimate. ECF No. 256. In addition to the $110,322,017 the government had already conceded, the government calculated an additional $57,444,051 "Court Ordered" refund. *Id.* at 2. In total, the government calculated an estimated refund of $167,766,068 for FY 2011 – FY 2017. *Id.*

19.     On August 9, 2024, following Plaintiffs' challenge to the IRS's Notice of Refund Estimate, the Court granted in part and denied in part Plaintiffs' Motion to Vacate. ECF No. 289 at 1. The Court again remanded the case to the government in order "to determine an appropriate refund consistent with the Memorandum Opinion, as well as the Court's Summary Judgment Opinion and Amended Remand Order." *Id.*

20.     On January 24, 2025, the parties filed a Joint Status Report. ECF No. 299. The government represented that it had calculated an additional refund of $850,762 for a total estimated refund of $168,700,624 for FY 2011 – FY 2017. *Id.* at 3-4. Plaintiffs represented that, while they did not agree with the government's work on the second remand, they "d[id] not intend to raise any challenges specific to the IRS's work on the second remand. Rather, Plaintiffs agree[d] with the IRS that the more efficient path is to file a joint motion respectfully requesting that the Court enter partial final judgment as to Count [Two] under Fed. R. Civ. P. Rule 54(b) in the amount of $168,700,624 for FY 2011 – FY 2017." *Id.* at 1-2.

21.     The parties agreed that following the government's filing of its second notice of refund estimate, rather than further briefing on challenges to the IRS's refund determination, they would "jointly file a motion for entry of partial judgment and a proposed form of judgment, and agree[d] that the judgment should be certified as final as to FY2011 – FY 2017 under Fed. R. Civ.

P. 54(b)." *Id.* at 4. The parties reserve all of their rights to challenge, appeal from, and seek review of the requested judgment and all orders, opinions, rulings, decisions merged into, underlying, or relating to the judgment.

22.     On February 10, 2025, the government filed its second Notice of Refund Estimate informing the Court that "[i]ncluding the United States' prior concessions, the Court ordered incremental refund increases the United States' liability for fiscal years 2011-2017 to a total of $168,700,624." ECF No. 300 at 2.

In light of the above, and after consideration of the government's Notice of Refund Estimates, and the parties' Joint Motion for Final Judgment as to Count Two in Plaintiffs' Second Amended Class Action Complaint Under Rule 54(b) it is hereby:

1.     ORDERED that the parties' Joint Motion for Final Judgment as to Count Two in Plaintiffs' Second Amended Class Action Complaint Under Rule 54(b) (ECF No. **303**) is **GRANTED**;

2.     ORDERED that Judgment is hereby **ENTERED** in favor of Plaintiffs and the class and against the government as to Count Two of the Second Amended Complaint in the amount of $168,700,624 for excessive PTIN user fees for the period FY 2011 – FY 2017;

3.     ORDERED that the government shall make payment of such judgment to Verita promptly after the expiration of the period for appeal or, in the event of an appeal, promptly after the final determination of all appeals or the final judgment of this Court on remand (in the amount determined following appeal resolution), whichever is later;

4.     ORDERED that pursuant to a plan of distribution approved by the Court at the appropriate time, Verita shall process the individual refunds, less the pro rata share of any

attorneys' fees and costs approved by the Court, to class members after the final determination of the amount of any attorneys' fees and costs that may be awarded to Plaintiffs' counsel;

5.     ORDERED that all individuals and entities listed by ClaimID in Exhibit C attached to the Declaration of Hannah Fein (ECF No. 302-1) and all individuals and entities listed by ClaimID in Exhibit C attached to the Declaration of Kathleen Wyatt (ECF No. 77-1), are hereby excluded from the class and are not bound by this Final Judgment and are not entitled to receive any recovery on account of the Final Judgment in this case;

6.     ORDERED that after the expiration of the period for appeal or, in the event of an appeal (and assuming the decisions of this Court are affirmed), within 30 days following the United States Court of Appeals for the District of Columbia's entry of judgment, the parties will submit a Joint Status Report that includes a proposed schedule for addressing Count Three;

7.     ORDERED that there is no just reason for delay in the entry of this Final Judgment and immediate entry by the Clerk of Court is directed. For the purposes of Federal Rule of Appellate Procedure 4(a), this is a final, appealable order; and

8.     ORDERED that jurisdiction is hereby retained over the parties and the class members for all matters relating to this Action, including the adjudication of Count Three and the administration, interpretation, effectuation, or enforcement of this Final Judgment.

**IT IS SO ORDERED.**


Date: _____7/23/25_____          _____

The Honorable Royce C. Lamberth
Senior United States District Judge

6

| | |
|---|---|
| **ADAM STEELE, BRITTANY MONTROIS, and JOSEPH HENCHMAN, on behalf of themselves and all others similarly situated**, | |
| *Plaintiffs,* | **Case No. 1:14-cv-1523-RCL** |
| **v.** | ***\*\*\* FILED UNDER SEAL \*\*\**** |
| **UNITED STATES OF AMERICA**, | |
| *Defendant.* | |

## MEMORANDUM OPINION

Over a year ago, this Court determined that the fees the IRS charged tax return preparers to obtain or renew their Preparer Tax Identification Numbers (PTINs), along with the fees the agency required preparers to pay to a third-party vendor, were excessive. To determine the appropriate refund, the Court remanded this case to the IRS. The Court instructed the agency to provide a reasonable estimate of the share of the fees that exacted from tax return preparers based on activities held improper by the Court. Earlier in this case, the government conceded that it had overcharged preparers by $110,322,017. Now, the IRS has calculated an additional refund of $57,527,844. Plaintiffs challenge the IRS's methodology and urge the Court to order the refund of the PTIN and vendor fees in their entirety.

Both parties seem to think the Court did not mean what it said when it ruled that the remedy for this case would be for the IRS to produce a reasonable estimate of the amount improperly exacted. Plaintiffs expect the Court to suddenly change its mind and order the government to hand back everything return preparers were charged, both properly and improperly. The government

seems to think its work on remand is beyond scrutiny, as it did not deign to respond to many of plaintiffs' specific arguments.

The Court declines plaintiffs' invitation to abandon its previous rulings and order the PTIN and vendor fees refunded in full. It also rejects plaintiffs' effort to subject the IRS's calculations to arbitrary and capricious review and to replace the IRS's refund determination with plaintiffs' own. Rather, the Court will evaluate the IRS's refund determination on the basis articulated in the order remanding this matter to the agency.

In the main, the IRS's work on remand passes muster. The agency used a reasonable methodology to estimate the extent to which the PTIN and vendor fees were excessive. Nonetheless, plaintiffs have identified several questionable decisions and apparent mistakes by the agency, which the government neither justified in its declarations nor defended against plaintiffs' challenges. The Court thus cannot approve the IRS's refund determination at this stage. Instead, the Court will remand this matter to the agency once more. This time, the Court will require plaintiffs and the government to meet and confer so that they may at least attempt to resolve their disagreements before bringing the matter back to the Court.

Plaintiffs' motion to vacate will therefore be **GRANTED IN PART** and **DENIED IN PART**. The government's motion to strike a report prepared by one of plaintiffs' counsel that purports to offer an alternative estimate of the IRS's refund obligation is **GRANTED**. Finally, plaintiffs' motion to file their unredacted reply under seal will be **GRANTED**.

## I.    BACKGROUND

### A.  Statutory and Regulatory Background

The Court assumes familiarity with its memorandum opinion granting in part and denying in part plaintiffs' motion for summary judgment and defendant's motion for partial summary judgment. That opinion details this case's factual background and procedural posture up until the

2

post-summary judgment disputes. *See Steele v. United States* ("*Steele* SJ Op."), 657 F. Supp. 3d 23, 28–34 (D.D.C. 2023). Accordingly, the Court will draw on that opinion but provide only the background information necessary to resolve the present motions.

The Internal Revenue Code defines a "tax return preparer" as "any person who prepares for compensation, or who employs one or more persons to prepare for compensation, any return of" or "claim for refund of" federal income taxes. 26 U.S.C. § 7701(a)(36)(A). While the Code does not set professional standards or licensing requirements for return preparers, Congress enacted a statute in 1976 authorizing the IRS to require return preparers to list their Social Security numbers for identification purposes on returns they prepare. *See* Tax Reform Act of 1976, Pub. L. No. 94-455, § 1203(d), 90 Stat. 1520, 1691.

In 1998, Congress amended that statute to authorize the IRS to permit return preparers to list a separate identification number issued by the agency instead of a Social Security number. 26 U.S.C. § 6109(a), (d). The IRS promulgated an implementing regulation the following year creating the PTIN program and allowing, but not requiring, return preparers to list a PTIN issued by the IRS in lieu of a Social Security number on returns. Furnishing Identifying Number of Income Tax Return Preparer, 64 Fed. Reg. 43,910 (Aug. 12, 1999) (codified at 26 C.F.R. pt. 1).

In 2010 and 2011, the IRS issued a series of regulations expanding its reach over return preparers. As a part of that effort, the IRS expanded the PTIN program, retooled it as a broader information-gathering system as to preparers, made obtaining and renewing PTINs mandatory for preparers, and began charging a fee to obtain and renew a PTIN. *See* Furnishing Identifying Number of Tax Return Preparer, 75 Fed. Reg. 60,309–10 (Sept. 30, 2010); User Fees Relating to Enrollment and Preparer Tax Identification Numbers, 75 Fed. Reg. 60,316, 60,319 (Sept. 30, 2010). Preparers who were neither attorneys nor certified public accountants were required to

become "registered tax return preparers" by passing a background check and competency exam and fulfil continuing education requirements. *See* Regulations Governing Practice Before the Internal Revenue Service, 76 Fed. Reg. 32,286, 32,286–87 (June 3, 2011). To support the expanded program, the IRS organized a new Return Preparer Office (RPO) with multiple departments. The IRS also "required preparers to pay a 'vendor fee' to Accenture, a third-party contractor that the agency hired to develop, maintain, and operate the computer system responsible for PTIN registrations." *Steele* SJ Op., 657 F. Supp. 3d at 30–31.

The regulations also authorized the IRS to prescribe the manner for issuing and renewing a PTIN. *See* 26 C.F.R. 1.6109-2(d)–(e). To that end, since 2010 the IRS has required those seeking to obtain or renew a PTIN to complete IRS Form W-12. *See Steele v. United States*, No. 1:23-cv-918 (RCL), 2024 WL 1111639, at *2 (D.D.C. Mar. 14, 2024). Preparers must enter their name, Social Security number, date of birth, and contact information, as well as further information, such as whether the preparer is current on his or her own federal taxes and has any past felony convictions. *See id*.

After the IRS implemented its new return preparer regulations, a group of return preparers sued the IRS, arguing that its new preparer credentialing process was unlawful because the statute on which the agency relied for authority did not reach return preparers. *See Loving v. IRS*, 742 F.3d 1013, 1015–16 (D.C. Cir. 2014). The district court granted summary judgment for the plaintiffs, invalidating the credentialing requirement, and the Circuit affirmed. *Id.* at 1021–22. *Loving* thus invalidated many of the Return Preparer Office (RPO)'s activities that had been funded by fees charged for issuing or renewing a PTIN. But *Loving* left undisturbed the regulations requiring all return preparers to obtain and renew PTINs and to pay a fee and provide information to do so.

## B. Procedural History

### 1. Pre-*Montrois* Procedural History

In the wake of *Loving*, plaintiffs Adam Steele and Brittany Montrois, on behalf of a putative class of tax return preparers, filed an action in this Court against the United States challenging the IRS's policies of requiring PTIN issuance and renewal, requesting allegedly unnecessary information to issue and renew a PTIN, and imposing a fee on the issuance and renewal of PTINs. *See* Compl., ECF No. 1.

The parties later cross-moved for summary judgment and on June 1, 2017, this Court granted in part and denied in part each party's summary judgment motion. *Steele v. United States*, 260 F. Supp. 3d 52, 67–68 (D.D.C. 2017). The Court first held that the Internal Revenue Code authorized the IRS to require the use of PTINs, although it did not address the renewal requirement. *Id*. at 62–63. But the Court sided with plaintiffs to hold that under the Independent Offices Appropriations Act (IOAA), the IRS lacked authority to *charge a fee* for PTINs. *Id.* at 63–67. The Court therefore issued a final judgment and permanent injunction forbidding the IRS from charging for issuing or renewing PTINs. Final J. & Permanent Inj., ECF No. 82, *Steele v. United States*, No. 1:14-cv-1523 (RCL) (D.D.C. July 7, 2017).

The government appealed, and in a March 1, 2019 decision, the D.C. Circuit determined that the IRS has authority to charge tax return preparers a fee for obtaining and renewing a PTIN. *Montrois v. United States*, 916 F.3d 1056, 1062–66 (D.C. Cir. 2019). The Circuit vacated the judgment of the Court and remanded the matter for further proceedings, "including an assessment of whether the amount of the PTIN fee unreasonably exceeds the costs to the IRS to issue and maintain PTINs." *Id.* at 1058.

### 2. Summary Judgment and Remand to the IRS

Following remand, the parties cross-moved for summary judgment. *See* ECF Nos. 173, 175. The Court granted in part and denied in part each party's motion. The Court held that the FY 2011 through FY 2017 PTIN and vendor fees were excessive as a matter of law. In reaching this conclusion, the Court held it would not defer to the IRS in determining whether the activities used to justify the PTIN and vendor fees were sufficiently related to the provision of PTINs to return preparers, but it would defer to some extent to the IRS's estimation of the costs to carry out those activities. *Steele* SJ Op., 657 F. Supp. 3d at 38–39. If the charged-for activities are appropriate, the next question is "whether, as a quantitative matter, the amount charged for carrying them out is reasonable" and on that question the IRS's "estimation of that amount is [entitled to] 'more than mere deference or weight.'" *Id.* at 39 (quoting *Cent. & S. Motor Freight Tariff Ass'n, Inc. v. United States*, 777 F.2d 722, 729 (D.C. Cir. 1985)).

With that standard in mind, the Court concluded that the IRS's fees improperly charged for certain activities. Specifically, the Court held "the PTIN and vendor fees for FY 2011 through 2017 were excessive to the extent that they were based on the following activities:

- All activities already conceded by the government in this case.
- Any Compliance Department activities other than (1) investigating ghost preparers; (2) handling complaints regarding improper use of a PTIN, use of a compromised PTIN, or use of a PTIN obtained through identity theft; and (3) composing the data to refer those specific types of complaints to other IRS business units.
- All Suitability Department activities.
- The portion of support activities that facilitated provision of an independent benefit to the agency and the public.
- The portion of Accenture's activities as a vendor that facilitated provision of an independent benefit to the agency and the public.

*Id.* at 48. But the Court acknowledged that since "the scope of the compliance and support activities just identified is unclear from the record . . . . that scope, and the corresponding cost amount" would need to be ascertained. *Id.*

To do so, the Court remanded this matter back to the IRS. The Court noted that "notwithstanding the reviewing court's authority to determine what *activities* an agency may lawfully charge for under the IOAA, that statute commits the *amount* to be charged to agency discretion." *Id.* at 49 (citing 31 U.S.C. § 9701(b) and *Cent. & S.*, 777 F.2d at 729). It also observed the gap in relative institutional competence between the Court and the IRS. *See id.* ("Judges 'do not sit as a board of auditors, steeped in accountancy and equipped to second-guess an estimate which seems on its face to be reasonable.'" (quoting *Cent. & S.*, 777 F.2d at 738)). Accordingly, the Court ruled that it would "remand to the IRS to determine an appropriate refund for the class that is consistent with this Opinion and the accompanying Order." *Id.* Specifically, the Court ordered the IRS to

> determine in a manner consistent with the accompanying Memorandum Opinion the amount of the FY 2011 through 2017 PTIN and vendor fees it lawfully charged return preparers by subtracting from the fees it actually charged a reasonable estimate of the cost of the activities identified [by the Court] as being invalid bases for an IOAA fee.

Remand Order 2, ECF No. 222. The IRS's determination of a reasonable estimate would be entitled to "more than mere deference or weight." *Steele* SJ Op., 657 F. Supp. 3d at 39 (quoting *Cent. & S.*, 777 F.2d at 729.

As amended,[1] the Remand Order required the IRS to calculate the refund for the PTIN fees charged between October 1, 2010 and October 31, 2015 using the 2010 Cost model and $50 fee amount as the baselines and to calculate the refund for the PTIN fees charged between November

---

[1] *See infra* note 8.

1, 2015 and July 10, 2017 with the 2015 Cost Model and $33 fee as the baseline. Amend. Order 1, ECF No. 236.[2] And it required the IRS to determine the refund for the vendor fees charged between October 1, 2010 and October 31, 2015 based on the agency's initial contract with Accenture and fee amounts of $14.25 for new registrations and $13 for renewals and it required the IRS to determine the refund for the fees charged between November 1, 2015 and July 10, 2017 using "the subsequent contract (to the extent it contemplates different activities)" and the $17 fee. *Id.* at 2.

The Court retained jurisdiction for purposes of further proceedings. Remand Order 2. And it ordered the parties to file joint status reports every thirty days to update the Court on the IRS's work on remand until that work was complete. *Id.* at 3.

### 3. The IRS's Work on Remand

The Court signed its remand order on January 23, 2023. Over the next year, the parties filed status reports.[3] Finally, just one day short of a year later, the IRS reported that it had completed its calculations. Notice, ECF No. 256. It estimated the amount of the Court-ordered refund to be $167,766,068. *Id.* This figure included both the United States' prior concessions of $110,322,017 plus an additional $57,444,051. *Id.* To explain the methodology behind the IRS's estimate, the agency submitted a declaration of Kimberly D. Rogers, Director of the RPO. 1st Rogers Decl., ECF No. 257. The declaration included as attachments two 2022 declarations from Carol A. Campbell, then-director of the RPO, concerning the government's concessions at the

---

[2] For simplicity's sake, however, the Court will refer to the FY 2011–2015 and 2016–2017 PTIN and vendor fees.

[3] In the meantime, the Court denied plaintiffs' motion for partial final judgment under Federal Rule of Civil Procedure 54(b) and motion for clarification on whether PTIN fees could include costs relating to "ghost preparers" or the registration of foreign preparers. *Steele v. United States*, No. 1:14-cv-1523 (RCL), 2023 WL 6215790 (D.D.C. Sept. 25, 2023).

summary judgment stage.  *See id.* ¶ 6; 1st Campbell Decl., ECF No. 257-1; 2d Campbell Decl., ECF No. 257-2.

In response, plaintiffs moved for a briefing schedule for their challenge to the IRS's work on remand.  ECF No. 263.  The government opposed this motion and noted that in response to plaintiffs' requests for more detailed information about the calculations, it planned to produce a supplemental declaration.  ECF No. 265.  The Court ordered the government to file any supplemental declaration by March 8, 2024.  Order, ECF No. 269.  And it ordered plaintiffs to file any challenge to the IRS's work on remand by March 22, and to set forth any legal basis for further action by the Court.  *Id.* Following the Court's Order, the IRS filed a supplemental declaration by Ms. Rogers with more detailed information, 2d Rogers Decl., ECF No. 270-1, including tables indicating the government's prior concessions and additional refunds for every cost category, *see* Ex. 1 to 2d Rogers Decl. ("2011–2015 Costs Table"), ECF No. 270-2; Ex. 2 to 2d Rogers Decl. ("2016–2017 Costs Table"), ECF No. 270-3.  Before discussing what happened next, the Court will summarize the IRS's work on remand.

### (i)  The PTIN Fee

On top of the government's prior concessions, the IRS estimated the amount charged for the PTIN fee to be refunded at $51,032,080.  1st Rogers Decl. ¶ 27.

For FY 2011 through 2013, the IRS estimated the refund amount at $952,309.  *Id.* ¶ 16.  In these years, the PTIN fee was $50.  *Id.* ¶ 14.  The agency used the 2010 Cost Model to identify impermissible activities that had not already been conceded and to estimate the amount to be refunded for each cost category.  *Id.* ¶ 15.  The 2010 Cost Model is a model the IRS used to calculate an annual PTIN fee of $50.  *See* 2010 Cost Model, ECF No. 174-8.  It includes projected costs for various capabilities—for example "Communications & Customer Support"—and their

component "Cost Categor[ies]" such as "Customer Support," "Marketing & Branding," and "Communications" and sub-categories. *See id.* at 1.

For FY 2014 through 2015, the IRS used the 2010 Cost Model to "define the activities and their projected costs," resulting in an estimated refund of $34,968,502. 1st Rogers Decl. ¶¶ 17, 21. In other words, the IRS determined the non-chargeable activities based on the 2010 Cost Model, and then used the actual number of PTINs issued in FY 2014–2015 to estimate the amount to be refunded. *Id.* ¶¶ 17–18.[4]

Next, the IRS estimated the total additional PTIN refund for FY 2016–2017 to be $15,111,270. *Id.* ¶ 26. Per the Remand Order, the IRS used the 2015 Cost Model and fee amount of $33 as the baseline for these years. *Id.* ¶ 24. Although the 2010 Cost Model projected costs per category of activity, the 2015 Cost Model relied on the salaries and benefits of RPO employees. *See* 2015 Cost Model 27, ECF No. 174-12. Using the 2015 Cost Model, the IRS identified non-chargeable activities. 1st Rogers Decl. ¶ 25. It then determined amounts charged for such activities based on the number of PTINs issued or renewed in those years. *Id.* ¶ 25. It estimated that particular percentages of certain cost categories had been for non-chargeable activities. *Id.* For instance, the agency estimated that 28% of costs for "Compliance/Complaint Referrals" needed to be refunded. *Id.*

---

[4] The IRS also provided a lower alternative estimate of $18,806,444 for FY 2015–2016 based on the 2013 Cost Model. 1st Rogers Decl. ¶ 23. But the Court will not consider this alternative. It previously held that because in those two years the IRS charged the fee amount "noticed by regulation as calculated in its 2010 Cost Model," the government was "wrong to rely on the 2013 Cost Model to differentiate FY 2011 through 2013 from FY 2014 and 2015." *Steele* SJ Op., 657 F. Supp. 3d at 39. It therefore ruled that it would "evaluate the alleged excessiveness of the PTIN fees for all of FY 2011 through 2015 based on the justifications given in the 2010 Cost Model." *Id.*; *see also* Amend. Order 1. Granted, the Court provided that "the IRS may look to later cost models for assistance in identifying costs that were improperly included in the 2010 and 2015 Cost Models." Amend. Order 1; *see also Steele* SJ Op, 657 F. Supp. 3d at 39 n.9 ("[T]he IRS may . . . . use later cost models for assistance in calculating an eventual *refund* based on a more granular breakdown of the various RPO departments' activities."). But here, the IRS has not attempted to use the 2013 Cost Model to gain insights into the costs included in the 2010 Cost Model. Instead, it has provided a refund calculation for FY 2015–2016 based entirely on the 2013 Cost Model. *See* Ex. 3 to 2d Rogers Decl., ECF No. 270-4. Since that is incompatible with the Court's ruling, the Court will not consider the IRS's alternative calculation.

Combining the agency's yearly PTIN refunds for FY 2011–2017 amounted to $51,032,080, not counting the government's prior concessions. *Id.* ¶ 27.

### (ii) The Accenture (Vendor) Fee

The IRS estimated the amount of vendor fees to be refunded at $6,411,972. 1st Rogers Decl. ¶ 60.

As discussed above, the IRS required preparers to pay not only a PTIN fee to the IRS, but also a vendor fee to Accenture. From FY 2011 to 2015, that fee was set by the first contract between the IRS and Accenture at $14.25 for new PTIN registrations and $13 for PTIN renewals. *Id.* ¶ 28. For FY 2016 and 2017, under the second IRS-Accenture contract, the vendor fee was set at $17 for both new registrations and renewals. *Id.* ¶ 29.

In estimating a refund, the difficulty for the IRS lay in its lack of access to Accenture's "exact costs." *Id.* ¶ 30. However, it had three sources of information: (1) its contracts with Accenture, (2) a sealed declaration from Michael P. Miller, Managing Director for Accenture Federal Services, LLC, provided by Accenture in response to plaintiffs' written requests, and (3) Accenture call center data provided by Accenture that breaks down the number of return preparer calls handled by Accenture's call center. *Id.* ¶¶ 30–31; *see also* Miller Decl., ECF No. 262-3; Call Center Report, ECF No. 262-4.

For FY 2011 through 2015, the IRS estimated the Court-ordered refund of the Accenture fee at $3,535,432. 1st Rogers Decl. ¶ 49. The IRS's approach was to calculate, for each payment made to Accenture, what percent of the payment was due to non-chargeable activities, then multiply that percentage by the total amount of fees paid to arrive at the total refund amount. First, based on the Miller Declaration, the IRS concluded that the $1.25 difference between the initial PTIN registration fee ($14.25) and the PTIN renewal fee ($13.00) was appropriate, 1st Rogers

Decl. ¶¶ 32–35, because the cost difference related to "the portions of Accenture's work related to the issuance, renewal, and maintenance of PTINs," *Steele* SJ Op., 657 F. Supp. 3d at 45. The IRS also relied on the Miller Declaration to conclude that 27% of the remaining $13.00 fee charged for both issuance and renewal went to Accenture's call center and that, based on the numbers of calls per category in the Call Center Report, 2.69% of return preparer calls should be excluded as unlawful. 1st Rogers Decl. ¶¶ 36–41. This yielded a refund of $0.09 per vendor fee. *Id.* ¶ 47.

Tackling the rest of the vendor fee (i.e., the vendor fee minus the $1.25 differential and minus the amount relating to the call center), however, was less straightforward. Without internal Accenture data, the IRS could not readily sort how much of the remaining fee went to permissible or impermissible activities. *See* 1st Rogers Decl. ¶ 45. Instead, the IRS sliced the first Accenture contract into "Contract Line Item Numbers" ("CLINs"),[5] identified "all unique and specific CLINs," excluded call center-related CLINs, identified the remaining CLINs that were non-allowable, and calculated the percentage of non-chargeable, non-call center CLINs to the total number of non-call center CLINs. *Id.* ¶¶ 44–45. The IRS weighted each CLIN equally, which it considered to be "the most reasonable basis upon which to base its estimate" given the lack of "internal Accenture data regarding its exact pricing to return preparers of the various CLINs." *Id.* ¶ 45. This process estimated the percentage of the non-call center costs dedicated to non-chargeable activities at 9.23%. *Id.* ¶ 44(e). The IRS then multiplied the remaining fee by 9.23% to arrive at an estimated refund amount of $0.88 per fee paid. *Id.* ¶¶ 44(f), 47. The non-chargeable call center-related services were added to the remaining non-chargeable costs to equal $0.97 per

---

[5] The contracts themselves did not list CLINS. *See* FY 2011–2015 Accenture Contract ("1st Contract"), ECF No. 258-3; FY 2016–2017 Accenture Contract ("2d Contract"), ECF No. 258-4. Rather, the IRS broke down the contracts into chunks of at least one sentence and designated each a CLIN. *See* CLINs Table for FY 2011–2015 Accenture Contract, ECF No. 271-2; CLINs Table for FY 2016–2017 Accenture Contract, ECF No. 271-3. Although plaintiffs contend these are not technically CLINs, the Court will refer to them as such for the sake of clarity. *See* Pls.' Reply 9 n.6, ECF No. 9.

vendor fee per year. *Id.* ¶ 47. Multiplying this by the number of fees issued each year resulted in a total refund amount for FY 2011 through 2015 vendor fees of $3,535,432. *Id.* ¶ 49.

The IRS used a similar methodology to estimate a refund for the vendor fees for FY 2016–2017 of $2,876,539. *Id.* ¶¶ 50–59.[6] Thus the total estimated refund for vendor fees amounted to $6,411,972. *Id.* ¶ 60. Combining that figure with the total estimated refund for the IRS portion of the fees yields $57,444,051. *Id.* ¶ 61. Once the government's prior concessions are included, the IRS's estimated refund amount was $167,766,068.

### 4. Plaintiffs' Motion to Vacate

Plaintiffs have moved to "Vacate Challenged Agency Actions." Pls.' Mot. to Vacate ("Pls.' Mot."), ECF No. 276. They argue that the Court should review the IRS's estimate not just for conformity with the terms of the Court's Remand Order, but also under the arbitrary and capricious standard of the Administrative Procedure Act. *Id.* at 8. Plaintiffs attack the IRS's estimate for lack of supporting explanation and criticize steps taken to arrive at the estimated refund amounts. *Id.* at 8–14. They further argue that the Accenture fee should be refunded in its entirety because the estimate of the Accenture fee was arbitrary and capricious and because the IRS lacked authority to impose that fee in the first place. *Id.* at 15–23. Finally, plaintiffs urge the Court to refund the PTIN fees in full—despite *Montrois* and the Court's Summary Judgment Opinion. *Id.* at 23–25. Alternatively, plaintiffs' motion requests that the Court adopt a report prepared by plaintiffs' attorney Allen Buckley that purports to provide an alternative estimate of

---

[6] The calculation for this period differed in two respects. First, since Accenture charged the same amount for registration and renewals, there was no need to consider a difference between these two amounts. Second, the IRS concluded that it was not required to refund any of the costs relating to Accenture's call center for FY 2016–2017 because during this timespan Accenture's costs from return preparer calls relating to non-chargeable activities were covered by the government rather than by return preparers. 1st Rogers Decl. ¶ 53.

the costs the Court had ordered the IRS to calculate.  *Id.* at 25–26; *see also* Buckley Report, Ex. 2 to Pls.' Mot. to Vacate, ECF No. 279-1.[7]

Following plaintiffs' motion, the government filed a combined opposition and motion to strike Mr. Buckley's report.  Gov.'s Opp'n to Pls.' Mot. to Vacate & Mot. to Strike ("Gov.'s Opp'n"), ECF No. 281.  The government defended the IRS's estimates as consistent with the Court's Order.  *See id.* at 8–22.  The government also argued that the Court should strike the Buckley Report on several grounds.  *See id.* at 22–24.  Finally, the government raised several arguments about the eventual distribution to class members and calculation of attorney's fees.  *See id.* at 24–26.  Plaintiffs filed a reply, Pls.' Reply, ECF No. 283, and moved for leave to file under seal an unredacted version of that reply, Pls.' Mot. to Seal, ECF No. 284.  Finally, Mr. Buckley filed a response to the government's motion to strike.  Buckley Response to Mot. to Strike, ECF No. 283.

The parties' motions are now ripe for review.[8]

---

[7] Mr. Buckley has appointed himself to the role of "class-counsel-in-exile," resulting in him repeatedly submitting documents without the consent of plaintiffs' actual class counsel.  *Steele* SJ Op., 657 F. Supp. 3d at 33.  In March, the Court dismissed a splinter suit brought by Mr. Buckley for claim-splitting.  *Steele v. United States*, No. 1:23-cv-918-RCL, 2024 WL 1111639 (D.D.C. Mar. 14, 2024).  This time, however, class counsel has adopted Mr. Buckley's approach by incorporating it into the plaintiffs' brief as an alternative form of relief.

[8] Upon joint motion of the parties, the Court had modified the Remand Order to reflect the actual effective dates of the PTIN and vendor fees.  Amend. Order, ECF No. 236.  But, in reviewing the parties' filings, it became apparent that the IRS's estimates were based on the dates in the original rather than the amended remand order.  So, the Court ordered the government to show cause as to why the case should not be remanded back to the IRS for failure to comply with the Cour's Amended Remand Order.  Show Cause Order, ECF No. 285.  In response, the government acknowledged that it had inadvertently failed to comply with the Amended Remand Order by including PTINs issued or renewed in October 2015 in the calculation for FY 2016 rather than FY 2015.  Gov. Response to Show Cause Order 1, ECF No. 286.  But the government argued that remand is not necessary, because running the numbers correctly results in increasing the refund owed by $83,790, a change of around 0.1 percent.  *Id.* 1–3.  Plaintiffs did not challenge this calculation and agreed that a separate remand to decide the issue is unnecessary.  Pls.' Response to Show Cause Order, ECF No. 287.  In light of the parties' responses, the Court will proceed to evaluate the IRS's estimate without a separate remand for compliance with the Amended Remand Order.

14

## II.    DISCUSSION

For the reasons discussed below, the Court will evaluate the IRS's work on remand to determine if the agency has reasonably estimated the impermissible portion of the fees that must be refunded.  While the Court rejects many of plaintiffs' challenges to the IRS's approach, it does see several apparent errors that preclude it from finding the agency's refund determination to be reasonable.  The Court will therefore remand this case back to the agency to try again.[9]

### A.  Preliminary Matters

Before the Court can evaluate the IRS's work on remand, it must address several preliminary matters.

### 1.    The Court Has Authority to Review the IRS's Work on Remand

As a threshold matter, the Court is satisfied that it has authority to review the IRS's determination.

After the Court prompted plaintiffs to explain the legal basis for further action by the Court, they contended that courts in this District routinely evaluate whether the work performed by an agency on remand complied with the terms of the remand.  *See* Pls.' Mot. 6–7.  Defendants do not challenge a court's general authority to enforce its own remand order.  The Court concludes it has authority to proceed.  *See, e.g.*, *Flaherty v. Pritzker*, 17 F. Supp. 3d 52, 55 (D.D.C. 2014) (noting that "[d]istrict courts have the authority to enforce the terms of their mandates" and that "[t]he exercise of this authority is 'particularly appropriate' when a case returns to a court on a motion to

---

[9] The government chose to dedicate several pages of its brief to a class recovery issue.  *See* Gov.'s Opp'n 24–26.  Specifically, the government argues that to avoid ordering money damages for which the United States has not waived sovereign immunity, restitution must be limited to the amount each class member paid for his or her PTIN issuance or renewal.  *Id.*  Plaintiffs are correct that answering questions of class distribution at this stage would be premature.  *See* Pls.' Reply 2 n.3.

enforce the terms of its mandate to an administrative agency." (quoting *Int'l Ladies' Garment Workers' Union v. Donovan*, 733 F.2d 920, 922 (D.C. Cir. 1984)).

### 2. The Court Will Not Abandon Its Remand Order

Next, plaintiffs raise two arguments for why the Court should not simply review the IRS's estimate for compliance with the Remand Order. Neither is persuasive.

### *(i) The Court Will Not Vacate the Fees Entirely*

First, plaintiffs assert that the Court should simply disregard the IRS's estimate. Instead, it should vacate the IRS's establishment of the challenged PTIN and vendor fees in the first place and order the fees refunded in full. Pls.' Mot. 20–25; Reply 2–3, 12–14.

But the suggestion that the Court decide for itself the amount to be refunded contradicts "settled principles of administrative law," according to which "when a court reviewing agency action determines that an agency made an error of law, the court's inquiry is at an end: the case must be remanded to the agency for further action consistent with the corrected legal standards." *PPG Indus., Inc. v. United States*, 52 F.3d 363, 365 (D.C. Cir. 1995) (collecting cases). What is more, plaintiffs' proposal is an invitation to disregard the previous rulings of this Court and the D.C. Circuit. The D.C. Circuit has held that the IOAA authorized the IRS to impose fees to recoup the costs of "generating PTINs and maintaining a database of PTINs" and that the decision to impose a PTIN fee was not arbitrary and capricious. *Montrois*, 916 F.3d at 1062–68. And this Court has already concluded that the IRS permissibly charged for certain activities. *Steele* SJ Op., 657 F. Supp. 3d at 41. The Court will not negate the previous rulings in this case by vacating lawful regulations or ordering the IRS to refund both the lawful and unlawful portions of the PTIN

16

fees.[10] Plaintiffs' maximalist position is simply another instance of their refusal to accept rulings that do not go their way. *See, e.g., Steele v. United States,* 2023 WL 6215790, at *1 (denying motion for clarification "because the plaintiffs seek not clarification, but relitigation of a matter already decided"); *Steele v. United States*, No. 1:23-cv-918 (RCL), 2024 WL 1111639, at *12 (D.D.C. Mar. 14, 2024) (noting that plaintiffs' counsel Allen Buckley's "evident purpose in launching" a splinter suit against the IRS was to "do an end-run around the Court's orders in" the original case). Plaintiffs have not moved for reconsideration and the Court will not reverse course now.

The Court therefore rejects plaintiffs' desperate attempt to undo the Court's remand to the agency.

*(ii) The IRS's Work Is Not Subject to Arbitrary and Capricious Review*

Second, plaintiffs seek to challenge the IRS's work as arbitrary and capricious under the APA. *See* Pls.' Mot. 6–8 (citing 5 U.S.C. § 706(2)). But that standard is inapplicable because the IRS's refund determination is not final agency action.

"The APA permits judicial review of 'final agency action' only." *Ipsen Biopharmaceuticals, Inc. v. Azar*, 943 F.3d 953, 955 (D.C. Cir. 2019) (citing 5 U.S.C. § 704). The APA defines "agency action" as including "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 551(13). An

---

[10] Also, the Court will not entertain plaintiffs' related argument that the Accenture fee was imposed unlawfully. *See* Pls.' Mot. 22–23. In its Summary Judgment Opinion, the Court declined to consider this precise argument because plaintiffs had raised it for the first time in their reply brief, and therefore waived it. *Steele* SJ Op., 657 F. Supp. 3d at 44; *see also Nippon Shinyaku Co., Ltd. v. Iancu*, 369 F. Supp. 3d 226, 239 n.8 (D.D.C. 2019) ("Arguments raised for the first time in a reply brief are waived."). Over a year after the Court's ruling, plaintiffs now say that the Court erred in finding this argument was raised for the first time in a reply brief. Pls.' Mot. 22. Yet the time to raise this argument was in a motion for summary judgment, not a reply brief and not at the damages stage of litigation. Plaintiffs have made no effort to explain their delay, let alone their entitlement to reconsideration. Under these circumstances, the Court declines to revisit its earlier ruling. Finally, for the reasons discussed below the Court rejects the premise of plaintiffs' argument that they may raise the issue afresh at this stage because the IRS's estimate is final agency action.

agency action is final only if two conditions are met. "First, the action must mark the 'consummation' of the agency's decisionmaking process . . . it must not be of a merely tentative or interlocutory nature." *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (quoting *Chicago & Southern Air Lines, Inc. v. Waterman S.S. Corp.*, 333 U.S. 103, 113 (1948)). "[S]econd, the action must be one by which 'rights or obligations have been determined,' or from which 'legal consequences will flow[.]'" *Id.* (quoting *Port of Boston Marine Terminal Ass'n. v. Rederiaktiebolaget Transatlantic*, 400 U.S. 62, 71 (1970)).

Here, the IRS's determination of an appropriate refund pursuant to the Court's Order is not final agency action. Establishing the PTIN fees in the first place was final agency action. *See Steele* SJ Op., 657 F. Supp. 3d at 34; *see also* 31 U.S.C. § 9701(b) ("The head of each agency . . . may prescribe regulations establishing the charge for a service or thing of value provided by the agency."). *Montrois* already decided that the IRS's decision to impose a PTIN fee was not arbitrary and capricious. *Montrois*, 916 F.3d at 1067. In remanding to the agency, this Court has not ordered the IRS to set new fees. Rather, it has directed the IRS to calculate reasonable estimates of how much of the previously-exacted fees were charged for unlawful activities. Unlike regulations establishing the amount of fees, this calculation does not bind regulated parties. *Cf. Tozzi v. U.S. Dep't of Health & Hum. Servs.*, 271 F.3d 301, 310 (D.C. Cir. 2001) ("Reviewability under the APA hinges upon whether the listing has legal effect, which in turn is a function of the agency's intention to bind either itself or regulated parties.") (internal quotation and citation omitted). It was not an exercise of regulatory authority. *Cf. Racing Enthusiasts & Suppliers Coal. v. EPA*, 45 F.4th 353, 358 (D.C. Cir. 2022). Rather, it was a response to a request issued by the Court so that it could craft an appropriate remedy with the benefit of the IRS's expertise and with proper respect for the IRS's statutory role. Plaintiffs'

examples of courts reviewing agency work on remand are not to the contrary, *see* Pls.' Mot. 6–7, 23, because in each of the cited decisions, the court reviewed final agency action, remanded the case to the agency to provide additional justification for the agency's decision, and then reviewed the same agency action in light of the new justifications.[11]

Since the IRS's estimate was not final agency action, the Court will not consider whether it is arbitrary and capricious under the APA. Instead, the Court will consider whether the IRS's work on remand complies with the Court's order remanding to the agency.

### 3. To Comply With the Remand Order, the Estimates Underlying the IRS's Refund Determination Must Be Reasonable

As discussed above, the Court tasked the IRS with "determin[ing] an appropriate refund for the class that is consistent with" the Court's Summary Judgment Opinion and accompanying order. *Steele* SJ Op., 657 F. Supp. 3d at 48. Specifically, the Court required the IRS to produce "a reasonable estimate of the cost of the activities identified [by the Court] as being invalid bases for an IOAA fee" and then to subtract that figure from the FY 2011 through 2017 PTIN and vendor fees it actually charged return preparers. Remand Order 2. The IRS was required to craft only a "reasonable estimate" of the invalid costs, not an exact determination nor even an amount the Court would necessarily agree with. *See Steele* SJ Op., 657 F. Supp. 3d at 49 (emphasizing that the IOAA "commits the *amount* to be charged to agency discretion" (citing 31 U.S.C. § 9701(b) and *Cent. & S.*, 777 F.2d at 729)); *id.* (noting that judges "do not sit as a board of auditors, steeped in

---

[11] *See Resolute Forest Prod., Inc. v. U.S. Dep't of Agric.*, 187 F. Supp. 3d 100, 102 (D.D.C. 2016); *Muwekma Ohlone Tribe v. Salazar*, 813 F. Supp. 2d 170, 184–188 (D.D.C. 2011), *aff'd*, 708 F.3d 209 (D.C. Cir. 2013); *Bean Dredging, LLC v. United States*, 773 F. Supp. 2d 63, 67 (D.D.C. 2011); *Air Transp. Ass'n of Canada v. F.A.A.*, 323 F.3d 1093, 1094–95 (D.C. Cir. 2003). The only exception is *Plunkett v. Castro*, 67 F. Supp. 3d 1 (D.D.C. 2014). That decision is slightly more similar to this case because it involved review of the agency's work on remand. But the *Plunkett* court was nonetheless reviewing final agency action, not an estimate prepared by the agency to assist the court in devising a remedy. *See Plunkett*, 67 F. Supp. 3d at 11, 22.

accountancy and equipped to second-guess an estimate which seems on its face to be reasonable" (quoting *Cent. & S.*, 777 F.2d at 729)).

Accordingly, the Court will uphold the IRS's refund determination, so long as (1) the agency subtracted estimates for the costs of activities identified as invalid bases for IOAA fees from the amounts it actually charged and (2) those estimates are "reasonable."

In considering the reasonableness of the IRS's estimates, the Court will bear in mind the difficult and exceptional context in which the agency had to arrive at its figures. Some allowance must be made for the fact that this is "an unusual case in which the agency [was] asked to [set a new fee] retrospectively." *Steele* SJ Op., 657 F. Supp. 3d at 49. The Court ordered the IRS to estimate what it could lawfully have charged as far back as FY 2011 without handing it the keys to a time machine. Estimates calculated a decade or more after the fact may be reasonable even if rougher than what might be appropriate in other contexts. So, the IRS's retrospective estimates will not necessarily be treated as if they were contemporaneous agency action.[12] And even when an agency acts prospectively to set a fee under the IOAA, since "calculat[ing] the exact cost of servicing each individual . . . would be an all but impossible task," its computation "must necessarily be based on numerous approximations and can only be expected to be accurate within reasonable limits." *See Nat'l Cable Television Ass'n, Inc. v. F.C.C.*, 554 F.2d 1094, 1105–06 (D.C. Cir. 1976). The alternative to this flexible approach would be the anomaly of "allow[ing]

---

[12] Plaintiffs have seized on the Court's statement that "the government must be able to explain with respect to each activity that formed the basis for the PTIN fees how that activity was reasonably related to providing the private benefit that the Circuit identified in *Montrois*: a means of identifying return preparers that protects them from identity theft." *Steele* SJ Op., 657 F. Supp. 3d at 38. But they have taken this language out of context. This passage concerned the qualitative question of whether an activity could be used to justify a PTIN fee, not the quantitative question of whether on remand the IRS provided a reasonable estimate of the excessive portion of its fees. *See id.* at 38–39. The Court did not require the IRS to explain every aspect of its calculation of the appropriate refund. That said, the requirement that the IRS's estimate be reasonable does imply that the agency must provide enough information for the Court to determine whether its estimates are reasonable. That may require more or less information depending on the circumstances.

plaintiffs the opportunity to have a court set the fee and substitute its own judgment for the agency's simply because they waited until after they had paid the fee for several years to challenge it and seek monetary relief." *Steele* SJ Op., 657 F. Supp. 3d at 49.

With those considerations in mind, the Court will turn to the appropriate refund.

### 4. The Court Will Strike the Buckley Report

In evaluating the IRS's work on remand, the Court will disregard the report authored by plaintiffs' attorney Allen Buckley and submitted by plaintiffs. Without getting into the propriety of a counsel of record putting himself forward as an expert witness, the Court will strike plaintiffs' document because it second-guesses the remedy already adopted in the Memorandum Opinion and is irrelevant to the task at hand.

Federal Rule of Civil Procedure 12(f) permits a court to strike "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter" from a "pleading." Fed. R. Civ. P. 12(f). "Under this Rule, 'pleading' encompasses expert reports." *Barnes v. District of Columbia*, 289 F.R.D. 1, 6 (D.D.C. 2012) (Lamberth, C.J.) (quoting U.*S. ex rel. Pogue v. Diabetes Treatment Ctrs. of Am., Inc.*, 474 F. Supp. 2d 75, 79 (D.D.C. 2007) (Lamberth, J.)). The Buckley Report purports to be an expert report, as Mr. Buckley relies on his status as a Certified Public Accountant and knowledge of cost accounting. Buckley Report 1.

In the Summary Judgment Opinion, the Court firmly explained that it would not grant "plaintiffs the opportunity to have a court set the fee and substitute its own judgment for the agency's." *Steele* SJ Op., 657 F. Supp. 3d at 49. The Court left no doubt that "[t]he only proper place for this case to go is back to the IRS." *Id.* Nonetheless, plaintiffs argue that if the Court does not agree to refund the PTIN fees in full, it should refund an amount calculated by Mr.

Buckley. Pls.' Mot. 25–27.[13]  To that end, plaintiffs have presented the Court with a ninety-four-page report authored by Mr. Buckley that purports to determine the fees the IRS could have lawfully charged for PTIN issuance and renewal in FY 2011 through 2017.  *See* Buckley Report. Yet the Court will not do an about-face and let plaintiffs supplant the agency and calculate the refund amount themselves.

The Court will therefore disregard and strike this purported expert report.

### 5.  The Court Will Grant Plaintiffs' Motion to File Under Seal

Finally, plaintiffs have moved for leave to file under seal an unredacted version of their reply because it contains information deemed confidential or Highly confidential under the Protective Order, ECF No. 114.  As the government does not oppose this motion, and the redacted information concerns details of internal Accenture processes, it will be granted.

## B.  The Court Will Order a Partial Remand Back to the IRS

The Court cannot approve the IRS's refund determination because the agency's work on remand suffers from several apparent defects identified by plaintiffs.  The government has failed to respond to many of plaintiffs' arguments, thus needlessly complicating the Court's assessment of plaintiffs' various challenges and contributing to the necessity of a remand back to the IRS. Starting with the PTIN fees, the agency's refund determination for support costs for FY 2011–2015 is too slight to be facially reasonable.  As for the Accenture fees, although the agency's overall approach is reasonable, its implementation has seemingly fumbled some details.  Since the Court cannot approve the IRS's refund determination in its entirety, it will give the agency a chance

---

[13] Class counsel maintains that he merely consented to the inclusion of this argument in the brief in the spirit of cooperation, and asserts that "[t]his section was authored by Attorney Buckley without input from class counsel." Pls.' Mot. 27 n.5.  However, it was class counsel who signed and filed this motion, and therefore he is responsible for its contents.  *See* Fed. R. Civ. P. 11(b) ("By presenting to the court a . . . written motion, or other paper--whether by signing, filing, submitting, or later advocating it--an attorney . . . certifies" certain features of the legal and factual contentions therein).  Plaintiffs cannot shirk responsibility for an argument they chose to present in their brief.

to revise, or at least try to justify, its work on remand. However, the Court finds that plaintiffs' other challenges to the agency's estimated refund are meritless.

### 1. The PTIN Fees

In evaluating the IRS's refund determination for the PTIN fees, the Court cannot wholly agree with either party. The Court finds that the IRS's estimated refund for its support costs for FY 2011–2015 is simply too small to be reasonable, at least on its face. It will therefore require the agency to either explain or revise its estimated refund for this set of costs. However, the Court does not agree with plaintiffs that the IRS erroneously estimated a refund of 28% of the costs of the Compliance Department for FY 2016–2017.

#### (i) Support Costs for FY 2011–2015

The IRS has estimated a refund for the FY 2011–2015 support costs that is too low to be reasonable, at least on its face. The Court will therefore require the agency to revisit or at least explain these estimates.

The Summary Judgment Opinion directed the IRS to calculate refunds for unallowable FY 2011–2015 support costs beyond what the agency had already conceded. In this period, the IRS charged for certain RPO "support costs" involving "customer support, communication, IT, and operational support." *Steele* SJ Op., 657 F. Supp. 3d at 39. The government later conceded certain support costs in the 2010 Cost Model but "continue[d] to defend a substantial portion of those costs." *Id.* at 42. The concessions omitted IT costs as well as communications and operational support costs deemed PTIN-related. *Id.* at 43 (citing 2d Campbell Decl. ¶ 6). Because "[t]he government ha[d] not demonstrated that all of the support costs it continues to defend were reasonably related to the provision of a private benefit," the Court concluded that on remand the IRS would need to determine what portion of support costs were not allowable, in addition to the

amounts already conceded. *Id.* Of the support costs, the IRS calculated additional refunds of 0% of Marketing & Branding, 0% for Communications, 0% for OPR/PMO Ops Support, and 0.5% for IT. 2011–2015 Costs Table ll. 12, 19, 103, 113.

The government's position that it need only refund an additional sliver of support costs beyond the amount already conceded is at odds with the Summary Judgment Opinion. For one thing, it would be surprising if the support costs sufficiently related to provision of a private benefit so dwarfed the unallowable support costs because "the IRS charged for support activities facilitating its entire pre-*Loving* return preparer regulatory apparatus." *Steele*, 657 F. Supp. 3d at 42. And it seems the IRS failed to refund activities already deemed unallowable by the Court. Take, for example, "Vendor / IT Management (Includes Vendor Mgmt. (not strictly IT) for Reg., Testing, and [Continuing Education] and Business Owners of System Implementation)," a subcategory of OPR/PMO Ops Support. *See* 2011–2015 Costs Table ll. 72–76. The IRS neither conceded any of these costs nor determined that any refund was necessary. Yet plaintiffs correctly point out that the Summary Judgment Opinion held that testing and continuing education "are not reasonably related to the provision of a private benefit." *Steele* SJ Op., 657 F. Supp. 3d at 44. How can the IRS maintain that 100% of the costs of this category concerned provision of a private benefit, even though the category expressly relates to activities already held impermisslbe? The IRS does not say, because the government chose not to respond to plaintiffs' argument.

Likewise, the IRS's decision to refund only 0.5% of IT costs for FY 2011 through 2015 is unreasonable on its face. *See* 2011–2015 Costs Table ll. 104–113. The Court is skeptical that 99.5% of IT costs for this period were sufficiently related to provision of a private benefit even though "[g]iven the breadth of the RPO program before *Loving* and the 2010 Cost Model's failure to separate out the different work that the supporting departments were supporting, it is virtually

24

certain that some RPO IT activities between FY 2011 and 2015 supported substantive activities invalidated by *Loving*." *Steele* SJ Op., 657 F. Supp. 3d at 42–43. The 0.5% figure for FY 2011–2015 is also hard to square with the agency's other estimates of IT costs. Somehow, the amount of "IT/Contract Costs" to be refunded is around $6,500 a year for FY 2011–2015 using the 2010 Cost Model, about $1,650,000 for 2014 and 2015 using the 2013 Cost Model, and approximately $300,000 for 2016 and 2017 using the 2015 Cost Model. 1st Rogers Decl. ¶¶ 15, 18, 22, 25. In the absence of any justification from the IRS, the Court is unwilling to assume that the IT costs unrelated to provision of a private benefit swung so wildly between time periods. The government has not tried to explain these apparent discrepancies, as it failed to address plaintiffs' arguments about inadequate refunds of support costs.

Therefore, in light of the apparent flaws in the IRS's work on remand and the government's failure to defend this work, the Court finds the IRS's estimated refund amounts for support costs in FY 2011–2015 to be unreasonable on their face.[14]

---

[14] To be clear, the problem with the agency's refund determinations for support costs is that the estimates seem too low, at least absent explanation. But the Court does not accept plaintiffs' argument that the IRS erred by repeatedly setting the portion to be refunded at a neat and arguably arbitrary 33.3%. *See* Pls.' Mot. 11. Of course, the share of unallowable costs in each category was not exactly one third. But under the circumstances, a rough estimate is not necessarily unreasonable. And contra plaintiffs, Pls.' Mot. 10; Pls.' Reply 6, it is not automatically unreasonable to decide to refund one-third of a particular cost category without explaining how the agency arrived at that particular percentage. The problem here is that the IRS provided a suspiciously small refund and failed to justify it even in the teeth of cogent concerns raised by plaintiffs.

*(ii) Refund Calculations for FY 2016–2017*

Plaintiffs also attack the IRS's estimates for FY 2016–2017, specifically the IRS's estimated refund of 28% of the costs of the Compliance Department. But the IRS's estimates appear reasonable on their face, and plaintiffs have not yet offered a compelling reason to think otherwise.

Plaintiffs contend that the IRS's estimated refund for the Compliance Department is too low. Using the 2015 Cost Model, the IRS estimated restitution of between 28% and 100% per cost category. *See* 2016–2017 Costs Table Column F. Plaintiffs argue that "the IRS cannot merely assert costs are reasonable without articulating any basis for that determination particularly given that many of these departments were performing functions wholly unrelated to PTIN issuance and maintenance." Pls.' Mot. 14. However, the only estimate they specifically criticize is the 28% refund of the costs of the RPO Compliance Department. *Id.*; *see also* 2016–2017 Costs Table l. 12. Certainly, the PTIN fees charged for certain improper Compliance Department costs. "[W]ith respect to the Compliance Department," this Court has held "that only the direct and indirect costs of (1) investigating ghost preparers; (2) handling complaints regarding improper use of a PTIN, use of a compromised PTIN, or use of a PTIN obtained through identity theft; and (3) composing the data to refer those specific types of complaints to other IRS business units were valid bases for the corresponding amount of the FY 2011 through 2015 PTIN fees." *Steele* SJ Op., 657 F. Supp. 3d at 41. The Court thus excluded the Compliance Department's "additional activities unrelated to the misuse or nonuse of PTINs," including "misconduct affecting return preparers' customers rather than the return preparers themselves." *Id.* at 40–41.

The question is whether the IRS could reasonably estimate that 28% of the Compliance Department's costs were for activities unrelated to the misuse or nonuse of PTINs while 72%

none
26

71

involved the three permissible categories.[15]  Plaintiffs suggest this estimate is not reasonable because under the 2015 Cost Model, "Compliance: UnID [Unidentified] Preparer Detection" represented only around a third of the costs of the Compliance Department.  Pls.' Mot. 14; *see also* 2015 Cost Model at 19).  But they offer no reason to think that the IRS could not reasonably estimate that, given the Compliance Department's remaining responsibilities, 72% of its costs were for allowable activities.  In determining whether the IRS's estimate is reasonable, the agency's judgment is entitled to "more than mere deference or weight."  *Steele* SJ Op. 39 (quoting *Cent. & S.*, 777 F.2d at 729).  The Court did not require the IRS to provide perfectly accurate cost breakdowns.  To do so retrospectively would be impossible.  Even to do so in real time would be exceedingly difficult, if not impossible, because some expenses cannot be neatly separated into costs related or unrelated to provision of a private benefit.  That is particularly true for the 2015 Cost Model, because while the 2010 Cost Model is based on costs of particular functions, the 2015 model is based on salaries and benefits of employees in particular departments, who may have dedicated some of their time to allowable activities and some to unallowable ones.  So, the Court sees no reason to second-guess the IRS's estimates for FY 2016–2017.

Plaintiffs' true objection is not that the estimate is unreasonable, but that the IRS did not offer sufficient explanation.  *See* Pls.' Mot. 13.  But the Court never required the IRS to provide explanations for every step along the way to its refund determination.  Without a definite reason to doubt the agency's quantitative judgment about a "reasonable estimate[] of the portions it lawfully could have charged," the Court will accept the IRS's decision.  *See Steele* SJ Op., 657 F. Supp. 3d at 49.

---

[15] It is not necessarily surprising that the estimated refund for compliance costs is 28% for FY 2016–2017 but 93.2% for FY 2011–2015, 2011–2015 Costs Table l. 64, since the PTIN fee was $33 rather than $50 "in part because of certain activities that the Circuit invalidated in *Loving*."  *Steele* SJ Op., 657 F. Supp. 3d at 31.

Therefore, the Court rejects plaintiffs' challenge to the refund determination for the Compliance Department for FY 2016–2017.

## 2. Accenture Fees

Next, plaintiffs raise several challenges to how the IRS calculated the refund for the Accenture fees. The Court rejects plaintiffs' argument that the IRS must refund the extra $1.25 charged in FY 2011–2015 for PTIN issuance but not renewal. Turning to the call center costs, although it is permissible for the IRS to use Accenture's call center data, the agency did not provide a reasonable estimate of the proportion of call center activities unrelated to issuance, renewal, or maintenance of PTINs. As for the remaining Accenture costs, the IRS employed a reasonable methodology of estimating the proportion of improperly charged-for activities by looking to the CLINs in the two Accenture contracts. However, plaintiffs have identified several instances in which the IRS seems to have improperly applied that methodology, and the government has failed to respond to these arguments. For these reasons, the Court will require the IRS to revisit its determinations concerning the refund of the Accenture fees.

### (i) The $1.25 Differential Between Initial Registrations and Renewals

First, plaintiffs attack the IRS's conclusion that the $1.25 charged as part of the initial PTIN registration fee ($14.25) but not the PTIN renewal fee ($13.00) between October 1, 2010 and October 31, 2015 was appropriate. According to plaintiffs, the IRS's explanation that the $1.25 difference went to the portions of Accenture's work concerning PTIN issuance, renewal, and maintenance of PTINs, 1st Rogers Decl. ¶¶ 32–35, must be rejected because it was based solely on the Miller Declaration provided by Accenture in December 2021, years after the fees were established. Pls.' Mot. 16.

But plaintiffs are wrong to argue that the IRS could not use data from a document created after the fact for litigation. Although "litigation affidavits are an unacceptable basis for appellate review of agency decision-making," Pls.' Mot. 16 (quoting *Rodway v. U.S. Dep't of Agric.*, 514 F.2d 809, 816 (D.C. Cir. 1975)), that principle is inapposite here because the Court is not reviewing agency decision-making. Next, plaintiffs misread the Court's remand order. They argue that in requiring the IRS to "use its initial contract with Accenture . . . and the subsequent contract" to determine "the lawful amount charged and the corresponding refund," the Court implicitly prohibited the IRS from relying on any other sources. Pls.' Mot. 16 (quoting Remand Order 2). But the Court did no such thing.

In any event, plaintiffs undercut their argument that the IRS may not use a litigation affidavit to make its refund determination. Here, plaintiffs decry the IRS for relying on ex post information from Accenture; elsewhere, they ask the Court to do just that. *See* Buckley Report 1 ("[I]t is only logical to use actual Accenture costs when available"); Pls.' Mot. 26 ("Plaintiffs' co-counsel, Attorney Allen Buckley, believes that under the unique circumstances of this case—retrospectively setting a user fee and the availability of material produced in discovery regarding actual costs—the Court should also utilize information produced in discovery.").[16] Moreover, the government points out that at the summary judgment stage plaintiffs themselves relied on the Miller Declaration. *See* Decl. of Meghan B. Oliver in Support of Pls.' Mot. for Summary J. 3, ECF No. 176 (providing the Miller Declaration as plaintiffs' Exhibit Y); Pls.' Statement of Facts ¶ 38, ECF No. 177-30 (citing the Miller Declaration).

---

[16] As previously mentioned, plaintiffs' brief argues in the alternative that the Court should adopt the calculations of Mr. Buckley's report. See Pls.' Mot. 25–26. Plaintiffs try to create some distance from this argument, articulating Mr. Buckley's position while stating that class counsel's position is that the Court should stick to the "extant administrative record." *Id.* at 26. Essentially, plaintiffs wish to have the benefits of presenting certain arguments without the risks of having those arguments held against them. But as discussed above, plaintiffs are responsible for what they include in their brief. *See supra* note 13. The Court will not indulge plaintiffs' ploy to have their cake and eat it too.

For these reasons, the Court finds no merit in plaintiffs' challenge to the IRS's conclusion that the $1.25 differential was appropriately charged.

### (ii) Call Center Costs

Next, plaintiffs object to the IRS's use of Accenture call center data. Although the Court rejects plaintiffs' view that the IRS may not rely on this data, it concludes that the IRS has failed to reasonably estimate the proportion of call center activities that were unrelated to Accenture's work concerning issuance, renewal, and maintenance of PTINs. The Court will therefore require the IRS to make another attempt to provide a reasonable estimate of allowable costs associated with the Accenture call center.

Although plaintiffs argue the IRS could not legitimately rely on this set of data because it is not part of the administrative record and did not exist at the time the Accenture portions of the PTIN fees were set, Pls.' Mot. 17, for the reasons discussed above the IRS may permissibly use information even if it was divulged during litigation.

Plaintiffs next assert that the IRS erred in deeming certain categories of calls to be entirely related to permissible activities, resulting in 97% of call center costs being treated as permissible. According to plaintiffs, "many of the category descriptors in the Phone & Chat log appear to be of mixed purpose that cannot be disaggregated." Pls.' Mot. 17. They cite the categories of "Account Assist & Change," "General Questions," "Communications," and "Program Requirements." *See* Call Center Report. The call center document sorts the calls received into a number of categories. The IRS determined that certain categories—Continuing Education and Annual Filing Season Program calls; Escalation (Deceased Preparer and Tax Conviction/Felony) calls; or Non-PTIN calls—concerned activities that improperly facilitated provision of an independent benefit to the agency and public. 1st Rogers Decl. ¶ 41. These categories represented approximately 2.69% of

calls. *Id.* The IRS deemed the vast majority of calls permissible because they fell into permissible categories. *Id.* ¶ 40. The IRS did not attempt to estimate a percentage of which calls in these categories were for permissible versus impermissible activities. Instead, it assumed that *all* calls in such categories related to provision of a private benefit.

That faulty assumption undermines the reasonableness of the IRS's conclusion that 97% of call center costs were for permissible activities. The Court has previously recognized that "[t]he 2010 contract between the IRS and Accenture, which set the vendor fee amounts in effect during FY 2011 through 2016, expressly contemplated that Accenture would implement capabilities beyond the issuance, renewal, and maintenance of PTINs and would maintain a call center taking questions beyond those subjects." *Steele* SJ Op., 657 F. Supp. 3d at 45. That is because "Accenture's contract with the IRS required it to maintain a call center to address 'preparer questions related' not only to 'registration [and] renewal,' but also to 'testing, and [continuing education] processes and timelines.'" *Id.* at 44 (citing Def.'s Resp. to PSUMF ¶ 41, ECF No. 184-1). "Those activities are not reasonably related to the provision of a private benefit—rather, they provided an independent public benefit that was later invalidated by *Loving*." *Id.*

Given that the Accenture call center addressed inquiries unrelated to issuance, renewal, or maintenance of PTINs, it is simply not reasonable for the IRS to assume that *all* calls logged in broad categories such as "General Questions" and "Program Requirements" were related to issuance, renewal, and maintenance of PTINs. If the government has a good reason to think otherwise, it has not bothered to share it with the Court, since the Rogers Declarations shed no light on the subject and the government has not addressed plaintiffs' argument. The IRS's estimate of call center expenses unrelated to provision of a private benefit need not be perfect. But it must be within a zone of reasonableness. The Court cannot take the government's estimates on faith,

particularly when the government has already acknowledged making an obvious, albeit relatively inconsequential, blunder in including PTINs issued or renewed in October 2015 in the calculation for FY 2016 rather than FY 2015. *See* Gov. Response to Show Cause Order 1.

Since the Court finds unreasonable the IRS's unsupported, undefended assumption that all calls in certain general categories related to permissible activities, the IRS must try again to provide a reasonable estimate of the call center costs.

### (iii) Use of the Contracts

Finally, plaintiffs object to the IRS's methodology for calculating the remaining Accenture costs. The Court finds that under the circumstances the IRS's CLIN-based approach is a reasonable method for using the contracts to estimate the amount of the remaining fee charge to be refunded. But the IRS seems to have applied its methodology unreasonably in at least a few instances. Specifically, plaintiffs have identified two instances in which the agency apparently double-counted the same sentence in a contract, and have located one instance in which the agency seemingly failed to recognize a non-chargeable activity as such.

As previously discussed, the agency divided its Accenture contracts into "Contract Line Item Numbers," identified "all unique and specific CLINs," excluded call center-related CLINs, identified the remaining CLINs that could not be charged under the Remand Order, and calculated the share of non-call center CLINS that represent non-chargeable activities. 1st Rogers Decl. ¶¶ 44, 55. The IRS then multiplied that percentage by the remaining portion of the vendor fee to estimate the per-PTIN refund. *Id.* ¶ 44(f). Although plaintiffs raise three challenges to this method, each fails.

First, plaintiffs contend that the IRS should not have assumed that all CLINs cost the same amount. Pls.' Mot. 18. But it is difficult to see how else the agency, without Accenture's internal

32

cost allocation data, could have reasonably weighted the hundreds of CLINs. *See* 1st Rogers Decl. ¶¶ 44, 55. Plaintiffs do not offer an alternative way to do so. "The IRS judged an equal weighting method to be the most reasonable basis upon which to base its estimate," *id.* ¶ 45, and the Court will not disturb that judgment.

Second, plaintiffs argue that the IRS has been too quick to deem certain CLINs "not unique," which results in their exclusion from the calculation of the percentage of Accenture's remaining costs to be refunded. Pls.' Mot. 18. Plaintiffs cite the example of Annual Filing Season Program costs for the second contract, *id.* at 18–19, but the government points out these were excluded because they were not included in the PTIN fee and thus were paid for by the IRS itself, not return preparers, Gov.'s Opp'n 20–21 (citing 2d Contract USA-0021044, -0021079, ECF No. 258-4). Plaintiffs also challenge the exclusion of CLINS relating to Tax Compliance Checks, Pls.' Mot. 19, but these were also within the Annual Filing Season Program portion of the contract and were properly excluded from the same reason, *see* 2d Contract USA-0021070–0021072.

Third, plaintiffs assail the agency's "sentence-counting" as simply absurd on its face. Pls.' Mot. 18. Yet under the circumstances, it is not absurd to estimate how Accenture allocated its costs based on how the contracts were structured. Plaintiffs acknowledge "[t]here is no clear-cut means of" apportioning Accenture's costs. Buckley Report 9. And they fail to offer a better option. Their only suggested alternative method is no less arbitrary: since according to Mr. Buckley only a fifth of the questions on the forms for PTIN issuance or renewal were appropriate, one should simply assume that one fifth of Accenture's costs was legitimate and the remaining four-fifths were not. Buckley Report 9–10. As between these alternative methods, the Court will not substitute plaintiffs' judgment for the agency's.

But while the Court accepts the IRS's overall approach, plaintiffs raise concerns that preclude the Court from finding the IRS's use of the Accenture contracts to be reasonable, at least absent further explanation from the government.

Plaintiffs assert that the IRS has failed to identify certain duplicative CLINs as "not unique," and although two of its examples are meritless, the other two appear to be genuine defects in the IRS's work on remand. *See* Pls.' Mot. 19. The first two either involve distinguishable tasks[17] or concern similar but separate aspects of Accenture's activities under the contracts.[18] However, plaintiffs cite two examples in which the government has seemingly listed the same sentence from the same subsection of the contract as a CLIN twice and then failed to treat the duplicates as "not unique." *See* CLINs Table for FY 2011–2015 Accenture Contract ll. 220, 222, ECF No. 271-2 ("When the paper form is received, the Vendor will process the form using the same controls and data validation as the online renewal.") (concerning § 3.2 of the first Accenture contract); *id.* at ll. 221, 223 ("Vendor's fulfillment specialist enters the data, verifies the account and processes the renewal.") (also concerning § 3.2 of the first Accenture contract); *see also* 1st Contract § 3.2, ECF No. 258-3. The government did not bother to respond to this argument. At least without a persuasive explanation from the government, it appears unreasonable to count the same sentence in the contract as two separate CLINs. The Court will require the IRS to either justify these choices or else revise its work on remand.

---

[17] *Compare* CLINs Table for FY 2011–2015 Accenture Contract l. 47, ECF No. 271-2 ("The Vendor shall re-issue the same PTIN to preparers who currently have a PTIN."), *with id.* at l. 48 ("Vendor will receive a one-time data extract from the current PTIN database and use this information to validate the assigned PTIN and reissue it to the PTIN applicant, when applicable.") *and id.* at l. 61 ("For return preparers who are already have a PTIN, the registration process will confirm existing data, update information as necessary, and maintain the existing PTIN.").

[18] Although the CLINs at rows 46 and 83 for FY 2011–2015 share identical language—"The Vendor will develop a process for collecting payments that are reversed after the PTIN has been issued"—one concerns registration and the other renewal. *See* CLINs Table for FY 2011–2015 Accenture Contract ll. 46, 83; 1st Contract §§ 2.2, 2.3.

Plaintiffs also argue that "the IRS continues to treat the cost of certain activities as permissible even though they expressly relate to eligibility requirements, testing, or continuing education." Pls.' Mot. 20. One of the examples they cite is unpersuasive. One of the CLINs deemed allowable the IRS is: "Vendor shall provide a secure on-line registration fee and agreement to an ethics statement prior to issuance of PTIN." *Id.* at 20 (quoting Contract Obligations in FY 2011–2015 Accenture Contract l. 45); *see also* 1st Accenture Contract § 2.2. But this contractual requirement does appear to represent a "portion[] of Accenture's work related to the issuance, renewal, and maintenance of PTINs." *Steele* SJ Op., 657 F. Supp. 3d at 45. Plaintiffs' other example, however, is persuasive. For the first contract the government has included as a non-refundable CLIN: "Issue a paper certificate to return preparers upon completion of test and CE requirements." Contract Obligations in FY 2011–2015 Accenture Contract l. 160; *see also* 1st Accenture Contract § 2.7. As testing and continuing education are "activities [that] are not reasonably related to the provision of a private benefit," *Steele* SJ Op., 657 F. Supp. 3d at 44, it would seem that this CLIN should in fact be treated as unallowable. Of course, the government has not responded to this argument. Therefore, it seems the government has erroneously categorized at least one CLIN.

So, while the IRS's methodology for using its Accenture contracts to estimate much of the refund for the vendor fee is reasonable, the agency's specific application of that methodology appears to be unreasonable in at least a few instances. The government will need to either persuasively defend these choices or else revise its work on remand.

### 3. Remedy

"The only proper place for this case to go is back to the IRS." *Steele* SJ Op., 657 F. Supp. 3d at 49. The agency's failure to provide a reasonable estimate so far does not affect the reasons

for remand given by the Court in its Summary Judgment Opinion.  *See id.*  It is up to the agency to determine the appropriate refund amount, subject to the Court's approval.

The instructions given in the Remand Order, as amended, still stand.  But this time, the Court will impose some additional guidance. Before the agency files a notice in this Court of its estimated refund, it must meet and confer with plaintiffs.  The parties must make a good-faith effort to narrow any areas of disagreement.  *Cf.* LCvR 7(m).  No later than thirty days after the conference, they must file a joint status report succinctly outlining their points of disagreement about the IRS's refund estimate.  When the IRS files its notice of its revised refund estimate, it must address plaintiffs' objections.  Its explanation need not necessarily be detailed, but must provide the Court with a sufficient basis for finding the estimate reasonable.  Once it files this notice, plaintiffs will have thirty days to file a challenge to the IRS's refund determination.  The government will then have thirty days to respond.  The Court will expect the government to respond to plaintiff's specific arguments.  Otherwise, the Court may treat these arguments as conceded. *See Brett v. Brennan*, 404 F. Supp. 3d 52, 59 (D.D.C. 2019) ("It is well-understood that 'if a party files an opposition to a motion and therein addresses only some of the movant's arguments, the court may treat the unaddressed arguments as conceded.'" (quoting *Wannall v. Honeywell, Inc.*, 775 F.3d 425, 428 (D.C. Cir. 2014)); LCvR 7(b) (providing that if an opposition "memorandum is not filed within the prescribed time, the Court may treat the motion as conceded"). Plaintiffs will then have fourteen days to file a reply.

### III.    CONCLUSION

For the foregoing reasons, the Court must send this case back to the IRS to try again. Accordingly, the Court will **GRANT IN PART** and **DENY IN PART** plaintiffs' Motion to

Vacate.  And it will **GRANT** the government's motion to strike the Buckley Report.  Finally, it will **GRANT** plaintiffs' motion to file their reply under seal.

A separate Order consistent with this Memorandum Opinion shall issue.

Date: _____8. 9. 24_____

_Royce C. Lamberth_
Royce C. Lamberth
United States District Judge

| | |
|---|---|
| **ADAM STEELE, BRITTANY MONTROIS, and JOSEPH HENCHMAN,** on behalf of themselves and all others similarly situated, | |
| *Plaintiffs,* | |
| **v.** | Case No. 1:14-cv-1523-RCL |
| **UNITED STATES OF AMERICA,** | |
| *Defendant.* | |

## ORDER

For the reasons stated in the accompanying Memorandum Opinion:

It is hereby **ORDERED** that Plaintiffs' Motion for Partial Final Judgment (ECF No. 229) is **DENIED**.

It is further **ORDERED** that Plaintiffs' Motion for Clarification (ECF No. 230) is **DENIED**.

**IT IS SO ORDERED.**

Date: 9/25/23

Royce C. Lamberth
United States District Judge

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

ADAM STEELE, BRITTANY
MONTROIS, and JOSEPH HENCHMAN,
on behalf of themselves and all others
similarly situated,

    *Plaintiffs,*

**v.**

                         **Case No. 1:14-cv-1523-RCL**

**UNITED STATES OF AMERICA**,

    *Defendant.*

## <u>MEMORANDUM OPINION</u>

On January 23, 2023, this Court issued an opinion that granted in part and denied in part plaintiffs' motion for summary judgment and defendant's motion for partial summary judgment. Plaintiffs have filed a motion for partial final judgment under Federal Rule of Civil Procedure 54(b). They have also filed a motion for clarification on the issues of ghost preparers and foreign preparers. Upon consideration of those motions (ECF Nos. 229, 230), defendant United States' opposition (ECF Nos. 233, 234), and plaintiffs' replies (ECF Nos. 238, 239), the Court will **DENY** both motions.

The Court will deny the motion for partial final judgment not because the plaintiffs violated Local Rule 7(m)—although they did—but because the plaintiffs failed to ask the Court to direct entry of final judgment on an entire "claim" in the sense of Rule 54(b). The Court will also deny the motion for clarification on both matters. The Court does not reach plaintiffs' argument concerning ghost preparers because plaintiffs breached both requirements of Local Rule 7(m). And although the Court does reach the issue of foreign preparers, the plaintiffs' motion fails because the plaintiffs seek not clarification, but relitigation of a matter already decided.

1

# I. BACKGROUND

The Court assumes familiarity with its Memorandum Opinion granting in part and denying in part plaintiffs' motion for summary judgment and defendant's motion for partial summary judgment. That opinion details this case's factual background and procedural posture up until the current, post-summary judgment disputes. *See Steele v. United States*, No. 1:14-cv-1523 (RCL), 2023 WL 2139722, at *1–7 (D.D.C 2023) (ECF No. 226). Accordingly, the Court will provide only the background information necessary to resolve the present motions.

## A. Summary Judgment Opinion

Following remand, the parties cross-moved for summary judgment. *See* ECF Nos. 173, 175. Plaintiffs argued that many of the expenses used to justify the Preparer Tax Identification Numbers (PTIN) fees were unnecessary to the maintenance of the PTIN system and thus that those fees were excessive in violation of the Independent Offices Appropriations Act. The government moved only for partial summary judgment. It conceded that the IRS unlawfully included certain expenses in its PTIN fee calculations. But it maintained that the agency had authority to include others. The government further argued that it was entitled to an offset to its liability for sums it could have charged in fees while it was enjoined by this Court from assessing them.

The Court granted in part and denied in part each party's motion. The Court held that the FY 2011 through FY 2017 PTIN and vendor fees were excessive as a matter of law. In reaching this conclusion, the Court held that it would not defer to the IRS's determination of whether the activities used to justify the PTIN and vendor fees were sufficiently related to the provision of PTINs to return preparers, but it would defer to the IRS's estimation of the costs to carry out those activities. *See Steele*, 2023 WL 2139722, at *10. As relevant here, the Court considered the extent to which the activities of the Compliance Department of the IRS's Return Preparer Office (RPO)

offered a valid basis for the FY 2011 through 2015 PTIN fees.  *See id.* at \*11.  The government identified three categories of RPO Compliance Department activities:

> (1) investigating "ghost preparers" (return preparers that do not list their PTINs on returns they prepared for compensation as required by law); (2) handling complaints from return preparers that a client's prior return preparer may have acted improperly by using a compromised PTIN or committed identity theft to obtain a PTIN; and (3) composing the data to refer complaint cases to IRS business units outside the RPO for further enforcement if necessary.

*Id.* at \*11 (quoting Def.'s Opp'n to Pls.' MSJ, ECF No. 183, at 19).  The Court agreed with the government that "the IRS permissibly charged for at least some of" those three specific categories since "[t]o the extent that they relate to misuse of PTINs, all three are reasonably related to the provision of the private benefit that the [D.C.] Circuit identified in [*Montrois v. United States*, 916 F.3d 1056 (D.C. Cir. 2019)]—protection of preparers' identity—because the misuse of PTINs compromises their ability to serve as a secure means of identification."  *Steele*, 2023 WL 2139722, at \*11.  But the Court went on to state that "uncontroverted record evidence establishes that the Compliance Department undertook additional activities unrelated to the misuse or nonuse of PTINs."  *Id.* at \*11.  Therefore, the Court held concerning the Compliance Department that:

> only the direct and indirect costs of (1) investigating ghost preparers; (2) handling complaints regarding improper use of a PTIN, use of a compromised PTIN, or use of a PTIN obtained through identity theft; and (3) composing the data to refer those specific types of complaints to other IRS business units were valid bases for the corresponding amount of the FY 2011 through 2015 PTIN fees.

*Id.*, at \*12.

One matter raised by the plaintiffs at the summary judgment stage, Pls.' MSJ, ECF No. 175, at 20–21, but not expressly addressed in the Memorandum Opinion was whether PTIN fees could be used to recover registration costs for foreign preparers even though foreign preparers lack Social Security numbers and the benefit provided by the PTIN is protection of preparers' identity from identify theft.  *Steele*, 2023 WL 2139722, at \*9, 11.

3

In addition, the Court held that the government is not entitled to an offset to restitution for fees it was unable to charge due to the Court's prior injunction. It also held that plaintiffs' challenge to the questions asked on the PTIN application was improperly raised. Finally, the Court remanded to the IRS to determine an appropriate refund for the class in a manner consistent with the IOAA.

### B. Motions Presently Before the Court

Before the Court are two motions.

First, the plaintiffs have moved for partial final judgment under Federal Rule of Civil Procedure 54(b). Pls.' Mot. Partial Final J. (MPFJ), ECF No. 229; *see also* Fed. R. Civ. P. 54(b). They urge the Court to enter partial final judgment for the PTIN fees that the government has conceded were unlawfully imposed from FY 2011 to FY 2017: a sum of approximately $110 million. MPFJ at 1; *see also* Declaration of Carol A. Campbell, ECF No. 183-2; Second Declaration of Carol A. Campbell, ECF No. 203-1. The plaintiffs seek for this amount to be immediately placed into escrow so that interest can begin accruing for the benefit of the class. MPFJ at 1–2. The United States opposes the motion. Defendant's Opp'n to Pls.' MPFJ (Def.'s Opp'n), ECF No. 233. Plaintiffs submitted a reply. Pls.' Reply in Support of MPFJ., ECF No. 239.

Second, the plaintiffs have moved for clarification of the summary judgment opinion. Pls.' Mot. Clarification Summ. J. Op. (Motion for Clarification), ECF No. 230. In particular, they seek clarification on two alleged "points of ambiguity" in the opinion: whether the PTIN fee may include costs relating to unidentified return preparers (i.e., "ghost" preparers) and whether the PTIN fee may include the costs of registering foreign preparers. *Id.* at 1. The United States

opposes the motion. Def.'s Opp'n to Pls.' Motion for Clarification, ECF No. 234. Plaintiffs

submitted a reply. Pls.' Reply in Support of Motion for Clarification, EF No. 238.

These motions are now ripe for review.

## II.     LEGAL STANDARDS

### A.  Local Rule 7(m)

Local Rule 7(m) of the Local Rules for the United States District Court for the District of

Columbia reads:

> Before filing any nondispositive motion in a civil action, counsel shall discuss the
> anticipated motion with opposing counsel in a good-faith effort to determine
> whether there is any opposition to the relief sought and, if there is, to narrow the
> areas of disagreement. The duty to confer also applies to non-incarcerated parties
> appearing pro se. A party shall include in its motion a statement that the required
> discussion occurred, and a statement as to whether the motion is opposed.

LCvR 7(m). When a nondispositive motion is at issue, the Local Rule therefore imposes twin

duties of consultation and certification. The rule's purposes are "to encourage informal resolution

to such disputes, or at least to reduce or narrow the issues the Court will consider." *U.S. ex rel.*

*Pogue v. Diabetes Treatment Centers of Am., Inc.*, 235 F.R.D. 521, 529 (D.D.C. 2006).

The threshold question for Local Rule 7(m) is whether the motion in question is

"nondispositive." The D.C. Circuit has defined "dispositive motion" to "include[] a motion that,

if granted, would result either in the determination of a particular claim on the merits or elimination

of such a claim from the case." *Burkhart v. Washington Metro. Area Transit Auth.*, 112 F.3d 1207,

1215 (D.C. Cir. 1997).

If the motion is in fact nondispositive, the next issue is the duty to confer. "The obligation

to confer may not be satisfied by perfunctory action, but requires a good faith effort to resolve the

non-dispositive disputes that occur in the course of litigation." *Pogue*, 235 F.R.D. at 529. That

means that the Local Rule "at least 'contemplates that counsel will speak to each other.'" *U.S. ex*

5

*rel. K & R Ltd. P'ship v. Massachusetts Hous. Fin. Agency*, 456 F. Supp. 2d 46, 52 (D.D.C. 2006) (quoting *GFL Advantage Fund, Ltd. v. Colkitt*, 216 F.R.D. 189, 194 (D.D.C. 2003)), *aff'd*, 530 F.3d 980 (D.C. Cir. 2008). A party must therefore take "real steps" to confer with its opponent, such as contacting the other side's counsel "by telephone or within a reasonable period prior to filing the motion." *K & R Ltd. P'ship*, 456 F. Supp. 2d at 52. But conferring is not itself enough: the party must also certify whether it has done so and whether the motion is opposed. LCvR 7(m).

If Local Rule 7(m) has been violated, that is not the end of the analysis. Breach raises the further question of remedy. This Court has often denied motions for failure to comply with Local Rule 7(m) and its precursors. *See, e.g.*, *Andrades v. Holder*, 286 F.R.D. 64, 65 n.2 (D.D.C. 2012); *Ellipso, Inc. v. Mann*, 460 F. Supp. 2d 99, 102 (D.D.C. 2006); *Alexander v. F.B.I.*, 186 F.R.D. 185, 186–187 (D.D.C. 1999). Under the right circumstances, however, a nonconforming motion will not be denied. This may be the case if one side's efforts to initiate dialogue are met with silence. *See, e.g.*, *GFL Advantage Fund*, 216 F.R.D. at 194; *Day v. Cornèr Bank (Overseas) Ltd.*, 789 F. Supp. 2d 136, 144 (D.D.C. 2011).

This Court has chosen not to deny nonconforming motions under other appropriate circumstances too. *See Lopes v. JetSetDC, LLC*, 994 F. Supp. 2d 126, 133 (D.D.C. 2014); *Niedermeier v. Off. of Baucus*, 153 F. Supp. 2d 23, 27 (D.D.C. 2001) (noting "the general judicial preference for resolving motions on their merits rather than dismissing them on technicalities"); *see also J.T.F. v. D.C.*, No. 21-cv-1453 (RC), 2023 WL 5528037, at *5 (D.D.C. 2023) ("Here, Plaintiffs did not attempt to confer with the District and therefore could not certify that the required discussion occurred . . . . Nevertheless, in the interest of resolving this dispute, this Court will consider Plaintiffs' motion on its merits.") (internal citations omitted). Therefore, when a party has failed to respect the requirements of Local Rule 7(m), the Court will exercise its discretion in

selecting the remedy, bearing in mind the purposes of the rule. *See Day*, 789 F. Supp. 2d 136 at 144 ("The decision to grant or deny a motion to strike is vested in the Court's discretion.").

### B. Motion for Partial Final Judgment Under Rule 54(b)

In an action involving multiple claims for relief, Rule 54(b) authorizes a district court to "direct entry of a final judgment as to one or more, but fewer than all, claims." Fed. R. Civ. P. 54(b). Granting a Rule 54(b) motion expands opportunities for appeal, since entry of final judgment on a particular claim means there is now a "final decision," which is a statutory requirement for appellate jurisdiction over the claim. *See Gelboim v. Bank of Am. Corp.*, 574 U.S. 405, 409 (2015); *Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 438 (1956); 28 U.S.C. § 1291 (granting the courts of appeals jurisdiction over appeals from "all final decisions of the district courts of the United States").

In considering such a motion, the district court must take two steps. *See Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 7–8 (1980). The court must first consider whether it is dealing with a "final judgment." *Id.* at 7. The decision for certification under Rule 54(b) must be "'a 'judgment' in the sense that' it determines a claim for relief," and "it must be 'final'" in that it constitutes "an ultimate disposition of an individual claim entered in the course of a multiple claims action." *Bldg. Indus. Ass'n of Superior California v. Babbitt*, 161 F.3d 740, 744 (D.C. Cir. 1998) (quoting *Curtiss-Wright*, 446 U.S. at 7).

A Court considering a Rule 54(b) motion must thus consider whether the alleged "claim" sought to be finally resolved is a truly "distinct" from the other claims for relief that would remain pending before the district court. *Attias v. CareFirst, Inc.*, 969 F.3d 412, 417 (D.C. Cir. 2020). The D.C. Circuit "has no general test for determining when claims are distinct enough to allow entry of final judgment under Rule 54(b)" on only some of the alleged claims. *Univ. of Colorado*

*Health at Mem'l Hosp. v. Becerra*, No. 14-cv-1220 (RC), 2023 WL 4999323, at *3 (D.D.C. 2023). However, in *Tolson v. United States*, the Court of Appeals provided a "rule of thumb." 732 F.2d 998, 1001 (D.C. Cir. 1984); *see also Attias*, 969 F.3d at 417 (discussing and applying *Tolson*). At a minimum, when alleged "claims [are] so closely related that they would fall afoul of the rule against splitting claims if brought separately . . . they do not qualify as 'separate' claims within the meaning of Rule 54(b)." *Tolson*, 732 F.2d at 1001 (quoting *Local P–171, Amalgamated Meat Cutters v. Thompson Farms Co.*, 642 F.2d 1065, 1070 (7th Cir.1981) (Wisdom, J.)).

In other words, claims that res judicata would bar from being brought separately after judgment are not separate claims for the purposes of Rule 54(b). *Tolson*, 732 F.2d at 1001. Under the doctrine of res judicata, when a valid and final judgment extinguishes a plaintiff's claim, "the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose." Restatement (Second) of Judgments § 24(1) (Am. L. Inst. 1982); *see also Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc.*, 140 S. Ct. 1589, 1595 (2020) (observing that "[s]uits involve the same claim . . . when they 'aris[e] from the same transaction' or involve a 'common nucleus of operative facts.'") (alteration in original) (citations omitted).

If the court finds finality, next it must "determine whether there is any just reason for delay." *Curtiss-Wright*, 446 U.S. at 8. The court must decide "the 'appropriate time' when each final decision in a multiple claims action is ready for appeal," as "[n]ot all final judgments on individual claims should be immediately appealable, even if they are in some sense separable from the remaining unresolved claims." *Curtiss-Wright*, 446 U.S. at 8. On this issue, the court must consider both the equities involved and the interests of sound judicial administration. *Id.* at 8. Accounting for judicial administrative interests "is necessary to assure that application of the Rule

effectively 'preserves the historic federal policy against piecemeal appeals.'" *Id.* at 10 (quoting *Sears*, 351 U.S. at 438). The Court should thus "consider such factors as whether the claims under review were separable from the others remaining to be adjudicated and whether the nature of the claims already determined was such that no appellate court would have to decide the same issues more than once even if there were subsequent appeals." *Curtiss-Wright*, 446 U.S. at 8. At any rate, even if judicial administrative interests do not weigh against granting the motion, "it is still within the court's discretion to grant or deny final judgment under 54(b) based on the equities involved." *Johnson v. Mukasey*, 248 F.R.D. 347, 357 (D.D.C. 2008) (citing *Curtiss-Wright*, 446 U.S. at 10), *aff'd sub nom. Johnson v. Holder*, No. 08-5157, 2009 WL 3568647 (D.C. Cir. 2009).

### C. Motion for Clarification

"[T]here is no Federal Rule of Civil Procedure specifically governing 'motions for clarification.'" *United States v. Philip Morris USA Inc.*, 793 F. Supp. 2d 164, 168 (D.D.C. 2011). Nonetheless, these motions are "generally recognized and allowed by federal courts." *Barnes v. D.C.*, 289 F.R.D. 1, 13 n.6 (D.D.C. 2012); *see also Philip Morris*, 793 F. Supp. 2d at 168–69 (collecting cases in which district courts entertained motions for clarification). Parties are encouraged "to file motions for clarification when they are uncertain about the scope of a ruling." *United States v. All Assets Held at Bank Julius, Baer & Co., Ltd.*, 315 F. Supp. 3d 90, 99 (D.D.C. 2018).

But motions for clarification have a limited role. "The general purpose of a motion for clarification is to explain or clarify something ambiguous or vague, not to alter or amend." *See Philip Morris*, 793 F. Supp. 2d at 168 (quoting *Resolution Trust Corp. v. KPMG Peat Marwick, et al.*, No. 92–cv-1373, 1993 WL 211555, at *2 (E.D. Pa. 1993)). A motion for reconsideration, not a motion for clarification, is proper when "a party seeks to alter or modify the result, rather than

merely to grasp its meaning or scope in the face of an actual and material ambiguity." *Sai v. Transportation Sec. Admin.*, No. 14-cv-403 (RDM), 2015 WL 13889866, at *3 (D.D.C. 2015). But neither motion is "simply an opportunity to reargue facts and theories upon which a court has already ruled." *United States v. Hassanshahi*, 145 F. Supp. 3d 75, 81 (D.D.C. 2015) (quoting *New York v. United States*, 880 F. Supp. 37, 38 (D.D.C. 1995)).

### III.    DISCUSSION

#### A.  Plaintiff's Motion for Partial Final Judgment Under Rule 54(b)

Although the plaintiffs violated Local Rule 7(m) by not stating in their motion that they had consulted with the government and that the government opposed the motion, the Court will not deny it on that basis.  To do so even though the plaintiffs conferred with their counterparts would not serve the Local Rule's purposes.  But the Court *will* deny the motion on the merits because the plaintiffs failed to ask the Court to direct entry of final judgment on an entire "claim" in the sense of Rule 54(b).  And even if the Court agreed with the plaintiffs that they were seeking final judgment on a "claim," it would still deny the motion because the plaintiffs waived their argument to have satisfied Rule 54(b)'s two-part test by not raising it until their reply brief.

#### 1.  The Court Will Not Deny the Rule 54(b) Motion for Violating Local Rule 7(m)

The United States argues that the plaintiffs failed to comply with Local Rule 7(m) by failing to confer with the United States about the motion for partial final judgment under Rule 54(b) and not including in their motion a statement that such discussion had occurred.  Def.'s Opp'n at 1. The United States therefore urges the Court to strike the plaintiffs' motion.  *Id.*.  In their reply, the plaintiffs argue that the Local Rule does not apply because the plaintiffs are seeking partial final judgment, which they characterize as a dispositive motion not governed by Local Rule 7(m).  Pls.' Reply in Support of MPFJ at 1.  In addition, the plaintiffs say they did in fact raise the issue with

the government in advance of the motion. *Id.* at 1. As evidence, the plaintiffs offer an email chain involving attorneys for each side. Exhibit A, ECF No. 239-1.

An alleged violation of Local Rule 7(m) presents three issues. First, is the relevant motion dispositive? If so, the Local Rule does not apply. Second, if the motion is nondispositive and Local Rule 7(m) does control, did the party conform to the Local Rule's requirements? If not, the party has breached the rule. Third, if the party did breach the rule, what should be the remedy? This Court holds that the plaintiffs' motion is nondispositive, because if the Court were to grant the motion, that would not determine a particular "claim." The Court further holds that while the plaintiffs satisfied Local Rule 7(m)'s conferral requirement, they did not meet its certification requirement. Nonetheless, out of consideration for the Local Rule's purposes, the Court will not deny the motion for having violated the rule.

### (i) The Plaintiffs' Rule 54(b) Motion Is Nondispositive

In this case, the plaintiffs' motion for partial final judgment under Rule 54(b) is nondispositive. A Rule 54(b) motion that properly seeks entry of final judgment on a "claim" is a dispositive motion under *Burkhart* because, if granted, it "would result . . . in the determination of a particular claim on the merits or elimination of such a claim from the case." *Burkhart*, 112 F.3d at 1215. Indeed, the Supreme Court has suggested that granting a Rule 54(b) motion would be a dispositive ruling. *See Gelboim*, 574 U.S. at 409 ("Rule 54(b) permits district courts to authorize immediate appeal of dispositive rulings on separate claims in a civil action raising multiple claims."). Yet while ordinarily a Rule 54(b) motion will be a dispositive motion, the motion in this case is different. For the reasons detailed in Section III(2)(i), the Court concludes that the plaintiffs' do not actually request final judgment on an entire "claim" as required by Rule 54(b). Instead, they merely seek immediate payment of a portion of the damages sought under their

claims. If the Court were to grant this motion on this *part* of the plaintiffs' claims, it would not actually dispose of any claim on the merits. The plaintiffs' Rule 54(b) motion therefore does not meet the *Burkhart* standard and must be considered nondispositive. As the Court is faced with a nondispositive motion, Local Rule 7(m) governs.

### (ii) The Plaintiffs Satisfied Local Rule 7(m)'s Requirement of Consultation

Since Rule 7(m) applies, the plaintiffs were obliged to consult with the United States before filing the Rule 54(b) motion. As discussed above, the obligation to confer requires a "good faith effort to resolve" the dispute, *Pogue*, 235 F.R.D. at 529, in which the moving party takes "real steps" to confer with opposing counsel, *K & R Ltd. P'ship*, 456 F. Supp. 2d at 52. The Court is satisfied that plaintiffs made such an effort. Exhibit A of plaintiffs' reply brief documents their consultation with the lawyers for the United States. *See* Exhibit A, ECF No. 239-1. Over a month before the filing of plaintiffs' motion, counsel for both sides participated in a phone call. The next day, an attorney for the plaintiffs memorialized the conversation in an email to lawyers on the other side. He recorded, among other enumerated topics, the request for immediate payment of money concededly owed by the government:

> 3. You will make inquiry of the IRS as to whether it would be willing to make payment now of the conceded amounts in excess of the $28,982,499 paid to date. We calculate that to be $81,183,033.35. The payment would go into an escrow account for the benefit of the class . . . . We would like an answer on this issue at your earliest convenience as we may seek relief from the court, if the IRS does not wish to make payment voluntarily.

*Id.* at 4. The next week, the plaintiffs' attorney sent another email to the government's attorneys, writing: "consistent with No. 3 below, we intend to ask the Court to order that the IRS pay the conceded amounts now." *Id.* at 3. After several days apparently without a response, the attorney nudged the government lawyers: "we would appreciate receiving your position on the issues

below." *Id.* at 3. A government lawyer then responded that the government did not consent to plaintiffs' requests. *Id.* at 2.

Clearly, plaintiffs' efforts to confer were more than "perfunctory." *Pogue*, 235 F.R.D. at 529. As Local Rule 7(m) contemplates, counsel for each side communicated with each other about whether the government would pay the concededly unlawful sums. *K & R Ltd. P'ship*, 456 F. Supp. at 52. The parties discussed the matter over the phone, and then over email. Plaintiffs sought to informally resolve the dispute. And they told the government to expect their request to the Court. On these facts, the plaintiffs met their burden of consultation under Local Rule 7(m).

### (iii) The Plaintiffs Have Not Satisfied Local Rule 7(m)'s Requirement of Certification

Consultation, however, does not suffice to satisfy Local Rule 7(m). A party must also "include in its motion a statement that the required discussion occurred, and a statement as to whether the motion is opposed." LCvR 7(m). Failure to do so may result in the motion being denied even if the party fulfilled its duty to consult. *See Ellipso*, 460 F. Supp. 2d at 102 ("If a party files a nondispositive motion without certifying its compliance with Rule 7(m), the motion will be denied"); *HT S.R.L. v. Velasco*, No. 15-mc-664 (RBW), 2015 WL 13759884, at *5 (D.D.C. 2015) ("[T]he absence of a statement confirming compliance with Local Rule 7(m) is an appropriate basis alone for the denial of [the party's] motion to quash."). Here, the plaintiffs did not include either required statement in their initial brief. *See* MPFJ. Therefore, despite their good

faith effort to consult with their opponents about this motion, the plaintiffs failed to comply with the letter of Local Rule 7(m).

### (iv) Despite Plaintiffs' Breach of Local Rule 7(m), the Court Declines to Deny Plaintiffs' Motion for That Reason

Violation of Local Rule 7(m) raises the question of remedy. When a party has breached the Local Rule 7(m), a court *may* strike the nonconforming motion from the docket. But it retains discretion not to. *See Niedermeier*, 153 F. Supp. 2d at 27; *Lopes*, 994 F. Supp. 2d at 133. This Court has declined to deny a motion that omitted the statement about having conferred with counsel when the breaching party made a good faith but fruitless effort to confer with the other side. *See GFL Advantage Fund*, 216 F.R.D. at 194. When this Court has struck motions for breaching Local Rule 7(m) and its precursors, that has typically been for violation of the requirement of consultation, not certification. *See, e.g.*, *Andrades*, 286 F.R.D. at 65 n.2; *Sec. & Exch. Comm'n v. Bilzerian*, No. 89-cv-1854 (RCL), 2011 WL 13267154, at *1 (D.D.C. 2011); *K & R Ltd. P'ship*, 456 F. Supp. 2d at 52; *Pogue*, 2007 WL 9703182, at *1; *Ellipso*, 460 F. Supp. at 102; *Alexander*, 186 F.R.D. at 186–187.

This pattern reflects the purposes of the Local Rule. Local Rule 7(m) serves to encourage parties to resolve their disputes informally without judicial intervention, or at least "to narrow the issues that must be brought to the court." *Ellipso*, 460 F. Supp. 2d at 102 (citing *Pogue*, 235 F.R.D. at 529). This aim is mainly furthered by the consultation requirement, as conferrals between counsel may lead to parties resolving or narrowing issues that would otherwise be presented to the court. The certification requirement essentially functions to prod parties into compliance with the conferral requirement and to reduce the burden on courts to assess adherence to that provision. Failure to include the required statements may leave a court uncertain about whether conferral

occurred.  But because conferral has in fact occurred, failure to certify would not lead a Court to unnecessarily expend its time and resources deciding an issue that the parties could have resolved on their own.  That is especially true when, as here, it is clear from the face of the plaintiffs' motion that the government would oppose it.

Declining to reach the merits of plaintiffs' motion on the basis of a failure to certify, even though the plaintiffs carried out the underlying substantive obligation, would not meaningfully further the purposes of Local Rule 7(m).  And it would conflict with the "general judicial preference for resolving motions on their merits rather than dismissing them on technicalities." *Niedermeier*, 153 F. Supp. 2d at 27.  For these reasons, although plaintiffs failed to certify their compliance with Local Rule 7(m), the Court declines to deny the motion on that ground.  That said, the Court admonishes the plaintiffs to be mindful of their obligations under the Local Rules, including Local Rule 7(m).

### 2.  The Court Will Deny the Motion Under Rule 54(b)

The plaintiffs urge this Court to enter partial final judgment under Federal Rule of Civil Procedure 54(b) for the approximately $110 million in PTIN fees that the government concedes it unlawfully exacted.  MPFJ.  Ordering immediate payment of this money into escrow, plaintiffs argue, would enable the class to benefit from interest earned on it.  MPFJ at 1.  Their argument has a certain commonsense appeal: if the government concedes this figure was unlawfully exacted from the plaintiffs, why should the plaintiffs have to wait months or years before they can earn interest on their own money?

The United States gives two reasons for why the plaintiffs have failed to satisfy Rule 54(b). First, they argue, the plaintiffs are not seeking final judgment on one or more "claims" within the meaning of Rule 54(b), but instead seeking judgment on a *portion* of their claims.  Def.'s Opp'n,

at 2–3.  This is so, the United States contends, because the plaintiffs do not seek judgment on any of the specific counts in their Second Amended Complaint (ECF No. 148) but rather request a portion of their claimed money damages.  Def.'s Opp'n at 2.  Second, the government argues that the plaintiffs have failed to demonstrate their satisfaction of Rule 54(b)'s two-part test and have waived their chance to do so.  Def.'s Opp'n, at 3–4.

Plaintiffs respond that the government is advancing "a highly formalistic view of what constitutes a 'claim' for Rule 54(b)."  Plaintiff's Reply in Support of MPFJ, ECF No. 239 at 1.  They rely on a case from the United States Court of Federal Claims to argue that the uncontested portion of the damages sought amounts to a "claim" under Rule 54(b).[1]  Specifically, in *Entergy Nuclear Palisades, LLC v. United States*, the Court of Federal Claims held that an alleged "claim" to a sum of money concededly owed to plaintiffs by the government was indeed a separate "claim" for the purposes of Rule 54(b).  *See* 122 Fed. Cl. 225, 228 (2015) (stating that "[o]ther courts in [the Federal Circuit] have found that [Rule] 54(b)'s requirement of a final claim does not prevent the entry of partial judgment in cases where a portion of the damages has been definitively established and further litigation will not impact the government's obligation to pay at least that amount.") (citing *Stockton E. Water Dist. v. United States*, 120 Fed. Cl. 80 (2015)).

Thus the question is squarely presented: what counts as a separate "claim" under Rule 54(b)?

---

[1] As a fallback position, the plaintiffs state that "[s]hould the Court find it necessary, Plaintiffs are willing to amend their complaint to add a separate claim for the concededly unlawful exactions, which would then allow the Court to grant final judgment as to that claim even under the government's definition of what constitutes a 'claim' for Rule 54(b) purposes."  Plaintiff's Reply in Support of MPFJ at 3 n.2.  But as discussed elsewhere in this opinion, Rule 54(b)'s "claim" requirement reflects a policy against unspooling claims into separate threads in order to subvert the final decision rule.  *See Tolson*, 732 F.2d at 1002.  The Court therefore declines the invitation to permit plaintiffs to obtain piecemeal final judgments by recharacterizing their claims.

### (i) The Plaintiffs Failed to Ask the Court to Direct Entry of Final Judgment on a "Claim"

Courts have interpreted the word "claim" as used in the Federal Rules of Civil Procedure to mean "the aggregate of operative facts which give rise to a right enforceable in the courts." *Original Ballet Russe v. Ballet Theatre*, 133 F.2d 187, 189 (2d Cir. 1943) (Swan, J.). In *Liberty Mutual Insurance Company v. Wetzel*, the Supreme Court suggested that it understood the word similarly, stating in a footnote that a "complaint asserting only one legal right, even if seeking multiple remedies for the alleged violation of that right, states a single claim for relief." 424 U.S. 737, 744 n.4 (1976). But the Court did not "attempt any definitive resolution of the meaning of what constitutes a claim for relief within the meaning of the Rules." *Id.*. Whatever the precise definition of "claim" in the abstract, it is clear that the plaintiffs do not seek final judgment on an entire "claim," as the term must be understood in light of the case law of both the D.C. Circuit and the Supreme Court. Plaintiffs' invocation of Rule 54(b) is thus fatally flawed.

First, according to the precedent of this Circuit, plaintiffs' alleged "claim" is inseparable from their wider claim for relief, and therefore not a proper "claim" for a Rule 54(b) motion. Under Rule 54(b), a district court may not "certif[y] a matter that does not involve the 'final' disposition of an entire 'claim.'" *Attias*, 969 F.3d at 417. Per *Tolson*, the res judicata standard guides the determination of whether a Rule 54(b) judgment may be granted for any alleged claims. *Tolson*, 732 F.2d at 1001.

In this case, res judicata would bar plaintiffs from bringing their "claim" for the concededly unlawful funds separately from their other claims once one of the claims was extinguished by a valid and final judgment. In this suit against the IRS for its imposition of PTIN fees, a "claim" for a portion of the monetary relief sought by plaintiffs obviously arises out of the same transaction

or series of transactions as the plaintiffs' other claims.  *See* Restatement (Second) of Judgments § 24 (Am. L. Inst. 1982).  So under *Tolson* the plaintiffs cannot sever their alleged "claim" to the conceded funds from their broader claim against the government.  Since Rule 54(b) does not permit a court to certify anything less than an entire claim, the plaintiffs' motion must be denied.

Second, the Supreme Court has left little doubt that Rule 54(b) is to be used to ultimately dispose of an entire claim, not to expedite part of a remedy linked to a particular claim.  Congress and the Supreme Court promulgated Rule 54(b) to provide "a practical means of permitting an appeal to be taken from one or more final decisions on individual claims, in multiple claims actions, without waiting for final decisions to be rendered on all the claims in the case."  *Sears*, 351 U.S. at 435.  The Rule was not designed, however, to "relax the finality required of each decision, as an individual claim, to render it appealable."  *Id.*.  Finality of judgment of a claim remains a statutory requirement for appellate jurisdiction.  *See id.* at 437; 28 U.S.C. § 1291.  Indeed, the Rule was designed to "effectively 'preserve[] the historic federal policy against piecemeal appeals.'"  *Curtiss-Wright*, 446 U.S. at 8 (quoting *Sears*, 351 U.S. at 438).  Granting plaintiffs' motion concerning the concededly unlawfully exacted money, however, would undermine finality because part of the plaintiffs' claim would be subject to appellate review while other parts remained pending in the district court.

Both the Supreme Court and the D.C. Circuit have rejected attempts by parties to fragment their claims in order to seek Rule 54(b) relief.  In *Liberty Mutual*, the Supreme Court rejected the notion that a "claim" could refer to each of the different forms of relief sought because "a complaint asserting only one legal right, even if seeking multiple remedies for the alleged violation of that right, states a single claim for relief."  *Liberty Mutual Insurance*, 424 U.S. at 743 n.4.  And in *Tolson*, the D.C. Circuit warned against "formulat[ing] the definition of 'claim'" in a way that

18

would "erode the final decision rule." *Tolson*, 732 F.2d at 1002. Plaintiffs ask this Court to do the very thing higher courts have warned against.

The only authority plaintiffs can cite in their favor is unavailing. Plaintiffs ask this Court to rely on a case from the Court of Federal Claims. MPFJ at 2; Pls.' Reply in Support of MPFJ at 2–3; *see Entergy*, 122 Fed. Cl. at 228. But even if *Entergy* is correct in its implicit premise that the Supreme Court's precedents do not preclude its decision, this Court is bound by the case law of the D.C. Circuit. And under decisions like *Tolson*, an alleged "claim" to a portion of plaintiffs' claim for monetary relief is not a separate "claim" that can be the subject to a Rule 54(b) motion.

In conclusion, this Court must reject plaintiffs' contention that their request for partial final judgment as for the concededly unlawful PTIN fees is a "claim" within the sense of Rule 54(b). Since the plaintiffs do not ask the Court to direct entry of a final judgment as to a "claim," properly understood, the Court must deny the plaintiffs' motion.

### (ii) Even If the Plaintiffs Have Asked for Final Judgment on a "Claim," They Have Waived Their Argument for Having Met Rule 54(b)'s Two-Part Test

But even the plaintiffs were correct that authorizing immediate payment of a portion of the damages sought counts as entering final judgment on an entire "claim," the Court would still deny the motion because plaintiffs failed to raise, and thus waived, the argument for why they satisfied Rule 54(b)'s two-part test.

The plaintiffs were apparently so focused on justifying their view of what constitutes a "claim" under Rule 54(b) that they forgot to explain why, were the Court to agree with them on that issue, it should grant their motion. As previously discussed, the Supreme Court has interpreted Rule 54(b) to establish a two-part test. Proponents must establish that the district court is dealing

with a "final judgment" and that there is no "just reason for delay." *Curtiss-Wright*, 446 U.S. at 7–8.

But in their initial sally, the plaintiffs failed to allege that the Court was dealing with a "final judgment" in the sense of something that "determines a claim for relief" and that is "an ultimate disposition of an individual claim entered in the course of a multiple claims action." *Bldg. Indus. Ass'n of Superior California*, 161 F.3d at 744 (quoting *Curtiss-Wright*, 446 U.S. at 7); *see* MPFJ. Nor did plaintiffs explain why there was no "just reason for delay." *Curtiss-Wright*, 446 U.S. at 8. Plaintiffs simply did not discuss either prong in their initial brief.

As the Court observed in its Memorandum Opinion, a party that fails to raise an issue in its initial brief waives its right to argue that issue in its reply brief. *Steele*, 2023 WL 2139722, at *14 ("Arguments raised for the first time in a reply brief are waived.") (quoting *Nippon Shinyaku Co., Ltd. v. Iancu*, 369 F. Supp. 3d 226, 239 n.8 (D.D.C. 2019)); *see also Wultz v. Islamic Republic of Iran*, 755 F. Supp. 2d 1, 37 (D.D.C. 2010) ("As the D.C. Circuit has consistently held, the Court should not address arguments raised for the first time in a party's reply.") (quoting *Jones v. Mukasey*, 565 F.Supp.2d 68, 81 (D.D.C. 2008)). The waiver principle is a "prudential" doctrine. *Olatunji v. D.C.*, 958 F. Supp. 2d 27, 36 n.4 (D.D.C. 2013) (citing *Natural Res. Def. Council, Inc. v. E.P.A.*, 25 F.3d 1063, 1079 (D.C. Cir. 1994) (Wald, J., dissenting in part and concurring in part)). It is grounded in a recognition that "'[c]onsidering an argument advanced for the first time in a reply brief . . . is not only unfair to' the opposing party, 'but also entails the risk of an improvident or ill-advised opinion on the legal issues tendered'" because an Article III court depends on the adversarial process. *Wultz*, 755 F. Supp. 2d at 37 (quoting *McBride v. Merrell Dow and Pharms., Inc.*, 800 F.2d 1208, 1211 (D.C. Cir. 1986)).

True, plaintiffs made the high-level contention that they were entitled to partial final judgment under Rule 54(b). But a summary assertion in the initial brief, made without argument or citations, does not suffice to preserve the more fine-grained argument. *See Al-Tamimi v. Adelson*, 916 F.3d 1, 6 (D.C. Cir. 2019) ("Mentioning an argument 'in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones' is tantamount to failing to raise it.") (quoting *Schneider v. Kissinger*, 412 F.3d 190, 200 n.1 (D.C. Cir. 2005)). By waiting until the reply to spell out their theory, the plaintiffs deprived the United States of a full opportunity to rebut their arguments. *See Wultz*, 755 F. Supp. 2d at 37 (explaining that considering an argument first advanced in a reply brief would be unfair and risky "because the opposing party is not entitled to file a surreply to address new issues raised for the first time in a reply").

Therefore, even if the Court agreed that plaintiffs were indeed seeking partial final judgment on an entire "claim," it would deny the motion because they waived their argument to have met the two-part burden for Rule 54(b).

## B. Plaintiff's Motion for Clarification of the Summary Judgment Opinion

In their motion for clarification of the Court's summary judgment opinion, plaintiffs ask the Court to clarify two alleged "points of ambiguity" in its opinion. *See* Motion for Clarification at 1. First is whether the PTIN fee may include costs relating to ghost preparers. Plaintiffs point out that "in discussing the costs of Compliance Department activities that may be covered by the PTIN fee, the Court refers in one place to misuse and nonuse, and in another, just to misuse." *Id.* at 1; *see Steele*, 2023 WL 2139722, at * 11. In particular, the Court stated that the IRS permissibly charged for at least some of the Compliance Department's activities because "[t]o the extent that they relate to *misuse* of PTINs, all three are reasonably related to the provision of the private benefit

that the [D.C.] Circuit identified in *Montrois*—protection of preparers' identity—because the *misuse* of PTINs compromises their ability to serve as a secure means of identification." *Steele*, 2023 WL 2139722, at *11 (emphasis added). Elsewhere, the Court suggested that recoverable costs include not only misuse of PTINs but also nonuse. *See id.* at *11 (noting that "uncontroverted record evidence establishes that the Compliance Department undertook additional activities unrelated to the *misuse or nonuse* of PTINs.") (emphasis added). The United States argues that the opinion does not need clarification on this issue, and that the motion should be denied for plaintiffs' failure to comply with Local Rule 7(m). Def.'s Opp'n to Pls.' Motion for Clarification at 1–2.

The second alleged ambiguity is whether the PTIN fee may include costs relating to registration of foreign preparers, who lack Social Security numbers. Motion for Clarification at 1. "Foreign Preparer Processing" was one of the activities the expected costs of which the IRS used to establish its 2010 Cost Model. *Steele*, WL 2139722, at *3. At the summary judgment stage, plaintiffs argued that foreign preparer registration costs could not be recovered through PTIN fees. Pls.' MSJ at 20–21. Now they ask the Court to specifically address the issue. Motion for Clarification, at 2. The United States counters that the opinion does not need clarification on this matter and that the motion should be denied because plaintiffs breached Local Rule 7(m). Def.'s Opp'n to Pls.' Motion for Clarification.

For the reasons discussed below, plaintiffs have not shown they are entitled to a clarification of the summary judgment opinion.

1. **In Light of Local Rule 7(m), the Court Will Deny the Motion for Clarification as to Ghost Preparers but Not Foreign Preparers**

Given plaintiffs' uneven adherence to Local Rule 7(m), the Court will deny plaintiffs' motion for clarification as to ghost preparers but not as to foreign preparers.

The threshold question is whether a motion for clarification is a nondispositive motion, and thus governed by Local Rule 7(m). A motion that serves "to explain or clarify something ambiguous or vague, not to alter or amend," *Philip Morris*, 793 F. Supp. 2d at 168 (quoting *Resolution Trust.*, No1993 WL 211555, at *2), would not "result either in the determination of a particular claim on the merits or elimination of such a claim from the case." *Burkhart*, 112 F.3d at 1215. Since this motion easily fails the *Burkhart* test, Rule 7(m) applies.[2] The Court will consider whether the plaintiffs have conformed to the requirements of this Rule and, if not, what the remedy should be.

(i) **Ghost Preparers**

As for the issue of ghost preparers, plaintiffs violated Local Rule 7(m) by failing to comply with either the conferral or certification requirements. The duty to confer "requires a good faith effort to resolve the non-dispositive disputes that occur in the course of litigation." *Pogue*, 235 F.R.D. at 529. "[P]erfunctory action" will not suffice. *Id..* As evidence of consultation, plaintiffs offer Exhibit A of their reply brief, containing email exchanges between lawyers for both sides. *See* Exhibit A, ECF No. 238-1. Yet the only communication concerning ghost preparers is the

---

[2] Plaintiffs argue that Local Rule 7(m) does not apply because plaintiffs are seeking clarification of the summary judgment opinion, which itself was a ruling on a dispositive motion. Pls.' Reply in Support of Motion for Clarification at 1. However, this argument is inconsistent with the Local Rule's plain text: plaintiffs have a conferral and certification obligation "[b]efore filing *any* nondispositive motion," LCvR 7(m) (emphasis added), regardless of whether the nondispositive motion concerns a prior ruling on a dispositive motion. Plaintiffs have not given the Court a reason to impose this atextual limitation on Local Rule 7(m), and the Court will not do so. *See Niedermeier*, 153 F. Supp. 2d at 27 ("[T]here is simply no exception to Local Civil Rule 7.1(m) for nondispositive motions which happen to relate to dispositive motions.").

following statement from an attorney for the plaintiffs in an email to counsel for the government: "Also, we went ahead and assumed that you object to the piece on ghost preparers, but if that's not correct, let us know."  Exhibit A, ECF No. 238-1, at 2.  An email message inviting the other side to share its views on a topic is not enough to show that plaintiffs took "real steps," *K & R Ltd. P'ship*, 456 F. Supp. 2d at 52, to confer with opposing counsel and resolve the dispute without the need for judicial intervention.  Plaintiffs also failed to state in their motion whether the required discussion had occurred and whether the motion was opposed.  In light of plaintiffs' failure to comply with either requirement of Local Rule 7(m) on the ghost preparers issue, the Court will deny the motion with respect to that issue.[3]

---

[3] Even if the Court reached the merits, it would likely deny the motion with respect to ghost preparers.  On this topic the summary judgment opinion is not "ambiguous or vague." *Philip Morris*, 793 F. Supp. 2d at 168.  In fact, the Court stated *three times* that the PTIN fee properly included "the direct and indirect costs of . . . investigating ghost preparers." *Steele*, 2023 WL 2139722, at *12, 14, 18.  And the Court defined ghost preparers are those who "used someone else's PTIN or an invalid number" (misuse) or "failed to use a PTIN" (non-use). *Id.* at 2.  The opinion is therefore quite clear that costs relating to ghost preparers may be included in the PTIN fee.

### (ii) Foreign Preparers

On the issue of the opinion's application to foreign preparers, the Court is satisfied that plaintiffs adequately conferred with opposing counsel. This is evidenced by the email exchanges documented in Exhibit A of plaintiffs' reply brief. *See* Exhibit A, ECF No. 238-1. More than a month before the plaintiffs filed their motion, counsel for plaintiffs held a phone call with the lawyers for the government. The next day, plaintiffs' counsel sent an email to the government attorneys raising an issue not discussed on the call: foreign preparers. *Id.* at 5. The attorney noted his view that the summary judgment opinion did not address this issue, outlined his argument for why such expenses could not be charged as part of the PTIN fee, asked for the IRS's position on this issue, and advised that plaintiffs might raise the matter with the Court. *Id.* at 5. Just over a week later, the attorney sent another email to the government's attorneys stating plaintiffs' intention to ask the Court to address this issue. *Id.* at 4.

After several days apparently without a reply, the plaintiffs' attorney again requested a response from the government lawyers. *Id.* at 3. A government lawyer then responded that the government did not consent to plaintiffs' "request" concerning foreign preparers. *Id.* at 2. The emails show that plaintiffs' counsel took real steps to confer with the government by communicating its argument on the issue of foreign preparers and its intention to ask the Court for clarification. The plaintiffs therefore met their burden of consultation under Local Rule 7(m).

The plaintiffs did not, however, meet Local Rule 7(m)'s requirement that a party "include in its motion a statement that the required discussion occurred, and a statement as to whether the motion is opposed." LCvR 7(m). As discussed with reference to plaintiffs' motion for partial final judgment, failure to certify may suffice for a motion to be denied. But again, the purposes of the Local Rule would not be furthered by denying this motion because the plaintiffs failed to certify,

even though they complied with the underlying substantive obligation of conferral. The Court therefore will not deny the motion for clarification with respect to the issue of foreign preparers for failure to comply with Local Rule 7(m), and proceeds to the merits of the dispute.

## 2. The Court Will Deny the Motion for Clarification

The Court will deny plaintiffs' motion to clarify whether registration costs for foreign preparers may be included in the PTIN fee. The opinion is not vague or ambiguous on that topic, and this issue may not be relitigated via a motion for clarification.

"To justify a fee under the [IOAA], . . . an agency must show (i) that it provides some kind of service in exchange for the fee, (ii) that the service yields a specific benefit, and (iii) that the benefit is conferred upon identifiable individuals." *Steele*, 2023 WL 2139722, at *7 (quoting *Montrois*, 916 F.3d at 1062–63). *Montrois* identified "protection of preparers' identity" as a private benefit provided by the PTIN. *Id.* at *11. The D.C. Circuit explained that provision of a PTIN affords a benefit because "the PTIN helps protect tax-return preparers' identities by allowing them to list a number on returns other than their social security number." *Montrois*, 916 F.3d at 1063. In the Memorandum Opinion, this Court stated that to justify charging for an activity as part of an IOAA fee, "the government must be able to explain with respect to each activity that formed the basis for the PTIN fees how that activity was reasonably related to providing the private benefit that the Circuit identified in *Montrois*: a means of identifying return preparers that protects them from identity theft." *Steele*, 2023 WL 2139722, at *9. Plaintiffs have argued that "[b]ecause foreign preparers who did not have social security numbers received no benefit from the PTIN, the costs of their PTIN registration activities should not be recoverable through PTIN fees." Motion for Clarification at 3.

But although the Court did not explicitly address foreign preparer processing, that does not mean its opinion is ambiguous or vague on that matter. No opinion can expressly address every aspect of its application. But the Memorandum Opinion nonetheless provided sufficient guidance on the foreign preparers issue. The Court recognized that the benefit provided by the PTIN is "protection of preparers' identity" from identify theft. *Steele*, 2023 WL 2139722, at \*9, 11. The Court spoke of identity theft simpliciter; it did not qualify the benefit as limited to protection against certain forms of identify theft, such as identity theft *of those who have Social Security numbers*. Although foreign preparers will not have their nonexistent Social Security numbers stolen, they are not necessarily immune from identify theft. Given the opinion's unqualified description of the benefit, the opinion permitted PTIN fees to be imposed for costs relating to foreign preparers.

Although plaintiffs have used their motion and reply to argue for why registration costs for PTIN fees may not be used to recover costs relating to registration of foreign preparers, "the purpose of a motion for clarification is not to re-litigate a matter that the court has considered and decided." *Sai*, 2015 WL 13889866, at \*3. The Court will therefore deny the motion for clarification on the issue of foreign preparers.[4]

---

[4] Plaintiffs also argued that the government waived any argument that registration costs for foreign preparers may be included in PTIN fees by not responding to the argument plaintiffs raised at the summary judgment stage. Pls.' Reply in Support of Motion for Clarification at 2. However, even if the United States did waive its ability to respond to the argument about foreign preparers, that would not affect this Court's ability to decide the issue in its summary judgment opinion. *Cf. Carducci v. Regan*, 714 F.2d 171, 177 (D.C. Cir. 1983) ("Of course not all legal arguments bearing upon the issue in question will always be identified by counsel, and we are not precluded from supplementing the contentions of counsel through our own deliberation and research.").

## IV.    CONCLUSION

For the foregoing reasons, the Court will **DENY** plaintiffs' motion for partial final judgment and **DENY** plaintiffs' motion for clarification of this Court's January 23, 2023 opinion. A separate Order consistent with this Memorandum Opinion shall issue.

Date:  9/18/23

Royce C. Lamberth
United States District Judge

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Adam Steele, Brittany Montrois, and | ) | |
| Joseph Henchman, on behalf of | ) | |
| themselves and all others similarly | ) | |
| situated, | ) | |
|     *Plaintiffs*, | ) | |
| | ) | |
| v. | ) | Civil Action No.: 1:14-cv-01523-RCL |
| | ) | |
| United States of America, | ) | |
|     *Defendant*. | ) | |
| | ) | |

## [PROPOSED] ORDER

AND NOW, after consideration of the parties' Joint Motion for Amendment of the Court's

Order on Summary Judgment Under Rule 60(a) ("Joint Motion") it is hereby:

ORDERED that the Court's order on the parties' cross motions for summary judgment

(ECF 222) is amended consistent with Exhibit A to the parties' Joint Motion. As set forth below,

the following paragraph related to the government's portion of the PTIN user fee:

- In determining the lawful amount charged and the corresponding refund, the IRS shall use the 2010 Cost Model and fee amount of $50 as the baseline for the FY 2011 through 2015 PTIN fees and the 2015 Cost Model and fee amount of $33 as the baseline for the FY 2016 and 2017 PTIN fees. However, the IRS may look to later cost models for assistance in identifying costs that were improperly included in the 2010 and 2015 Cost Models.

is to be replaced with:

- In determining the lawful amount charged and the corresponding refund, the IRS shall use the 2010 Cost Model and fee amount of $50 as the baseline for the October 1, 2010 to October 31, 2015 PTIN fees and the 2015 Cost Model and fee amount of $33 as the baseline for the November 1, 2015 to July 10, 2017 PTIN fees. However, the IRS may look to later cost models for assistance in identifying costs that were improperly included in the 2010 and 2015 Cost Models.

The following paragraph related to Accenture's portion of the PTIN user fee:

- In determining the lawful amount charged and the corresponding refund, the IRS shall use its initial contract with Accenture and fee amounts of $14.25 for new registrations and $13 for renewals as the baseline for the FY 2011 through 2016 vendor fees and the subsequent contract (to the extent it contemplates different activities) and fee amount of $17 for the FY 2017 vendor fee.

is to be replaced with:

- In determining the lawful amount charged and the corresponding refund, the IRS shall use its initial contract with Accenture and fee amounts of $14.25 for new registrations and $13 for renewals as the baseline for the October 1, 2010 to October 31, 2015 vendor fees and the subsequent contract (to the extent it contemplates different activities) and fee amount of $17 for the November 1, 2015 to July 10, 2017 vendor fee.

IT IS SO ORDERED.

Date: _____ April 6, 2023 _____           _____
                                              The Honorable Royce C. Lamberth
                                              Senior United States District Judge

| | |
|---|---|
| **ADAM STEELE, BRITTANY MONTROIS, and JOSEPH HENCHMAN, on behalf of themselves and all others similarly situated,** | |
| *Plaintiffs,* | |
| **v.** | **Case No. 1:14-cv-1523-RCL** |
| **UNITED STATES OF AMERICA,** | |
| *Defendant.* | |

## **ORDER**

For the reasons stated in the accompanying Memorandum Opinion, it is hereby **ORDERED** that Plaintiffs' Motion for Summary Judgment [175] is **GRANTED** in part and **DENIED** in part and Defendant's Motion [173] for Partial Summary Judgment is **GRANTED** in part and **DENIED** in part.

It is further **ORDERED** that the PTIN and vendor fees for FY 2011 through 2017 were unlawfully excessive under the IOAA to the extent that they were based on the following activities:

- All activities already conceded by the government in this case.

- Any Compliance Department activities other than (1) investigating ghost preparers; (2) handling complaints regarding improper use of a PTIN, use of a compromised PTIN, or use of a PTIN obtained through identity theft; and (3) composing the data to refer those specific types of complaints to other IRS business units.

- All Suitability Department activities.

- The portion of support activities that facilitated provision of an independent benefit to the agency and the public.

- The portion of Accenture's activities as a vendor that facilitated provision of an independent benefit to the agency and the public.

It is further **ORDERED** that the case is remanded to the IRS to determine an appropriate refund for the class as follows:

- The IRS shall determine in a manner consistent with the accompanying Memorandum Opinion the amount of the FY 2011 through 2017 PTIN and vendor fees it lawfully charged return preparers by subtracting from the fees it actually charged a reasonable estimate of the cost of the activities identified above as being invalid bases for an IOAA fee.

- In determining the lawful amount charged and the corresponding refund, the IRS shall use the 2010 Cost Model and fee amount of $50 as the baseline for the FY 2011 through 2015 PTIN fees and the 2015 Cost Model and fee amount of $33 as the baseline for the FY 2016 and 2017 PTIN fees. However, the IRS may look to later cost models for assistance in identifying costs that were improperly included in the 2010 and 2015 Cost Models.

- In determining the lawful amount charged and the corresponding refund, the IRS shall use its initial contract with Accenture and fee amounts of $14.25 for new registrations and $13 for renewals as the baseline for the FY 2011 through 2016 vendor fees and the subsequent contract (to the extent it contemplates different activities) and fee amount of $17 for the FY 2017 vendor fee.

- The IRS shall not offset the amount due to the class at this juncture based on fees it could not or did not assess following this Court's later-vacated injunction against the assessment of all PTIN fees.

- When the IRS has completed this review on remand, the government shall file a notice in this Court informing plaintiffs and the Court of the refund it has estimated to be appropriate.

The Court will retain jurisdiction for purposes of further proceedings to follow thereafter.

The parties are **ORDERED** to file within 30 days of the issuance of this Order and every 30 days thereafter a joint status report informing the Court of the status of the IRS's work on remand until such time as that work is complete.

It is further **ORDERED** that plaintiffs' challenge to the information asked for on PTIN applications was improperly raised.

It is further **ORDERED** that Defendants' Motion [174] for Leave to File Under Seal is **GRANTED**, Plaintiffs' Motion [177] for Leave to File Under Seal is **GRANTED**, Defendant's Motion [184] for Leave to File Under Seal is **GRANTED**, Plaintiffs' Motion [187] for Leave to File Under Seal is **GRANTED**, Plaintiffs' Motion [206] to Modify the Draft Order is **DENIED**, Plaintiffs' Motion [207] for Leave to File Under Seal is **GRANTED**, Plaintiffs' Motion [211] to File a Surreply is **GRANTED**, and Plaintiffs' Request [218] for Judicial Notice is **DENIED**.

The Memorandum Opinion was filed under seal because it references documents the parties filed under seal. It is hereby **ORDERED** that the parties meet and confer and jointly identify which, if any, parts of the Memorandum Opinion should remain sealed within five days.

**IT IS SO ORDERED.**

Date: _____1/23/23_____

_Royce C. Lamberth_
Royce C. Lamberth
United States District Judge

3

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ADAM STEELE, BRITTANY MONTROIS, and JOSEPH HENCHMAN,** on behalf of themselves and all others similarly situated,<br><br>    *Plaintiffs,*<br><br>**v.**<br><br>**UNITED STATES OF AMERICA,**<br><br>    *Defendant.* | **Case No. 1:14-cv-1523-RCL**<br><br>**\*\*\* FILED UNDER SEAL \*\*\*** |

## MEMORANDUM OPINION

This case concerns the Internal Revenue Service's ("IRS" or "the agency") assessment of fees to income tax return preparers for its issuance and renewal of Preparer Tax Identification Numbers ("PTINs"). Plaintiffs, a class of return preparers, sued the United States for declaratory, injunctive, and monetary relief in this Court, arguing that the IRS lacked authority under the Independent Offices Appropriations Act ("IOAA"), 31 U.S.C. § 9701, to charge those fees. This Court agreed, granted summary judgment to plaintiffs, and enjoined the IRS from continuing to assess fees for PTIN registrations and renewals. *Steele v. United States* ("*Steele I*"), 260 F. Supp. 3d 52, 63–67 (D.D.C. 2017). On appeal, however, the Circuit vacated this Court's judgment, holding that that statute indeed authorized PTIN fees, and remanded for consideration of whether the fee amounts were excessive. *Montrois v. United States*, 916 F.3d 1056, 1062–68 (D.C. Cir. 2019).

Before the Court on remand are the parties' cross-motions for summary judgment, ECF Nos. 173, 175. Plaintiffs argue that many of the expenses used to justify the amount of the PTIN fees are unnecessary to the maintenance of the PTIN system and therefore those fees are excessive

1

117

in violation of the IOAA. The government moves only for partial summary judgment, conceding that the IRS unlawfully included certain expenses in its PTIN fee calculations but maintaining that the agency was within its authority to include others. The government further argues that it is entitled to an offset to its liability for sums it could have charged in fees while it was enjoined by this Court from assessing them. For the reasons that follow, the Court will **GRANT** in part and **DENY** in part plaintiffs' motion, **GRANT** in part and **DENY** in part the government's motion, and **REMAND** to the IRS to determine an appropriate refund for the class in a manner consistent with the IOAA.

## I. BACKGROUND

### A. Statutory and Regulatory Background

Both this Court and the Circuit have set out the statutory and regulatory background of this case extensively in prior opinions. *See Steele I*, 260 F. Supp. 3d at 56–58; *Montrois*, 916 F.3d at 1058–60; *Steele v. United States* ("*Steele III*"), No. 14-cv-1523-RCL, 2020 WL 7123100, at *1–2 (D.D.C. Dec. 4, 2020). Accordingly, the Court will summarize that background here only as necessary to resolve the pending cross-motions for summary judgment.

The Internal Revenue Code defines a "tax return preparer" as "any person who prepares for compensation, or who employs one or more persons to prepare for compensation, any return of" or "claim for refund of" federal income taxes. 26 U.S.C. § 7701(a)(36)(A). While the Code does not set professional standards or licensing requirements for return preparers, Congress enacted a statute in 1976 authorizing the IRS to require them to list their social security numbers for identification purposes on returns they prepared. *See* Tax Reform Act of 1976, Pub. L. No. 94-455, § 1203(d), 90 Stat. 1520, 1691.

In 1998, Congress amended that statute to authorize the IRS to permit return preparers to list a separate identification number issued by the agency instead of a social security number. 26

2

U.S.C. § 6109(a), (d). The IRS promulgated an implementing regulation the following year creating the PTIN program and allowing, but not requiring, return preparers to list the PTINs it issued in lieu of a social security number on returns. Furnishing Identifying Number of Income Tax Return Preparer, 64 Fed. Reg. 43,910 (Aug. 12, 1999) (codified at 26 C.F.R. pt. 1).

In 2010 and 2011, the IRS issued a series of regulations expanding its regulatory reach over return preparers. As a part of that effort, the IRS created a mandatory credentialing process for preparers who are not attorneys or certified public accountants, including a background check, a competency exam, and ongoing education requirements. *See* Regulations Governing Practice Before the Internal Revenue Service, 76 Fed. Reg. 32,286, 32,286–87 (June 3, 2011). The IRS also expanded the PTIN program, retooled it as a broader information-gathering system regarding preparers, made obtaining and renewing PTINs mandatory for preparers, and began charging a fee to obtain and renew one. *See* Furnishing Identifying Number of Tax Return Preparer, 75 Fed. Reg. 60,309, 60,309–10 (Sept. 30, 2010); User Fees Relating to Enrollment and Preparer Tax Identification Numbers, 75 Fed. Reg. 60,316, 60,316, 60,319 (Sept. 30, 2010).

To support the expanded program, the IRS organized a new Return Preparer Office ("RPO") with multiple departments, including, as relevant here, the Suitability Department, the Compliance Department, and various departments providing support to the entire office. The Suitability Department "was responsible for checking personal tax compliance, checking professional designation, matching prisoner lists, checking compliance of Enrolled Agents [] and Enrolled Retirement Plan Agents [], checking compliance with the Annual Filing Season Program [], Former Employee EA Enrollment Applications, and matching Specially Designated Nationals [] lists." Pls.' Statement of Undisputed Material Facts ("PSUMF") ¶ 81, ECF No. 177-30 (internal quotation marks and citation omitted); Def.'s Resp. to PSUMF ("DRPSUMF") ¶ 81, ECF No. 184-

3

1. The Compliance Department performed data analytics regarding compliance with PTIN reporting requirements, investigated so-called "ghost preparers" who failed to use a PTIN or used someone else's PTIN or an invalid number, and processed disciplinary referrals of preparers. PSUMF ¶¶ 82–85; DRPSUMF ¶¶ 82–85.

After the IRS implemented its new return preparer regulations, a group of return preparers sued the IRS, arguing that its new preparer credentialing process was unlawful because the statute that the agency used to justify it, 31 U.S.C. § 330, regarding persons practicing before the IRS, did not reach return preparers. *See Loving v. IRS*, 742 F.3d 1013, 1015–16 (D.C. Cir. 2014). The District Court granted summary judgment to the plaintiffs, invalidating the credentialing requirement, and the Circuit affirmed. *Id.* at 1021–22. *Loving* thus invalidated many of the RPO activities that the PTIN fees funded. However, it left undisturbed the regulations requiring all return preparers to obtain and renew PTINs and to pay a fee for doing so.

### B. The IRS's PTIN fee calculations

The following is a summary of the PTIN and vendor fees that the IRS charged return preparers between Fiscal Year ("FY") 2011 and 2017 and from FY 2021 to the present,[1] as well as the various cost models that the IRS used to set those amounts.

#### 1. Fees based on the 2010 Cost Model

In 2010, the IRS completed a Cost Model estimating that the annual PTIN registration and renewal fee should be set at $50, the amount that the agency would ultimately charge from the new PTIN system's implementation in FY 2011 through 2015. Def.'s Statement of Undisputed Material Facts ("DSUMF") ¶¶ 66, 71–73, ECF No. 173-2; Pls.' Resp. to DSUMF ("PRDSUMF") ¶¶ 66,

---

[1] As explained below, the IRS did not assess PTIN fees between FY 2018 and 2020 because of this Court's order enjoining it from doing so, which the Circuit later vacated.

71–73, ECF No. 187-2. The government summarizes the activities whose expected costs the IRS used to reach that number as follows:

- Communications & Customer Support
- IT Development & Implementation
- Program Compliance (Professional Designation Checks (PDC), Personal Tax Compliance (PTC), Criminal Background Checks (CBC), and administrative support)
- Management and supervisory costs (entitled OPR/PMO Operations Support)
- Foreign Preparer Processing

DSUMF ¶ 64; *see* 2010 Cost Model, Ex. 13 to Defs.' Mot. for S.J., ECF No. 174-8. Plaintiffs add, and the government does not dispute, that the "Program Compliance" component "also included 'Verify[ing] Return Preparers' Self-Reported Tax Compliance,' 'Develop[ing] processes for Identifying and Treating Return Preparers Filing w/o PTIN or Incorrect PTIN,' and 'Verify[ing] Return Preparers' Self Certified Continuing Education.'" PRDSUMF ¶ 64 (alterations in original) (quoting Ex. U to Pls.' Mot. for S.J. at 5, ECF No. 176-21); *see* PSUMF ¶ 34; DRPSUMF ¶ 34. Although the IRS conducted a "biennial review" of PTIN costs and produced a 2013 Cost Model, estimating that the PTIN fee should increase to $54.47, the IRS elected to keep the fee at $50 for the next two years. DSUMF ¶¶ 84–85; PRDSUMF ¶¶ 84–85.

The government now concedes that the IRS should not have included the personal tax compliance, criminal background check, self-reported tax compliance, or continuing education activities in its calculations, because those activities were invalidated by *Loving*. DSUMF ¶ 68. Removing the costs associated with those items from the original calculations, the government asserted at the time of its opening summary judgment brief that the appropriate PTIN fee based on the 2010 Cost Model would have been $17. *Id.* ¶¶ 69–70 (citing 2010 Cost Model at 3). The government made further concessions with respect to the 2010 Cost Model after filing its opening brief and now only defends a PTIN fee of $14.05 for FY 2011 through 2013. *See* Def.'s Reply at

5

10–11, ECF No. 203; Second Decl. of Carol A. Campbell ("Second Campbell Decl.") ¶ 6, ECF No. 203-1. The government makes similar concessions with respect to the 2013 Cost Model, which it now cites as an appropriate measure of fees for FY 2014 and 2015, and asserts that the fee for those years should have been $37.25. DSUMF ¶¶ 86–90; Def.'s Reply at 11–12.

In addition to the PTIN fees themselves, the IRS required preparers to pay a "vendor fee" to Accenture, a third-party contractor that the agency hired to develop, maintain, and operate the computer system responsible for PTIN registrations. DSUMF ¶¶ 112–13; PRDSUMF ¶¶ 112–13. From FY 2011 to 2015, that fee was set by the contract between the IRS and Accenture at $14.25 for new PTIN registrations and $13 for PTIN renewals. DSUMF ¶¶ 115–18; PRDSUMF ¶¶ 115–18, 123. The government continues to defend the vendor fees in full. *See* Def.'s Opp'n at 27–29, ECF No. 183.

In sum, from FY 2011 to 2015, preparers registering for a PTIN for the first time paid a $50 PTIN fee and a $14.25 vendor fee, for a total of $64.25; and preparers renewing their PTIN paid a $50 PTIN fee and a $13 vendor fee, for a total of $63. The government now concedes that the PTIN fee associated with each of those numbers should have been only $17 for FY 2011 through 2013 and $37.25 for FY 2014 and 2015. Thus, the government impliedly asserts that the total amount charged should have been $31.25 for new registrants and $30 for renewing registrants during FY 2011 through 2013 and $51.50 for new registrants and $50.25 for renewing registrants during FY 2014 and 2015.

### 2. Fees based on the 2015 Cost Model

In 2015, the IRS completed a second biennial review and issued a new Cost Model, estimating that the PTIN fee to be charged in FY 2016 and 2017 should be set at $33. 2015 Cost Model at 1, Ex. 21 to Def.'s Mot. for S.J., ECF No. 174-12; DSUMF ¶ 94; PRDSUMF ¶ 94. That

number was lower than the original $50 fee in part because of certain activities that the Circuit invalidated in *Loving*. DSUMF ¶ 95; PRDSUMF ¶ 95. The government later conceded additional costs in the 2015 Cost Model that it determined in a subsequent biennial review to be improper based on *Loving* and now asserts that the proper PTIN fee for FY 2016 and FY 2017 would have been approximately $24. DSUMF ¶ 103; PRDSUMF ¶ 103.

The IRS also continued to require return preparers to pay the vendor fee to Accenture. For FY 2016, the vendor fee remained at $14 for new registrations and $13.25 for renewals. DSUMF ¶¶ 120–23; PRDSUMF ¶¶ 120–123. By FY 2017, a new contract between the IRS and Accenture had taken effect, and the vendor fee increased to $17 for both new registrations and renewals. DSUMF ¶¶ 124–25; PRDSUMF ¶¶ 124–25.

In sum, in FY 2016, preparers registering for a PTIN for the first time paid a $33 PTIN fee and a $14 vendor fee, for a total of $47; and preparers renewing their PTIN paid a $33 PTIN fee and a $13.25 vendor fee, for a total of $46.25. In FY 2017, preparers paid a $33 PTIN fee and a $17 vendor fee, for a total of $50, regardless of whether they were registering for the first time or renewing their registrations. The government now concedes that the PTIN fees associated with those numbers should have been $24. Thus, the government impliedly asserts that the total amount charged should have been $38 for new registrants and $37.25 for renewing registrants in FY 2016 and $41 for all preparers in FY 2017.

### 3. Fees based on the 2019 Cost Model

As explained below, this Court enjoined the assessment of PTIN fees in 2017 and the Circuit vacated that decision in 2019. In 2019, the IRS completed another biennial review and produced another Cost Model estimating that the PTIN fee should be approximately $21 for both new registrations and renewals. DSUMF ¶¶ 107–108; PRDSUMF ¶¶ 107–08. The new fee of $21

took effect in August 2020 and remained in effect through at least FY 2022.[2] *See Preparer Tax Identification Number (PTIN) User Fee Update*, 85 Fed. Reg. 43433 (July 17, 2020).

The vendor fee to Accenture also remained in force. Beginning in FY 2018 and continuing to the present, the vendor fee is set at $14.95 for both registrations and renewals. DSUMF ¶ 133; PRDSUMF ¶ 133. While the aforementioned injunction was in effect and the IRS was unable to charge PTIN fees, the IRS itself paid the vendor fee, which was set by contract, to Accenture for each registration or renewal. DSUMF ¶ 134; PRDSUMF ¶ 134.

In sum, in FY 2021 and 2022, preparers paid a $21 PTIN fee and a $14.95 vendor fee, for a total of $35.95, each year for a registration or renewal.

### C. The Present Case

The present case began in 2014, after the Circuit's decision in *Loving*, when a putative class of tax-return preparers filed an action in this Court against the United States challenging the regulations making PTINs mandatory and imposing a fee on the issuance and renewal of PTINs. *See* Compl., ECF No. 1. The plaintiffs sought review of the PTIN fees under the Administrative Procedure Act ("APA") and requested declaratory and injunctive relief, as well as an award of restitution refunding the PTIN fees they had paid. *Id.*[3] On August 8, 2016, the Court certified a class of "[a]ll individuals and entities who have paid an initial and/or renewal fee for a PTIN, excluding Allen Buckley, Allen Buckley LLC, and Christopher Rizek," ECF No. 63, and

---

[2] Plaintiffs ask the Court to take judicial notice of an apparent decrease in the PTIN fee amount for FY 2023 by $5.20. *See* Pls.' Request for Jud. Notice, ECF No. 218. For reasons explained below, later calculations are not relevant to the excessiveness of the FY 2011–2017 PTIN fees, which are the only ones at issue in this opinion. Accordingly, the Court will deny plaintiffs' request that it take judicial notice.

[3] Although the initial complaint did not mention the APA, plaintiffs' first amended complaint, filed in August 2015, clarified that they were challenging the PTIN fees as "unlawful agency action under the Administrative Procedure Act, 5 U.S.C. § 706(2)." First Am. Compl. ¶ 42.

appointed Motley Rice LLC as counsel for the class.[4] The following month, the parties cross-moved for summary judgment. ECF Nos. 66, 67.

On June 1, 2017, this Court granted in part and denied in part both parties' summary judgment motions. *Steele I*, 260 F. Supp. 3d at 67–68. First, the Court held that the Internal Revenue Code authorized the IRS to require the use of PTINs, and that the agency's decision to do so was not arbitrary and capricious under the APA. *Id.* at 62–63. Second, the Court held that the IOAA did not authorize the IRS to charge a fee for the issuance or renewal of PTINs, reasoning that PTINs did not constitute a "service or thing of value provided by [an] agency," 31 U.S.C. § 9701(b), within the meaning of that statute—the only proper basis for a fee under it, *Steele I*, 260 F. Supp. 3d at 63–67. The Court therefore enjoined the IRS from charging a PTIN fee going forward. ECF No. 82. Only the government appealed. *See* Notice of Appeal, ECF No. 90.

The government then filed a motion for a stay pending appeal of the Court's injunction against charging a PTIN fee. ECF No. 84. The Court denied that motion. *Steele v. United States* ("*Steele II*"), 287 F. Supp. 3d 1, 6 (D.D.C. 2017).

On appeal, the Circuit vacated and remanded in a March 1, 2019 decision. *Montrois*, 916 F.3d at 1068. The Circuit first ruled for the government on the IOAA ground, holding that the PTIN system was a service that provided return preparers a private benefit—specifically, "protect[ing] the confidentiality of their personal information"—and therefore that the statute authorized the imposition of a fee to recoup the costs of "generating PTINs and maintaining a database of PTINs." *Id.* at 1062–67. The Circuit then dispatched an alternative argument that this Court never reached: that the decision to impose a fee was arbitrary and capricious under the APA.

---

[4] As reflected on the public docket, the persons and firm excluded from the class are also plaintiffs' counsel.

*Id.* at 1067–68. Because only the government appealed, the Circuit's decision did not disturb this Court's holding that the IRS was authorized to require preparers to obtain PTINs.

On remand, this Court entered a new scheduling order and the parties commenced fact discovery on the reasonableness of the fees charged. *See* ECF Nos. 100, 127. That is when infighting among plaintiffs' counsel threatened to derail the case. Mr. Buckley, co-counsel for plaintiffs, evidently could not reach an agreement to share control of the case with class counsel Motley Rice LLC, and on January 23, 2020, he filed a motion to be appointed as lead counsel for the class. ECF No. 118. The Court denied that motion. ECF No. 126.

Without the Court's assistance in wresting control of plaintiffs' case from his co-counsel, Mr. Buckley decided to go rogue. He filed two motions, purportedly on behalf of the class, but against class counsel Motley Rice LLC's wishes: one for a preliminary injunction against requiring registered preparers to renew their PTINs and another for leave to file an amended complaint adding allegations that the PTIN renewal (as opposed to registration) requirement was unlawful and that the PTIN fees charged after 2020 were excessive. ECF Nos. 128, 133. Both factions of plaintiffs' counsel and the government eventually reached a stipulation regarding the latter motion, and the government consented to the addition of allegations about the post-2020 fee amounts but not the renewal requirement. ECF No. 139.

On December 4, 2020, the Court denied the preliminary injunction motion and granted in part and denied in part the motion for leave to file an amended complaint. *Steele III*, 2020 WL 7123100, at *7. The Court noted that the government stipulated to the addition of allegations about the post-2020 fees but reasoned that the so-called "allegations" in the proposed amended complaint were added after undue delay and that adding them to the complaint would be futile because they were simply "naked legal conclusions" about the agency's authority to require registered preparers

to renew their PTINs. *Id.* at *5–6. Accordingly, the Court granted leave to amend the complaint with respect to the former but not the latter. *Id.* The Court then denied the preliminary injunction motion because the operative complaint contained no allegations about the legality of requiring registered preparers to renew their PTINs. *Id.* at *6–7.

On March 23, 2022, the parties filed their cross-motions for summary judgment on the excessiveness of the PTIN and vendor fees. ECF Nos. 173, 177. On May 12, 2022, the parties filed their opposition briefs, ECF Nos. 183, 185, and Mr. Buckley, still unwilling to yield his claim as class-counsel-in-exile, filed a short supplemental brief in support of plaintiffs' motion, ECF No. 188.[5] The parties filed their replies on July 8, 2022, ECF Nos. 203, 207-4, and one week later, plaintiffs moved for leave to file a surreply, ECF No. 211, which the Court will **GRANT**. The summary judgment motions are now ripe for review.

## II.    LEGAL STANDARDS

### A.  Summary Judgment and the APA

In ordinary civil actions, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* A court evaluating a summary judgment motion must "view the evidence in the light most favorable to the nonmoving

---

[5] Mr. Buckley also filed a motion to modify the proposed summary judgment order filed by his co-counsel. ECF No. 206. Because there is no indication on the docket that class counsel agrees to that modification, Court will **DENY** that motion.

party and draw all reasonable inferences in its favor." *Arthridge v. Aetna Cas. & Sur. Co.*, 604 F.3d 625, 629 (D.C. Cir. 2010).

"But when, as here, the court is reviewing a final agency action under the APA, the standard set forth in Rule 56(a) does not apply." *Ardmore Consulting Grp., Inc. v. Contreras-Sweet*, 118 F. Supp. 3d 388 (D.D.C. 2015). Rather, "the function of the district court is a more limited one: 'to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did.'" *Id.* (quoting *Kaiser Found. Hosps. v. Sebelius*, 828 F. Supp. 2d 193, 198 (D.D.C. 2011)).[6] The reviewing court must make that determination in accordance with the APA's judicial review provision, which requires the court to set aside agency action that is unlawful for any of a variety of reasons, including, as relevant here, that it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(A), (C).

## B. The IOAA

Although the APA is the procedural vehicle for plaintiffs' challenge to the PTIN fees, the substance of that challenge alleges that the IRS assessed those fees in excess of its statutory authority to set user fees under the IOAA. The IOAA provides in relevant part as follows:

> The head of each agency (except a mixed-ownership Government corporation) may prescribe regulations establishing the charge for a service or thing of value provided by the agency. Regulations prescribed by the heads of executive agencies are subject to policies prescribed by the President and shall be as uniform as practicable. Each charge shall be—
> > (1) fair; and
> > (2) based on—

---

[6] The Court acknowledges that there is no administrative record in this case and that it has allowed the parties to engage in fact discovery and produce an ordinary summary-judgment–like record. Nevertheless, because plaintiffs seek judicial review of an agency action—specifically, the setting of the PTIN and vendor fees—the Court will evaluate the summary judgment motions under the standard used in APA cases.

128

(A) the costs to the Government;
(B) the value of the service or thing to the recipient;
(C) public policy or interest served; and
(D) other relevant facts.

31 U.S.C. § 9701(b).

"To justify a fee under the [IOAA], . . . an agency must show (i) that it provides some kind of service in exchange for the fee, (ii) that the service yields a specific benefit, and (iii) that the benefit is conferred upon identifiable individuals." *Montrois*, 916 F.3d at 1062–63. The Circuit has already held that "the PTIN fee satisfies those conditions." *Id.* at 1063.

As for the factors to be considered in calculating the amount of the fee, decisions interpreting the IOAA have given it a limited construction. In *Nat'l Cable Television Ass'n, Inc. v. United States* ("*NCTA I*"), 415 U.S. 336 (1974), interpreting an earlier, substantially similar version of the statute, the Supreme Court held that the "'value to the recipient' is . . . the measure of the authorized fee" under the statute, because that construction avoids a concern that by calculating a "fee" based on the public interest or other factors, an agency would assess what is functionally a tax, potentially usurping Congress's exclusive power of taxation. *Id.* at 340–43 (citing U.S. Const. Art. I, § 8); *see also Fed. Power Comm'n v. New England Power Co.*, 415 U.S. 345, 349–51 (1974) (companion case).

Applying that precedent to the current version of the statute, the Circuit has identified two constraints on the costs that agencies may pass off to users under the statute. First, "[a]n agency may not charge more than the reasonable cost it incurs to provide a service, or the value of the service to the recipient, whichever is less." *Engine Mfrs. Ass'n v. Envt'l Protection Agency*, 20 F.3d 1177, 1180 (D.C. Cir. 1994). That calculation need not be perfect—the activities charged for need only be "reasonably related" to the cost to the agency and the value to the recipient, and the total may include both "direct and indirect" costs associated with the service provided. *Nat'l Cable*

13

*Television Ass'n v. Fed. Comm. Comm'n ("NCTA II")*, 554 F.2d 1094, 1107 (D.C. Cir. 1976); *see also Montrois*, 916 F.3d at 1066. Second, "when the specific agency activity in question produces an *independent* public benefit, the agency must reduce the fee that it would otherwise charge by that portion of the agency's costs attributable to that public benefit." *Cent. & S. Motor Freight Tariff Ass'n, Inc. v. United States*, 777 F.2d 722, 729 (D.C. Cir. 1985) (emphasis in original).

For more detailed instructions on the factors to be considered when calculating costs, agencies typically look to an Office of Management and Budget ("OMB") guidance document known as Circular A-25. *See* Office of Mgmt. and Budget, Circular A-25 (Rev.), https://www.whitehouse.gov/wp-content/uploads/2017/11/Circular-025.pdf (last accessed Jan. 17, 2023). Circular A-25 expresses a "[g]eneral policy" that "[a] user charge . . . will be assessed against each identifiable recipient for special benefits derived from Federal activities beyond those received by the general public." *Id.* § 6. It also lists the types of costs of carrying out an activity that an agency should include in its estimation of that activity's "full cost," such as "[d]irect and indirect personnel costs," "[p]hysical overhead," "management and supervisory costs," and "[t]he costs of enforcement, collection, research, establishment of standards, and regulation." *Id.* § 6(d)(1). Both the Supreme Court and the Circuit have cited earlier versions of Circular A-25 with approval, specifically for the proposition contained in its general policy statement that it is the private benefit to an identifiable beneficiary, rather than the public benefit, that should be the measure of an agency user fee. *See New England Power Co.*, 415 U.S. at 349–50; *Seafarers Intern. Union of N. Am. v. U.S. Coast Guard*, 81 F.3d 179, 183 (D.C. Cir. 1996). However, neither court has held that an IOAA fee is automatically lawful simply because the agency followed Circular A-25's guidance regarding the types of costs to use in estimating the full cost of carrying out an activity.

130

## III.   DISCUSSION

The Court now turns to the parties' cross-motions for summary judgment. Plaintiffs move for summary judgment only as to liability, arguing that the FY 2011 through 2017 PTIN and vendor fees were excessive as a matter of law and that the IRS may not ask any more than a basic list of biographical questions on the PTIN application.[7] The government seeks partial summary judgment, conceding that portions of the FY 2011 through 2017 PTIN fees were excessive but continuing to defend other portions of those fees and all of the vendor fees, and arguing that it is entitled to an "offset" to any award of restitution based on the amount it could have charged return preparers from FY 2017 to 2020 but was unable to because of the Court's prior injunction against the collection of PTIN fees.

Because the issues raised by both motions are so intertwined, the Court will discuss them together. First, the Court will determine the extent to which the disputed fees were unlawfully excessive under the IOAA. Second, the Court will consider the government's claimed offset to an award of restitution. Third, the Court will briefly discuss plaintiffs' argument that the IRS may only ask for limited biographical information on PTIN applications. Finally, the Court will determine the appropriate remedy.

For the reasons that follow, the Court holds that the FY 2011 through 2017 PTIN and vendor fees were excessive as a matter of law, that the government is not entitled to an offset to

---

[7] Although the operative complaint includes allegations that the PTIN fees charged after *Montrois*, beginning in 2020, are also excessive, *see* Second Am. Compl. ¶¶ 55–59, plaintiffs' summary judgment motion does not address that issue. That is apparently because the parties jointly stipulated that they would "first seek adjudication and a partial final judgment—by way of summary judgment, trial, appeal, and/or settlement—of the disputes related to the 2010–17 Claim." Stip. Re: Post-2019 PTIN Fees ¶ 3, ECF No. 144. Nevertheless, the government's summary judgment motion defends the post-2020 PTIN and vendor fees in full, and plaintiffs' opposition to that motion does not discuss the issue. *See* Def.'s S.J. Mem. at 25–28, ECF No. 173-1; Pls.' Opp'n, ECF No. 185. Ordinarily, "[w]here a party fails to address arguments raised by the opposing party's motion for summary judgment, the Court may treat those arguments as conceded." *Comptel v. FCC*, 945 F. Supp. 2d 48, 55 (D.D.C. 2013). But given the parties' joint stipulation, which the government seems to have disregarded, the Court will simply decline to adjudicate the excessiveness of the post-2020 fees at this stage without deeming plaintiffs to have conceded that point.

restitution for fees it was unable to charge due to the Court's prior injunction, and that plaintiffs' challenge to the questions asked on the PTIN application is improperly raised. The Court will remand to the IRS to determine an appropriate refund to the class.

## A. The Excessiveness of the PTIN and Vendor Fees

Plaintiffs argue that the PTIN and vendor fees charged in FY 2011 through 2017 were excessive because they included costs not strictly necessary to the administration of the PTIN system. *See* Pls.' S.J. Mem. at 16–24, ECF No. 177-29. The government concedes that certain costs were wrongfully included in the PTIN calculations but defends the inclusion of other costs that plaintiffs dispute. *See* Def.'s S.J. Mem. at 12–25, ECF No. 173-1; Def.'s Opp'n at 8–29.

As an initial matter, the parties disagree about the proper standard for evaluating plaintiffs' challenge to the PTIN and vendor fee amounts. Plaintiffs argue that the Court must determine for itself whether any given expense was "necessary" to the provision of the private benefit justifying the imposition of the fee—here, protecting return preparers' identities—without giving any deference to the agency's determination of that question. *See* Pls.' S.J. Mem. at 16–17. The government argues that because the Circuit in *Montrois* held that PTINs confer a private benefit, any direct or indirect cost "reasonably related" to the overall PTIN scheme that was not invalidated by *Loving* was allowable as a basis for the PTIN fees, and the Court must give "more than mere deference or weight" to the agency's determination of what expenses are so related. Def.'s S.J. Mem. at 10–12, 16–17. Both proposed standards miss the mark.

Plaintiffs' proposed "necessary" standard takes a word from a single Circuit opinion out of context and makes out the scope of judicial review of IOAA fees to be more aggressive than it is supposed to be. Plaintiffs make much of the Circuit's pronouncement in *Elec. Indus. Ass'n, Consumer Elecs. Grp. v. FCC*, 554 F.2d 1109 (D.C. Cir. 1976), that "a fee [may] only charge for

16

those expenses which are *necessary* to service the applicant or grantee." *Id.* at 1115 (emphasis added). But the next sentence of that decision, which states that "[e]xpenses incurred to serve some independent public interest cannot, under [*NCTA I*], be included in the cost basis for a fee," makes clear that the Circuit's emphasis was not on the degree of necessity to the provision of the service, but on the contrast between funding the provision of private benefits and benefits to the public at large. *Id.* In *NCTA II*, decided the same day, the Circuit stated that an IOAA fee "must be *reasonably related* to those attributable direct and indirect costs which the agency actually incurs in regulating (servicing) the industry," 554 F.2d at 1107 (emphasis added), language similar to which the Circuit has repeated in subsequent decisions, *see, e.g.*, *Seafarers*, 81 F.3d at 185 (holding that IOAA fees for licensing must be "sufficiently related to the statutory criteria" for issuing the license).

Moreover, a test turning on the Court's own view of what expenses are strictly "necessary" to the maintenance of an otherwise authorized program providing a private benefit would usurp for the Court a cost-estimating function that Congress textually committed, to some extent, to agency discretion. After all, the IOAA authorizes "[t]he head of each agency" to "prescribe regulations establishing the charge" of fees and lists the factors that agency heads are to consider in setting them. 31 U.S.C. § 9701(b); *cf. Cent. & S.*, 777 F.2d at 729 ("Because Congress has expressly delegated to the ICC the responsibility for setting these fees, the ICC in exercising that authority is at the zenith of its powers; the ICC's fees, therefore, are entitled to more than mere deference or weight.") (internal quotation marks and citations omitted).

On the other hand, the government's proposed "more than mere deference or weight" standard collapses important distinctions between quantitative and qualitative determinations and misstates the law in two ways.

First, an agency may not charge for an activity as part of an IOAA fee simply because that activity is lawful and "reasonably related" to an *overall program*, part of which provides a private benefit. The Circuit has held that "when the specific agency activity in question produces an independent public benefit, the agency must reduce the fee that it would otherwise charge by that portion of the agency's costs attributable to that public benefit." *Cent. & S.*, 777 F.2d at 729 (emphasis omitted). Thus, for example, in *Elec. Indus. Ass'n*, the Circuit remanded to the Federal Communications Commission to reset or explain a fee that funded "94 percent of the annual budget" of its "Common Carrier Bureau" because "it strain[ed] the limits of credulity" to believe that just "six percent of the work of that bureau had justifications independent of the services rendered to private parties." 554 F.2d at 1109. In other words, when calculating an IOAA fee to support a program that in part benefits private parties and in part independently benefits the agency and the public, the agency must disaggregate with respect to each charged-for activity the cost of providing the service to private beneficiaries from the cost of doing work that benefits the agency and the general public. So, in this case, it is not enough that an activity be generally PTIN-related and not invalidated by *Loving*. Rather, the government must be able to explain with respect to each activity that formed the basis for the PTIN fees how that activity was reasonably related to providing the private benefit that the Circuit identified in *Montrois*: a means of identifying return preparers that protects them from identity theft. As explained below, certain PTIN-related activities in fact provided an independent public benefit and thus should not have been charged for in full.

Second, the government's blanket assertion that the agency's determination of fee amounts is due "more than mere deference or weight" blurs the lines between the type of activity performed and the cost of carrying out that activity. The government asserts flatly that "[w]hen an agency

properly exercises its authority to charge a fee under the IOAA," the agency's "fee schedule is 'entitled to more than mere deference or weight.'" Def.'s S.J. Mem. at 11 (quoting *Cent. & S.*, 777 F.2d at 729). To be sure, the Circuit has reasoned that the IOAA's commitment of fee-setting to agency discretion entitles the calculations themselves to significant deference. *See Cent. & S.*, 777 F.2d at 729. But that is only a statement about the agency's discretion to calculate the *amount* of costs and benefits associated with a given activity, not whether a specific *activity* is sufficiently related to the provision of a private benefit. Determining whether an activity confers a private benefit, with or without also conferring an independent public benefit, is a matter of applying the IOAA, a statute that the IRS does not administer. And "[a] court does not defer to an agency's interpretation of a statute that it is not charged with administering." *Del. Riverkeeper Network v. FERC*, 857 F.3d 388, 396 (D.C. Cir. 2017).[8]

In sum, any challenge to an IOAA fee amount could potentially involve two separate inquiries, each of which requires a different level of deference to the agency. The first, and most relevant here, is whether, as a qualitative matter, the activities whose cost is used to justify the fee are reasonably related to the provision of the private benefit associated with the fee rather than an independent benefit to the agency and the public. The Court need not give any special deference to the agency in making that determination. But if the charged-for activities meet that qualitative bar, then the other inquiry is whether, as a quantitative matter, the amount charged for carrying them out is reasonable. And the agency's estimation of that amount is "more than mere deference or weight." *Cent. & S.*, 777 F.2d at 729.

---

[8] The government also suggests that compliance with Circular A-25 definitively establishes that a fee amount is lawful under the IOAA. *See* Def.'s S.J. Mem. at 15 ("Here, the IRS complied with the directives of OMB Circular A-25, and therefore, the PTIN user fee is reasonable under the IOAA."). But the Court need not reach that issue, because if an agency does not distinguish between "special benefits derived from Federal activities" and "those received by the general public," OMB Circular A-25 § 6—the sole distinction at issue in this case—then it has not complied with Circular A-25.

In this case, that means that the Court will not defer to the IRS's determination of whether the activities used to justify the PTIN and vendor fees were sufficiently related to the provision of PTINs to return preparers, but it will defer to the IRS's estimation of how much it costs to carry out those activities. With that standard in mind, the Court will consider each of the disputed fees in turn, considering first the FY 2011 through 2015 PTIN fees, followed by the FY 2016 and 2017 PTIN fees, and concluding with the vendor fees for the entire period of FY 2011 through 2017.

### 1. The FY 2011 through 2015 PTIN fees

Plaintiffs argue that they are entitled to summary judgment holding that the FY 2011 through 2015 PTIN fee of $50 was excessive to the extent that it was based on (1) compliance and suitability costs, which comprised most of the costs used to justify the fee; and (2) customer support, communication, IT, and operational support (together, "support") costs beyond certain limited subcategories. The government concedes much ground but maintains that it permissibly charged for certain limited activities in the first category and all activities in the second.

As an initial matter, the parties disagree over which cost models to use in evaluating the alleged excessiveness of the fees. The government justifies a portion of the $50 fee for FY 2011 through 2013 based on the IRS's 2010 Cost Model and a larger portion of the same fee for FY 2014 and 2015 based on the 2013 Cost Model. Def.'s S.J. Mem. at 20–23. Plaintiffs argue that only the 2010 Cost Model is relevant to all five years. Pls.' Opp'n at 6–8. The Court agrees with plaintiffs that the government is wrong to rely on the 2013 Cost Model to differentiate FY 2011 through 2013 from FY 2014 and 2015. Congress "expressly requir[ed] in the IOAA that fees be prescribed by regulation." *New England Power Co. v. U.S. Nuclear Regulatory Comm'n*, 683 F.2d 12, 16 (1st Cir. 1982); *see* 31 U.S.C. § 9701(b). That requirement ensures "that such fees be communicated in advance to those who would have to bear them, thus permitting them to take

intelligent action to avoid undesired consequences." *Id.* Whatever amount the IRS theoretically could have charged in FY 2014 and 2015 based on its internal 2013 Cost Model, it chose instead to charge the amount noticed by regulation as calculated in its 2010 Cost Model. The government cannot now avoid liability for any excessive fees charged in FY 2014 and 2015 based on activities for which it theoretically could have charged but actually did not. The Court will therefore evaluate the alleged excessiveness of the PTIN fees for all of FY 2011 through 2015 based on the justifications given in the 2010 Cost Model.[9]

### *(i) Compliance and suitability costs*

Plaintiffs argue that none of the RPO Compliance or Suitability Departments' activities were a valid basis for the FY 2011 through 2015 PTIN fees because those activities were invalidated by *Loving*. *See* Pls.' S.J. Mem. at 20–21. The government concedes that many costs related to suitability activities were an invalid basis for PTIN fees for that same reason, but it continues to defend compliance and suitability costs in four categories. *See* Def.'s Opp'n at 19–24. The Court agrees with plaintiffs in part and the government in part as to the Compliance Department and agrees with plaintiffs in full as to the Suitability Department.

First, the government defends in full the IRS's decision to charge for the activities of the RPO Compliance Department, which "processes taxpayer complaints against return preparers, identifies return preparers who require enforcement, and conducts enforcement activities against return preparers who misuse or who do not use a PTIN." Def.'s Opp'n at 19–20. Specifically, the government asserts that the Compliance Department's activities include:

> (1) investigating "ghost preparers" (return preparers that do not list their PTINs on returns they prepared for compensation as required by law); (2) handling complaints from return preparers that a client's

---

[9] That is not to say that the IRS may not use later cost models for assistance in calculating an eventual *refund* based on a more granular breakdown of the various RPO departments' activities. But in determining how much the IRS over-charged return preparers, the *baseline* must be the amount it actually charged in the first instance.

prior return preparer may have acted improperly by using a compromised PTIN or committed identity theft to obtain a PTIN; and (3) composing the data to refer complaint cases to IRS business units outside the RPO for further enforcement if necessary.

Def.'s Opp'n at 19. According to the government, those activities are permissible bases for an IOAA fee because they "are reasonably related to the PTIN Program," which "advances the goals of protecting against identity theft recognized by *Montrois* as a special benefit justifying the PTIN user fee." *Id.*

As explained above, the government confuses the applicable standard by discussing whether these activities are reasonably related to the PTIN program *overall* rather than specifically to the associated private benefit of providing return preparers with a means of identification that protects their identity. Nevertheless, the Court agrees that the IRS permissibly charged for at least some of the three specific categories of Compliance Department activities that the government identifies. To the extent that they relate to misuse of PTINs, all three are reasonably related to the provision of the private benefit that the Circuit identified in *Montrois*—protection of preparers' identity—because the misuse of PTINs compromises their ability to serve as a secure means of identification. And tellingly, plaintiffs do not expressly dispute that much in their reply brief. *See* Pls.' Reply at 13–15, ECF No. 207-4.

However, uncontroverted record evidence establishes that the Compliance Department undertook additional activities unrelated to the misuse or nonuse of PTINs. For example, the declaration of Diann Wensing, the former Director of RPO Compliance, which the government cites as giving a "more complete description" of the Compliance Department's work, DRPSUMF ¶ 84, states that the Compliance Department's referral groups handled a broad swath of complaints, "includ[ing] theft of refund, preparer misconduct, RPO Program Noncompliance, Tax Preparation Noncompliance, . . . TPPS Count Mismatch, etc." Wensing Decl. ¶ 161, Ex. BH to Oliver Decl.,

22

ECF No. 176-60. Wensing further states that the Compliance Department's Enforcement Planning & Direction Group undertook certain activities apparently unrelated to misuse or nonuse of PTINs, including "[d]eveloping strategy recommendations for IRS Senior Management" to "Address Unregulated Return Preparer Conduct." *Id.* ¶ 208. In short, it is apparent that some of the Compliance Department's activities concerned misconduct affecting return preparers' *customers* rather than the return preparers *themselves*. Those activities indisputably confer an independent public benefit, and thus their cost must be disaggregated from that of the three categories of preparer-benefitting activities identified above.

Accordingly, the Court holds with respect to the Compliance Department that only the direct and indirect costs of (1) investigating ghost preparers; (2) handling complaints regarding improper use of a PTIN, use of a compromised PTIN, or use of a PTIN obtained through identity theft; and (3) composing the data to refer those specific types of complaints to other IRS business units were valid bases for the corresponding amount of the FY 2011 through 2015 PTIN fees.

Second, the government defends the IRS's decision to charge for the Suitability Department's professional designation checks ("PDCs"), which "verify the self-reported credentials of CPAs and attorneys" working as return preparers. Def.'s Opp'n at 20–21. Plaintiffs argue that PDCs have nothing to do with the provision of a private benefit to return preparers because they "were designed to confirm credentials, not identities, and were performed at additional cost after PTIN applicants had received PTINs and had been identified." Pls.' Reply at 10. The Court agrees with plaintiffs. The government provides no explanation whatsoever as to how verifying that an already-identified preparer's self-reported professional credentials are accurate is reasonably related to protecting that or any other preparer's identity. Instead, the government merely relies on "[t]he IRS['s] . . . interest in verifying the identity of PTIN holders

and verifying this same identifying information is correctly displayed on [a] public facing website" that includes a directory of preparers. Defs.' Opp'n at 21. That is an independent benefit to the agency and the public at large whose cost must be disaggregated from that of providing private benefits to return preparers. *See Cent. & S.*, 777 F.2d at 729. Accordingly, the Court holds that the IRS unlawfully included the cost of PDCs in its calculation of the FY 2011 through 2015 PTIN fees.

Third, the government defends the IRS's decision to charge for the Suitability Department's prisoner list checks and specially designated national ("SDN") checks, which determine whether an applicant is incarcerated or designated by the Treasury Department as being associated with certain targeted countries or illicit activities, respectively. *See Def.'s Opp'n* at 21–23. Plaintiffs argue that prisoner list and SDN checks provide no benefit to return preparers. *See* Pls.' Reply at 11. The Court agrees with plaintiffs. The government asserts that prisoner list and SDN checks help the Bureau of Prisons and Treasury Department to administer their own programs and that "[i]t is reasonable for the IRS to determine that the PTIN Program should be administered in compliance with, and without undermining, other important federal programs and regulations." Def.'s Opp'n at 22. Reasonable though that determination may be, it does not justify charging for prisoner list and SDN checks as part of the PTIN fee under the IOAA, because facilitating other agencies' operations is not reasonably related to the private benefit of protecting return preparers' identities. Again, that is an independent public benefit whose cost must be disaggregated from that of the private benefit to return preparers. *See Cent. & S.*, 777 F.2d at 729. Accordingly, the Court holds that the IRS unlawfully included the cost of prisoner list and SDN checks in its calculation of the FY 2011 through 2015 PTIN fees.

Fourth, the government defends the IRS's decision to charge for the Suitability Department's processing of suitability referrals by taxpayers or agency components of preparers who purportedly should not be able to obtain or maintain a PTIN—for example, because a preparers has been "legally enjoined from return preparation and from obtaining or renewing a PTIN." Def.'s Opp'n at 23–24. Plaintiffs point out that referrals also involved other complaints, such as "personal tax compliance," PDCs, and prisoner list and SDN checks, and argue that "[t]he suitability checks and referrals, including referrals about enjoined preparers, were separate services undertaken to improve tax administration, benefit[t]ing only the IRS and the public." Pls.' Reply at 12. The Court agrees with plaintiffs. Suitability referrals were merely an intake system for the processing of Suitability Department inquiries that either the government no longer defends or the Court has just held provided no identifiable private benefit. Accordingly, the Court holds that the IRS unlawfully included the cost of suitability referrals in its calculation of the FY 2011 through 2015 PTIN fees.

### (ii) Support costs

The remainder of plaintiffs' motion with respect to the FY 2011 through 2015 PTIN fees challenges the IRS's decision to charge for certain RPO customer support, communication, IT, and operational support activities beyond those plaintiffs consider "necessary" to the provision of PTINs. *See* Pls.' S.J. Mem. at 20–25. In the corresponding portion of its cross-motion and its opposition, the government continues to defend a substantial portion of those costs. *See* Def.'s S.J. Mem. at 20–23; Def.'s Opp'n at 24–26. The Court cannot agree with either party in full.

Rather than identify specific support costs as being insufficiently related to the provision of a private benefit, plaintiffs simply assert that the only "activities [that] were (and are) necessary to provide tax-return preparers a PTIN [are] (1) a small portion of customer support costs; (2) a

small portion of communication costs; (3) a small portion of IT costs; (4) a small portion of OPR/PMO Ops Support." Pls.' S.J. Mem. at 21 (internal quotation marks and citation omitted). Plaintiffs then explain why some specific costs in those categories *were* permissible bases for a fee under the IOAA but make no effort to explain why other support costs *were not*. The Court cannot simply accept plaintiffs' unexplained assurances that support costs beyond those on their list were not allowable.

Still, it is undisputed that the IRS charged for support activities facilitating its entire pre-*Loving* return preparer regulatory apparatus. *See* 2010 Cost Model at 3 (listing such broad, department-wide support activities as "Programmatic Executive Management/Oversight" and "Operations Support"). Some of those support activities must have facilitated substantive activities that had nothing to do with protecting return preparers' identities, some of which were also invalidated by *Loving*. The portion of the support costs associated with those activities cannot be considered reasonably related to the provision of a private benefit and thus cannot form a valid part of the basis for an IOAA fee.

While the government concedes some support costs included in the 2010 Cost Model, its concessions apparently do not reach all activities insufficiently related to the provision of a private benefit. As summarized in a declaration by current RPO Director Carol Campbell, those concessions do not include IT costs at all and only include communications and operational support costs "that are not PTIN-related." Second Carol Campbell Decl. ¶ 6, ECF No. 203-1. Given the breadth of the RPO program before *Loving* and the 2010 Cost Model's failure to separate out the different work that the supporting departments were supporting, it is virtually certain that some RPO IT activities between FY 2011 and 2015 supported substantive activities invalidated by *Loving*. Furthermore, the government makes no attempt to estimate the portion of any RPO support

costs that went to providing the PTINs' associated identity-protecting benefit by issuing them and maintaining the PTIN database rather than other "PTIN-related activities" like PDCs which, as explained above, provided only an independent benefit to the agency and public. The government has not demonstrated that all of the support costs it continues to defend were reasonably related to the provision of a private benefit and therefore has not demonstrated its entitlement to partial summary judgment on that issue.

Ultimately, the determination of which support costs were allowable must come down to the portion of those costs that went to support the provision of PTINs and maintenance of the PTIN database, and thus the conferral of the attendant private benefit of identity protection, rather than other RPO activities that were not PTIN-related or aspects of the PTIN program that conferred an independent public benefit, such as the Suitability Department activities discussed above. Only the former were valid bases for the FY 2011 through 2015 PTIN fees. As explained below, the agency will have an opportunity to determine what portion of support costs laid out in the 2010 Cost Model meet that bar on remand.

### 2. The FY 2016 and 2017 PTIN fees

The Court now turns to the PTIN fees for FY 2016 and 2017, which were set at $33 based on the 2015 Cost Model. Plaintiffs argue that those fees were excessive for the same reasons argued with respect to the FY 2011 through 2015 fees. *See* Pls.' S.J. Mem. at 25–27. The government makes essentially the same concessions it did with respect to those earlier fees—defending all compliance costs, certain suitability costs, and most support costs—and argues that it is entitled to partial summary judgment holding that a PTIN fee of $24 was permissible under the statute for FY 2016 and 2017. *See* Def.'s S.J. Mem. at 23–25.

27

Since the same activities remain in dispute with respect to the FY 2016 and 2017 PTIN fees as the FY 2011 through 2015 fees, the Court's holding as to each of those activities remains the same. First, allowable compliance costs include only the direct and indirect costs of (1) investigating ghost preparers; (2) handling complaints regarding improper use of a PTIN, use of a compromised PTIN, or use of a PTIN obtained through identity theft; and (3) composing the data to refer those specific types of complaints to other IRS business units. Second, it was unlawful for the IRS to charge for any suitability costs as part of the PTIN fees. Finally, it was only lawful for the IRS to charge PTIN users for support costs to the extent that they funded activities supporting the provision of PTINs, maintenance of the PTIN database, and in turn, the attendant private benefit rather than an independent benefit to the agency and public.

The FY 2016 and 2017 PTIN fees do differ from the FY 2011 through 2015 PTIN fees in one relevant respect: They were determined based on the 2015 Cost Model. Thus, on remand to the agency, that later cost model will be the yardstick against which to measure which costs were actually allowable under the IOAA.

### 3. The FY 2011 through 2017 vendor fees

The Court will now consider the vendor fees that the IRS required PTIN users to pay Accenture from FY 2011 to 2017. As noted above, those fees were set at $14.25 for new PTIN registrations and $13 for PTIN renewals during FY 2011 through 2016 and $17 for both new registrations and renewals in FY 2017.

As an initial matter, the Court will not consider plaintiffs' argument, raised for the first time in their reply brief, that the entire vendor fee was unlawful because it was not promulgated by regulation as required by the IOAA. *See* Pls.' Reply at 16–17. Whatever the merits of that argument, plaintiffs had every opportunity to include it in their opening summary judgment brief

but chose not to do so. "Arguments raised for the first time in a reply brief are waived." *Nippon Shinyaku Co., Ltd. v. Iancu*, 369 F. Supp. 3d 226, 239 n.8 (D.D.C. 2019).

What is properly before the Court is plaintiffs' argument that the *amount* of the FY 2011 through 2017 vendor fees was excessive under the IOAA. As with the PTIN fees themselves, plaintiffs argue that only the portion of the vendor fees "necessary to providing tax-return preparers a PTIN" were properly included in the PTIN fee. Pls.' S.J. Mem. at 19–20. The government defends the FY 2011 through 2017 vendor fees in full, arguing that they were set before Accenture updated the PTIN system to include capabilities invalidated by *Loving. See* Def.'s Opp'n at 27–29.[10] The Court agrees with plaintiffs in part.

The government does not dispute that a significant portion of the vendor fees went to fund activities that had nothing to do with providing or maintaining PTINs and their attendant private benefit of identity protection to return preparers. For instance, the government admits that, at least in later releases, the PTIN system that Accenture designed and maintained had "the ability to . . . determine preparer suitability based on tax compliance history successfully, . . . process continuing education credit hours completed by calendar year, and perform case management," DRPSUMF ¶ 52 (internal quotation marks and citation omitted), and that Accenture's contract with the IRS required it to maintain a call center to address "preparer questions related" not only to "registration [and] renewal," but also to "testing, and [continuing education] processes and timelines," *id.* ¶ 41 (internal quotation marks and citation omitted). Those activities are not reasonably related to the

---

[10] The government also appears to argue in its opposition brief that plaintiffs lack standing to challenge the vendor fee because it was set by a contract to which they were not a party and thus may be challenged only in the Court of Federal Claims under the Administrative Dispute Resolution Act, and then only if they are "interested parties" within the meaning of that statute. *See* Def.'s Opp'n at 27 (citing *Emery Worldwide Airlines, Inc. v. United States*, 264 F.3d 1071, 1079 (Fed. Cir. 2001)). However, the government concedes in the very next paragraph that "the only challenge Plaintiffs *can* raise in this proceeding is whether the product or service for which the IRS contracted is a direct or indirect cost of the PTIN Program that can be charged consistent with the IOAA and OMB Circular A-25." *Id.* at 28 (emphasis added). Plaintiffs *only* challenge the vendor fee as a user fee under the IOAA.

provision of a private benefit—rather, they provided an independent public benefit that was later invalidated by *Loving*.

Nevertheless, the government argues that none of that matters, because the fees were initially set by contract in 2010, before many of those capabilities were implemented, and the initial release of the PTIN system only had the ability to issue, renew, and maintain PTINs. *See* Def.'s Opp'n at 28–29. That argument is unpersuasive. It is not as if the IRS and Accenture contracted for a more limited system and Accenture then just *happened* to expand its capabilities at a later date. The 2010 contract between the IRS and Accenture, which set the vendor fee amounts in effect during FY 2011 through 2016, expressly contemplated that Accenture would implement capabilities beyond the issuance, renewal, and maintenance of PTINs and would maintain a call center taking questions beyond those subjects. For example, the contract required Accenture to "develop and maintain a system capable of recording self-certification of continuing education reported by paid tax return preparers," including "capabilities to receive and electronically record test results," IRS-Accenture Contract (eff. Sept. 10, 2010) ¶ 1, Ex. AA to Pls.' Mot. for S.J., ECF No. 177-9, and to implement support for "a tax compliance check prior to receiving a PTIN verifying that return preparers have no outstanding obligations on their personal or business federal tax returns" and a function "check[ing] to see if additional [continuing education] or test requirements are necessary," *id.* ¶ 2.2 (internal quotation marks omitted). It also required Accenture to "[d]evelop a service delivery program that address[es] preparer questions related to" not only PTIN registration and renewal, but also continuing education and testing. *Id.* ¶ 3. The vendor fees were calculated to compensate Accenture for developing and maintaining the entire expanded PTIN system, and the government cites no authority for the proposition that the Court should deem those fees not to include the costs of certain activities simply because those activities,

which were expressly contemplated by the contract from the very beginning, began some time after the contract became effective.

Because the FY 2011 through 2017 vendor fees went beyond funding the portions of Accenture's work related to the issuance, renewal, and maintenance of PTINs and charged return preparers to cover portions of that work that benefitted only the agency and the public, those fees were excessive under the IOAA. The Court therefore holds that the IRS unlawfully required return preparers to pay whatever portion of the FY 2011 through 2017 vendor fees was attributable to activities unrelated to the issuance, renewal, and maintenance of PTINs and support for those activities. As explained below, the IRS will have an opportunity on remand to estimate that portion.

## B. The Government's Claimed Offset

In its motion for partial summary judgment, the government argues that in the event it is found liable for some amount of restitution to the class, it is entitled to an offset in the amount of reasonable PTIN fees it could have charged return preparers, and vendor fees it would not have had to pay to Accenture itself, during FY 2018 through 2020 if not for this Court's 2017 injunction against the assessment of any PTIN fees, which the Circuit reversed. *See* Def.'s S.J. Mem. at 28–33. That argument is riddled with problems, and the Court cannot accept it.

As a general rule, "[t]he right to recover what one has lost by the enforcement of a judgment subsequently reversed is well established." *Baltimore & O.R. Co. v. United States*, 279 U.S. 781, 786 (1929). Accordingly, courts have recognized claims in restitution to "money [] paid pursuant to a court order that is subsequently reversed." *Broadcom Corp. v. Qualcomm Inc.*, 585 F. Supp. 2d 1187, 1189 (C.D. Cal. 2008). But this case presents a different scenario. The government does

not actually assert a counterclaim for restitution.[11] Moreover, if it did so, it would be seeking restitution not for money the IRS paid to plaintiffs, but for the value of the IRS's uncompensated work of providing and maintaining their PTINs during the injunction period.

The government cites no case in which a court has offset a plaintiff's eventual restitution award based on a sum that the defendant could have charged the plaintiff for its services but for a later-invalidated permanent injunction. The primary case that the government does cite, *Williams v. Wash. Metro. Area Transit Comm'n*, 415 F.2d 922 (D.C. Cir. 1968), involved an entirely different scenario. In that case, the Washington Metropolitan Area Transit Commission ("the Commission") issued an order raising transit fares that the Circuit later determined to be unlawful. *Williams*, 415 F.2d at 925–26. The Circuit ordered the Commission "to make restitution for all amounts collected as a consequence of the fare increase initially authorized by" the order, except for a certain amount of that increase "conceded" by the plaintiffs to have been lawful. *Id.* at 976. *Williams* is not analogous to this case for two reasons. First, the later-invalidated order at issue was not a court-ordered injunction, but an agency-ordered fare increase. Second, the Circuit reduced the amount of restitution not by an amount that the agency *could have* charged but was *unable* to, but an amount that the agency *did* charge and concededly *was* able to.

Without any support on point, the government is asking the Court to approve a type of offset that is, to the Court's knowledge, entirely novel. That does not automatically make it impermissible—as the government correctly notes, the form of monetary relief plaintiffs seek is restitution, an equitable remedy whose amount the Court may reduce if equity so requires. *See*

---

[11] Because the Court declines to order an offset for a variety of independent reasons, it need not consider plaintiffs' argument that the government was *required* to plead its claimed offset as a counterclaim rather than an affirmative defense. *See* Pls.' Opp'n at 20–21.

*Williams*, 415 F.2d at 943–45. But whatever the Court's authority to order an offset as an exercise of equitable discretion, it declines to do so in this case for several reasons.

For one, the period for which the government seeks an offset actually extends past the vacatur of the injunction, into a period during which no order of this Court was stopping the IRS from assessing PTIN or vendor fees if it so desired. The Circuit's mandate vacating this Court's earlier judgment issued in March 2019, *see* ECF No. 98, and yet the government now seeks an offset for forgone fees extending all the way up to August 2020, when the IRS finally reinstated the PTIN and vendor fees, *see* Def.'s S.J. Mem. at 30–33. The government offers no explanation as to why the IRS did not attempt to assess PTIN or vendor fees in the intervening period of nearly a year and a half. If any offset due to the injunction were theoretically available, it would only be for the period during which the injunction was actually in effect: between July 2017 and March 2019.

Moreover, even narrowing the government's claimed offset to the relevant period, an offset to monetary relief requires the existence of mutual debts, which the government has not established here. "The right of setoff (also called 'offset') allows entities that owe each other money to apply their mutual debts against each other, thereby avoiding 'the absurdity of making A pay B when B owes A.'" *Citizens Bank of Md. v. Strumpf*, 516 U.S. 16, 19 (1995) (quoting *Studley v. Boylston Nat. Bank*, 229 U.S. 523, 528 (1913)). There are two problems with applying that principle in this case as the government requests. First, just because the government should have been *able* to charge PTIN and vendor fees during the relevant period, that does not necessarily mean that return preparers who registered or renewed during that period now *owe* the government the amount that it should have been able to charge. There is no evidence in the record that the IRS ever communicated to PTIN users during the relevant period that it intended to charge them a fee in the

33

event that the injunction was vacated, much less that it did so in accordance with the requirements of the IOAA, which would have been the basis for it to impose a financial obligation in exchange for the PTIN registrations and renewals. Second, there is a problem of mutuality: It appears that the class that the Court certified does not perfectly match up with the group of return preparers that the government now essentially asserts owes the IRS back-fees. As noted above, the Court certified a class of "[a]ll individuals and entities who have paid an initial and/or renewal fee for a PTIN, excluding Allen Buckley, Allen Buckley LLC, and Christopher Rizek." ECF No. 63. It is possible that some return preparers who paid a fee to obtain or renew a PTIN before the injunction did not renew that PTIN during the injunction period, and that some who obtained a PTIN for the first time during the injunction period did not subsequently renew that PTIN after the injunction was lifted and pay a fee. While the class-action form necessarily requires some rough justice in adjudicating the *amount* of monetary relief class members are due, what the government seeks here is essentially the adjudication of an alleged mutual debt that is not, in fact, mutual to every class member.

Finally, an order approving the offset that the government seeks would have the effect of imposing (albeit retrospectively) a user fee, a task that the IOAA authorizes only "[t]he head of each agency" to carry out, and by "regulation[]" at that. 31 U.S.C. § 9701(b). The Court is not the right entity, nor an order of restitution the right means, to assess under the statute a fee that was never formally set by the agency.

For these reasons, the Court declines to fashion an equitable remedy for plaintiffs' restitution claim that offsets the IRS's liability by the amount of PTIN and vendor fees that it would have charged but could not, or did not, because of this Court's subsequently invalidated 2017 injunction. To be clear, the Court expresses no opinion as to whether the IRS may claw back

the forgone PTIN and vendor fees through some other means, such as an administrative process setting fees retroactively for return preparers who registered or renewed their PTINs during the relevant period, or a civil action of its own for restitution. That question is beyond the scope of the present proceeding.[12]

## C. The Information Requested on the PTIN Applications

Finally, plaintiffs argue that the IRS lacks statutory authority to request any information on the PTIN application beyond the preparer's "name, address, telephone number, social security number and date of birth," Pls.' S.J. Mem. at 27, and perhaps email address, *id.* at 28 n.12, because that is the only information that "may be necessary to assign an identifying number," which is all the statute authorizes the IRS to require, 26 U.S.C. § 6109. However, while one factual allegation in the operative complaint hints at plaintiffs' belief that the IRS asks for more information than is necessary to provide a PTIN, *see* Second Am. Compl. ¶ 20 ("For more than a decade, the IRS charged no fee to issue a PTIN and required tax return preparers to submit only their name, address, SSN (if applicable), and date of birth."), an express claim that the IRS exceeds its statutory authority under the PTIN statute by requesting further information is nowhere to be found in that complaint, *see id.* ¶¶ 43–59 (listing claims).[13] "New claims cannot be pled in summary judgment briefs." *Cloud Foundation, Inc. v. Salazar*, 999 F. Supp. 2d 117, 127 (D.D.C. 2013). That is just

---

[12] The government also argues that plaintiffs previously asserted that an offset would be available and are now estopped from arguing to the contrary. *See* Def.'s Reply at 21. But in the pleading that the government cites, plaintiffs' opposition to the government's motion for a stay pending appeal, ECF No. 85, plaintiffs took no such position. Rather, plaintiffs argued that "if it prevailed on appeal, the government could attempt to recover the lost fees through a restitution *claim* against PTIN holders." *Id.* at 19 (emphasis added). That assertion contemplates a separate action or counterclaim, and besides, it says nothing of plaintiffs' view of the *merits* of such a claim.

[13] In its prayer for relief, the operative complaint does request "[a] judgment declaring that the IRS may only request information from tax return preparers that is authorized by statute." Second Am. Compl., Prayer for Relief ¶ 5. However, even there, the complaint does not identify the authorizing statute or what specific requested information allegedly exceeds that authority. Thus, with respect to the application questions, the operative complaint does not contain "a short and plain statement of the claim showing that the pleader is entitled to relief," as any claim must. Fed. R. Civ. P. 8(a)(2).

151

what plaintiffs attempt to do here. The Court therefore will not entertain plaintiffs' argument about the IRS's statutory authority to request additional information on PTIN applications or their request for a declaratory judgment on that subject.

## D. The Appropriate Remedy

As explained above, the PTIN and vendor fees for FY 2011 through 2017 were excessive to the extent that they were based on the following activities:

- All activities already conceded by the government in this case.

- Any Compliance Department activities other than (1) investigating ghost preparers; (2) handling complaints regarding improper use of a PTIN, use of a compromised PTIN, or use of a PTIN obtained through identity theft; and (3) composing the data to refer those specific types of complaints to other IRS business units.

- All Suitability Department activities.

- The portion of support activities that facilitated provision of an independent benefit to the agency and the public.

- The portion of Accenture's activities as a vendor that facilitated provision of an independent benefit to the agency and the public.

But the scope of the compliance and support activities just identified is unclear from the record. It thus remains to be determined how that scope, and the corresponding cost amount, will be ascertained.

The parties have not meaningfully briefed the appropriate course of action in the event that, following the Court's summary judgment decision, disputes remain as to the scope of the activities at issue and the cost of carrying out those activities. Plaintiffs assume that there will be a trial, at least on the amount of restitution. *See* Pls.' S.J. Mem. at 4 ("[P]laintiffs move only for an order granting summary judgment as to liability . . . while reserving the amount of the excess fees

36

for trial."). The government, on the other hand, asserts for the first time in its reply brief that, "[i]n the unlikely event that the Court finds that the adjusted PTIN user fee is still unreasonable, remand is the appropriate remedy because neither the Court nor a party challenging the fee may seize the authority to develop the fee that has been granted to the agency by Congress." Def.'s Reply Supp. S.J. at 4–5. At any rate, the Court must now decide how this case will proceed following the adjudication of the cross-motions for summary judgment.

This case cannot go to trial. Although the Court has permitted plaintiffs to seek the monetary remedy of restitution, this is still a case in which the Court is reviewing an agency action—the setting of IOAA fees, with an eye to whether those fees were excessive—under the APA.[14] And in pushing for a trial on the extent to which the challenged fees were excessive, plaintiffs "misunderstand the role the district court plays when it reviews agency action. The district court sits as an appellate tribunal, not as a court authorized to determine in a trial-type proceeding whether" an agency determination was "factually flawed." *Marshall County Health Care Auth. v. Shalala*, 988 F.2d 1221, 1225 (D.C. Cir. 1993).

The only proper place for this case to go is back to the IRS. That is because, notwithstanding the reviewing court's authority to determine what *activities* an agency may lawfully charge for under the IOAA, that statute commits the *amount* to be charged to agency discretion. *See* 31 U.S.C. § 9701(b); *Cent. & S.*, 777 F.2d at 729. Judges "do not sit as a board of auditors, steeped in accountancy and equipped to second-guess an estimate which seems on its face to be reasonable." *Id.* at 738. Accordingly, when a court determines that an IOAA fee was excessive because it charged for unallowable activities, the extent and expense of which are in

---

[14] As explained in the Court's August 8, 2016 Memorandum Opinion, although the APA does not waive the United States's sovereign immunity with respect to money *damages*, it does in some cases waive sovereign immunity with respect to *restitution* of funds paid to the agency. *See* ECF No. 64 at 9–14 (citing *America's Community Bankers v. FDIC*, 200 F.3d 822, 830 (D.C. Cir. 2000)).

153

dispute, the proper remedy is to remand to the agency to show its work and set a new fee within the bounds of what the law allows. *See, e.g.*, *Engine Mfrs. Ass'n*, 20 F.3d at 1184. To be sure, this is an unusual case in which the agency will be asked to do so retrospectively. But it would be anomalous to allow plaintiffs the opportunity to have a court set the fee and substitute its own judgment for the agency's simply because they waited until after they had paid the fee for several years to challenge it and seek monetary relief.

Accordingly, the Court will remand to the IRS to determine an appropriate refund for the class that is consistent with this Opinion and the accompanying Order. Specifically, the Court will order the IRS to determine reasonable estimates of the portions it lawfully could have charged of the FY 2011 through 2015 PTIN fees based on the 2010 Cost Model, the FY 2016 and 2017 PTIN fees based on the 2015 Cost Model, and the FY 2011 through 2017 vendor fees based on the IRS-Accenture contracts. The Court will retain jurisdiction.

## IV.    CONCLUSION

For the foregoing reasons, the Court will **GRANT** in part and **DENY** in part plaintiffs' motion for summary judgment and **GRANT** in part and **DENY** in part defendant's motion for partial summary judgment. The Court will issue a declaratory judgment holding that the PTIN and vendor fees for FY 2011 through 2017 were excessive to the extent that they were based on the following activities:

- All activities already conceded by the government in this case.

- Any Compliance Department activities other than (1) investigating ghost preparers; (2) handling complaints regarding improper use of a PTIN, use of a compromised PTIN, or use of a PTIN obtained through identity theft; and (3) composing the data to refer those specific types of complaints to other IRS business units.

- All Suitability Department activities.

38

- The portion of support activities that facilitated provision of an independent benefit to the agency and the public.

- The portion of Accenture's activities as a vendor that facilitated provision of an independent benefit to the agency and the public.

Furthermore, the Court will remand to the IRS and order it to determine an appropriate refund by recalculating those fees, using the 2010 Cost Model as a benchmark for the FY 2011 through 2015 PTIN fees and the 2015 Cost Model as a benchmark for the FY 2016 and 2017 PTIN fees, and excising a reasonable estimate of the portions of those fees that the Court has held unlawful. The Court will retain jurisdiction. A separate Order shall issue this date.

Date: _1/23/23_

Royce C. Lamberth
United States District Judge